**BARCLAY DAMON LLP**
Janice B. Grubin
Scott L. Fleischer
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
sfleischer@barclaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

**NOTICE OF QUALIFIED BID AND SUCCESSFUL BIDDER**
**FOR APPROVAL AT SALE HEARING ON OCTOBER 30, 2024**

**PLEASE TAKE NOTICE** that on August 16, 2024, the Court entered its *Order (A) Approving Bid Procedures Relating to the Sale of the Dobbs Ferry Real Estate, (B) Approving Notice Procedures, and (C) Granting Related Relief* (Docket No. 149) (the "Bid Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that paragraph 21 of the Bid Procedures Order provides that:

> Except as otherwise provided in this Bid Procedures Order, the Debtors in their business judgment, further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to the terms and conditions under the Bid Procedures, to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which Written Offers are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal – the Successful Bid – and which is the next highest

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

or otherwise best proposal – the Backup Bid; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all Qualified Bidders to the extent permissible under the Bid Procedures; (f) impose additional terms and conditions with respect to all Qualified Bidders other than the Stalking Horse Bidder; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing, provided that the Debtors shall use reasonable efforts to provide notice of adjournment or cancellation of the Auction to all Qualified Bidders 24 hours before the commencement of the Auction; and (i) modify the Bid Procedures or withdraw the request to sell the Assets to the Successful Bidder or Backup Bidder, as applicable, at any time with or without prejudice.

Bid Procedures Order, ¶ 21.

**PLEASE TAKE FURTHER NOTICE** that paragraph 6 of the Bid Procedures approved in the Bid Procedures Order established a deadline of 5:00 p.m. (prevailing Eastern Time) on September 9, 2024 which date was adjourned to October 24, 2024.[2] Thereafter, the Debtors (i) determined, in their business judgment, whether a Potential Bidder was a Qualified Bidder and (ii) notified each such Potential Bidder that its Written Offer was (or was not) a Qualified Bid and that such Potential Bidder was (or was not) a Qualified Bidder.

**PLEASE TAKE FURTHER NOTICE** that, by October 24, 2024, the Debtors received three bids and determined, in their business judgment, that only one bid, from Riverside 3242 Avenue LLC ("Riverside"), was a Qualified Bid, and that Riverside was a Qualified Bidder, under the Bid Procedures for the Dobbs Ferry Real Estate.

---

[2] The September 9, 2024 deadline contained in paragraph 7 of the Bid Procedures was extended by the Debtors to September 20, 2024, *see* Docket No. 161, further extended to October 10, 2024, *see* Docket No. 167, further extended to October 21, 2024, *see* Docket No. 172, and extended among the submitted bids to October 24, 2024.

**PLEASE TAKE FURTHER NOTICE** that no second qualifying bid was received from a qualified bidder.  Accordingly, there is no Backup Bidder and no Auction was or will be held pursuant to the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Riverside Bid and Riverside Bidder are declared to be the Successful Bid and Successful Bidder, respectively, for the Dobbs Ferry Real Estate.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as <u>Exhibit 1</u> is the Purchase and Sale Agreement ("Riverside PSA") signed by the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that a hearing to approve the Riverside PSA (the "Sale Hearing") is scheduled to occur **on October 30, 2024 at 11:00 a.m. (prevailing Eastern Time)** before the Honorable Sean H. Lane, United States Bankruptcy Judge for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.  Any parties wishing to participate in the Sale Hearing can attend in person or via the Zoom for Government platform.  Participants in the Sale Hearing are required to register their appearance before the hearing utilizing the e-Court Appearances tool at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  The deadline to object to the sale based on the identity of the Successful Bidder is October 28, 2024, with objections, in writing, to be filed and received by 5:00 p.m. (prevailing Eastern Time) by (i) the undersigned, Janice B. Grubin, Esq. (jgrubin@barclaydamon.com), (ii) the Successful Bidder, Kathleen Bradshaw, Esq., 5959 Broadway #3, Bronx, New York, 10463 (KBradshaw@stagggroup.com) and (iii) the Hon. Sean H. Lane, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bid Procedures Order (including the Bid Procedures) may be obtained by visiting the Court's website at

http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein, or by

contacting the undersigned.


Dated: October 25, 2024
        New York, New York

BARCLAY DAMON LLP

By*:*    */s/Janice B. Grubin*
Janice B. Grubin
Scott L. Fleischer
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
sfleischer@barclaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

# **<u>EXHIBIT 1</u>**

Revised 10/21/24

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (hereinafter "Agreement") is dated
_10/21/2024_____ __, 2024 for reference purposes by and between **Riverdale 3242
Avenue LLC** , ("Buyer"), a New York limited liability company with an address at 1763
Pitman Avenue Bronx New York 10466 and **St. Christopher's, Inc.** ("Seller" and, together with
the Buyer, the "Parties"), a New York not-for-profit corporation with an address at 71 South
Broadway, Dobbs Ferry, NY 10522-2800. This Agreement shall be effective on the date
(the "Effective Date") it is executed by Seller and a fully executed counterpart is delivered
to Buyer or Buyer's counsel as designated beneath Seller's signature hereof.

**Background**. Seller is the owner of a certain parcel of real property situated in Dobbs Ferry,
New York as more particularly described in **Schedule A** attached hereto, incorporated herein
and made a part hereof (the "Premises"). Seller wishes to sell to Buyer and Buyer wishes to
purchase from Seller, the Property (as defined below). On April 29, 2024, Seller filed a voluntary
petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code (11
U.S.C. Sections 101 *et seq.*, as amended, and, collectively with the Federal Rules of Bankruptcy
Procedure, the "Bankruptcy Code"), commencing bankruptcy proceedings captioned In re: St.
Christopher's, Inc., Case No. 24-22373 (the "Bankruptcy Case"), in the United States Bankruptcy
Court for the Southern District of New York (the "Bankruptcy Case"). The Parties intend to
effectuate this Agreement and the transactions contemplated hereby under Sections 105, 363 and
365 of the Bankruptcy Code. The Bankruptcy Court has issued a Bidding Procedures Order
governing the sale process for the Property (as defined below), a copy of which is attached hereto
as **Schedule B**, incorporated herein and made a part hereof (the "Bidding Procedures Order").
This Agreement is entered into and delivered pursuant to and subject to the Bidding Procedures
Order. This Agreement is subject to approval of the Bankruptcy Court and will be consummated
only under the Sale Order (as defined below) to be entered in the Bankruptcy Case.

In consideration of the foregoing and the agreements hereinafter set forth, the
Parties agree as follows:

**1.    PROPERTY TO BE CONVEYED:** In consideration of the Purchase Price hereinafter
specified, Seller hereby agrees to sell and convey to Buyer, and Buyer hereby agrees to purchase
from Seller the Premises together with:

(a) all of Seller's right, title and interest in the buildings and improvements on the Premises,
including all fixtures, heating, ventilation and air conditioning, plumbing and electrical
systems, parking areas, landscaping and utilities located on or in and used in connection
with such buildings and improvements;

(b) all right, title and interest of Seller in and to all easements, rights, interests, claims and
appurtenances, if any, in any way belonging or appertaining to the Premises; and

(c) all right, title and interest of Seller in and to all adjoining streets, alleys and other public
ways (before or after vacation thereof);

29964147.1

(d) all right, title and interest of Seller in and to easements, rights-of-way, passages, sewer rights, waters, water courses, water rights and powers belonging, relating or pertaining to the Premises; and

(e) All certificates of occupancy or use and all permits, licenses, consents and authorizations held in connection with the ownership, use, occupancy or operation of the Premises to the extent assignable by Seller to Buyer;

subject to the encumbrances and exceptions to title set forth or referred to in **Schedule A** or in paragraph 3(c) below. The Premises, together with (a) through (e) above is hereinafter referred to as the "Property").

2.     **CONSIDERATION.**  (a) The purchase price is Four Million One Hundred Twelve Thousand Five Hundred Dollars  and 00/100 ($4,125,000.00)  DOLLARS U.S. (the "Purchase Price") (subject to adjustment as described in Section 7 below) which Buyer agrees to pay as follows:

| | |
|---|---|
| (i) As the deposit (the "Deposit") upon the signing of this Agreement, receipt of which is hereby acknowledged, by wire transfer to Barclay Damon LLP, as escrow agent (the "Escrow Agent") as described below; | $ 412,500.00 |
| (ii) Upon the Closing, to Seller by wire transfer as described below (such amount, the "Purchase Price Balance") subject to adjustment as described in this Agreement; | $3,712,500.00 |
| TOTAL | **$4,125,000.00** |

(b) The Deposit shall be paid by wire transfer initiated by a financial institution insured by the Federal Deposit Insurance Corporation to the Escrow Agent, who shall hold the same as escrow agent subject to the terms and conditions hereof and release same to Seller at the time of closing or to the party entitled thereto upon sooner termination of this Agreement. Payments to the Escrow Agent hereunder shall be made in accordance with the following wire instructions:

    Bank:  KeyBank National Association
           201 South Warren Street
           Syracuse, NY 13202
           (800) 821-2829
    Routing Number: ███████
    Account Number: ███████
    Account Name: Barclay Damon LLP
    Reference: St. Christopher's, Inc. (3210387)

2

(c) At Closing, the Purchase Price Balance and the Deposit shall be paid by wire transfer directly to Seller in accordance with the following wire instructions:

> Bank: KeyBank National Association
> 201 South Warren Street
> Syracuse, NY 13202
> (800) 821-2829
> Routing Number: ███████
> Account Number: ████████
> Account Name: Barclay Damon LLP
> Reference: St. Christopher's, Inc. (3210387)

3.    **TITLE.** (a) Within five (5) business days after the Effective Date, Buyer shall procure (at its sole cost and expense) a preliminary title commitment for a standard owner's title insurance policy issued by a nationally recognized title company of its choice. Buyer shall (i) provide Seller with a copy of said preliminary title commitment and (ii) notify Seller in writing of Buyer's reasonable disapproval of any exception (each a "Disapproved Exception") contained in said preliminary title commitment that is not set forth in **Schedule A** or Paragraph 3(c) hereof, all within five (5) business days after Buyer's receipt of said preliminary title commitment or Buyer shall be deemed to have approved of all exceptions shown in said preliminary title commitment. If Buyer notifies Seller within the above-described time frame, then Seller shall attempt to obtain the release or termination of each Disapproved Exception. If, on the Closing Date, Seller shall be unable to obtain the release or termination of each Disapproved Exception, then Seller shall be allowed a reasonable postponement of Closing, not to exceed ten (10) calendar days, within which to obtain the release or termination of each Disapproved Exception by providing notice to Buyer. If at the end of said time Seller is still unable to deliver or cause to be delivered the Deed conveying its interest in the Premises, subject as aforesaid, then Buyer (i) may elect to accept such title as Seller can convey, without modification of the Purchase Price, or (ii) may reject such title by providing Seller with written notice thereof within three (3) business days after the end of such ten (10) day period, time being of the essence. Upon such rejection, Buyer shall be entitled to a return of the Deposit without interest thereon. Upon receipt of such payment, this Agreement shall terminate and the Parties hereto shall be released and discharged from all further claims and obligations hereunder except those obligations which by the terms of this Agreement survive the termination of this Agreement. If Buyer does not timely provide the notice described in (ii) above, Buyer shall be deemed for all purposes to accept the status of title to the Property as indicated in the above described preliminary title commitment. Notwithstanding the foregoing, no exception shall constitute a Disapproved Exception if Buyer or Seller, at Buyer's expense, can obtain a title insurance policy issued by a title insurance company licensed to do business in the State of New York, at standard rates, naming Buyer as insured in an amount equal to the Purchase Price which either omits or insures over such exception. As used in this Agreement, "business day" means any day other than a Saturday, Sunday or day on which banks in the State of New York are permitted or required to close.

(b)    Notwithstanding the provisions of Paragraph 3(a), the title to be furnished by Seller shall be subject to the items set forth in **Schedule A** and Paragraph 3(c) hereof.

29964147.1

(c)    The Premises will be conveyed to and accepted by Buyer subject to:

(i)    Any and all zoning and/or building restrictions, limitations, regulations, ordinances, and/or laws; any and all building lines; and all other restrictions, limitations, regulations, ordinances and/or laws imposed by any governmental authority and any and all other provisions of any governmental restrictions, limitations, regulations, ordinances and/or public laws.

(ii)    Real property taxes and any and all existing tax payments, municipal liens and assessments, coming due after the Closing Date; Buyer shall by acceptance of the Deed assume and agree to pay, any and all such tax payments, liens and assessments which may after the date hereof be assessed, levied against or become a lien on the Premises.

(iii)    Any state of facts which a survey and/or physical inspection of the Premises might reveal.

(iv)    Common law or riparian rights of others and/or other rights, if any, in and to any natural watercourse or body of water flowing through or adjoining the Premises, and all statutory and other rights of others in and to any such watercourse or body of water.

(v)    Rights of School District Number 12 of the Towns of Greenburgh and North Castle ("Tenant") pursuant to one or more leases (collectively, the "Lease") for a portion of the Property as described in the Lease (the "Leased Premises").

4.    **CLOSING**:  The closing of title (the "Closing") shall take place at the office of Seller's counsel, Barclay Damon LLP, 1270 Avenue of the Americas, New York, NY 10020 on the third business day following entry of the Sale Order (as defined below) or as otherwise provided in Section 3(a) above, or sooner by mutual agreement of the Buyer and Seller.   The date of the Closing is referred to herein as the "Closing Date".

5.    **CLOSING OBLIGATIONS.**  (a) At the Closing, Seller shall deliver to Buyer:

(i)    a Quit Claim Deed in the usual New York form, sufficient to convey title to the Property (the "Deed");

(ii)    Checks to the order of the appropriate officers in payment of any real property transfer taxes due hereunder.

(iii)    Seller's certificate stating Seller's Federal taxpayer identification number and certifying that Seller is not a foreign person, corporation, partnership, trust or estate as defined in the Internal Revenue Code and Regulations thereunder, pursuant to the Foreign Investment in Real Premises Tax Act of 1980.

4

(iv)   Keys and security pass codes (if applicable) to the buildings on the Premises other than buildings included in the Leased Premises.

(v)   An affidavit to the best of Seller's knowledge relative to the status of mechanics liens and tenants in possession in the usual form used by title insurers doing business in New York.

(vi)   An assignment of the Lease conveying to Buyer all of Seller's right, title and interest thereto.

(vii)   A copy of the Lease.

(viii)   Any security deposit under the Lease in Seller's actual possession.

(ix)   A Certificate of Existence for Seller.

(x)   Authorizing resolutions of Seller's board of directors authorizing the sale of the Premises to Buyer and approving the terms of this Agreement.

(xi)   An original or certified copy of the Sale Order (as defined below).

(b) At the Closing, the Buyer shall:

(i)   Pay to Seller's counsel the Purchase Price Balance in accordance with the wire instructions in Section 2(c) above.

(ii)   Authorize and direct the Escrow Agent to pay the Deposit to Seller.

(iii)   Record the Deed.

(iv)   Deliver to Seller a Certificate of Existence or Good Standing for Buyer issued by the Secretary of State of the State of Buyer's organization and, if Buyer is not organized in the State of New York, a certificate issued by the Secretary of State of the State of New York certifying Buyer's authorization to do business as a foreign entity in the State of New York.

(v)   Deliver to Seller authorizing resolutions of Buyer's [members/managers] [shareholders and directors] authorizing the purchase of the Premises from Seller and approving the terms of this Agreement.

**6.   PURCHASE PRICE.** At the Closing, (i) the Buyer shall pay the Purchase Price Balance to the Seller's counsel by wire transfer as described in Section 2(c) above, (ii) the Escrow Agent shall pay the Deposit to or as directed by the Seller in accordance with instructions provided by the Seller to Escrow Agent and (iii) Seller's counsel shall pay the Purchase Price

29964147.1

Balance to or as directed by the Seller in accordance with instructions provided by the Seller to Seller's counsel.

**7.      APPORTIONMENT, ADJUSTMENTS AND CLOSING COSTS.**

(a)      The following apportionments shall be made between the Parties at the Closing as of the close of business on the day prior to the Closing Date:

(i)      Non-delinquent real estate taxes, assessments, special district charges, water charges and sewer rents, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Property, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available; and

(ii)      prepaid rents (including, without limitation, any prepaid common area charges and real estate taxes) under the Lease, if any.

(b) If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation.

(c) If any past due rentals are owing by Tenant at the time of Closing, Seller is entitled to said past due rental. In such case Buyer agrees that the first monies received by Buyer from Tenant will be received by Buyer as trustee for Seller on account or in payment of such past due rentals and the Buyer agrees to remit forthwith to the Seller the amount of such rentals to which the Seller is entitled, so collected, out of the first monies received by Buyer.  Seller reserves the right to sue for arrears or for any additional rent due Seller and the same are not assigned to Buyer. From and after the Effective Date, Seller shall not commence any summary eviction proceedings.

(d) Seller and Buyer agree to comply in all respects with Section 1445 of the Code and the regulations issued thereunder (the "Regulations").  If Seller is not a "foreign person" (as defined in the Regulations), Seller shall deliver to Buyer at Closing a nonforeign certificate as prescribed by the Regulations, properly executed and in form and content satisfactory to Buyer.  If Seller is a "foreign person" or fails or refuses to deliver the nonforeign certificate, or if Buyer receives notice, or has actual knowledge, that the nonforeign certificate is false, a tax equal to 10% of the Purchase Price shall be withheld by Buyer at Closing and paid to the Internal Revenue Service in the manner prescribed by the Regulations, unless withholding is reduced or excused in the manner prescribed by the Regulations.  In the event of any withholding, Seller's obligations to deliver title and close this transaction shall not be excused or otherwise affected.

(e) Seller shall pay any and all transfer, gains or documentary stamp taxes and other taxes due in connection with the transfer of the Premises from Seller to Buyer.  All sales taxes due in connection with the transfer of the Personal Property shall be paid by Buyer.

(f) Buyer shall pay all recording and filing fees incurred in connection with recording the Deed.

6

8.    **SELLER'S COVENANTS.**

Seller covenants that between the Effective Date and the Closing Date:

(a) It shall not encumber the Premises or enter into any lease or other occupancy agreement with respect to the Premises without the prior written consent of Buyer.

(b)    Seller shall, at its sole cost and expense, comply with all notices, orders and requirements issued by any Governmental Authority having jurisdiction against or affecting the Premises.

(c)    Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes or assessments imposed with respect to the Premises for any fiscal period in which the Closing is to occur or for any subsequent fiscal period without the prior written consent of Buyer.

(d)    Seller shall not modify or amend any existing service contract or enter into any new service contract with respect to the Premises the term of which extends beyond the Closing Date or which cannot be cancelled on greater than thirty (30) days' notice without Buyer's prior written consent.

(e)    Seller shall cause to be maintained in full force and effect property and casualty insurance on Property in such amount and with such coverage as is customary for property similar to the Property.

(f)    Seller shall maintain, repair, manage and operate the Premises in accordance with Seller's prior practices.

(g)    Seller shall, upon Buyer's request, provide Buyer with access to the Premises (other than the Leased Premises) for any purpose related to this Agreement.

9.    **DELIVERY OF PROPERTY.**  Seller agrees to deliver, simultaneously with the closing of title, possession of the Property, subject to the rights of Tenant to the Leased Premises pursuant to the Lease.

10.    **CONDITION OF PROPERTY.** Buyer represents to Seller that:  (a) it is relying on its own inspection, investigation and examination of the Property; and (b) neither Seller nor any representative of Seller has made any representation or promise upon which Buyer has relied concerning the condition of the Property or of any property covered by this Agreement, it being intended by the Parties that the Property is to be conveyed "AS IS" and "WITH ALL FAULTS". Specifically, but not by way of limitation, Seller does not make, has not made and specifically disclaims any representation or warranty, express or implied, regarding the environmental condition at, on, under or about the Property or the compliance or non-compliance of the Property with applicable environmental laws, including any administrative or judicial interpretation thereof. Without limiting the generality of this acknowledgement and agreement, it is specifically

7

acknowledged and agreed that the Property shall be accepted by Buyer in "AS IS" condition, "WITH ALL FAULTS".

## 11.    **DEFAULT**.

(a)    If Buyer is in default hereunder, or, on or before the date of Closing as set forth herein, indicates that Buyer is unable or unwilling to perform and Seller stands ready to perform Seller's obligations, Seller's sole and exclusive remedy shall be the right to terminate this Agreement by written notice to Buyer and have the Deposit paid to Seller as reasonable liquidated damages for Buyer 's inability or unwillingness to perform.  It is the intention of the Parties hereto freely to make advance provision on the date of this Agreement for such event in order (i) to avoid controversy, delay and expense, and (ii) to specify now a reasonable amount agreeable to the Parties for compensation to Seller for losses which may not be readily ascertainable or quantifiable, such as any of the following which might be necessary to place Seller in the position Seller would have been in had Buyer made timely performance:  costs of carrying, maintaining, insuring and protecting the property; loss of interest income on the proceeds; loss of optimum market time, value and conditions; the uncertainty, delay, expense and inconvenience of finding a substitute buyer; additional commissions, fees, taxes and borrowing expenses to meet obligations entered into in anticipation of performance. In such event and upon Seller's written notice of termination and Seller's receipt of the Deposit, the Property shall be free of any claims or interest of Buyer therein by virtue of this Agreement.

(b)    If Seller is in material default hereunder, or, on or before the date of Closing as set forth herein, indicates that Seller is unable or unwilling to perform and Buyer stands ready to perform Buyer's obligations, Buyer's sole and exclusive remedy shall be the right to terminate this Agreement by written notice to Seller in which case the Deposit shall be returned to Buyer.  Upon receipt of such payment, this Agreement shall terminate and the Parties hereto shall be released and discharged from all further claims and obligations hereunder except those obligations which by the terms of this Agreement survive the termination of this Agreement. In such event and upon Buyer's written notice of termination and Buyer's receipt of the Deposit, the Property shall be free of any claims or interest of Buyer therein by virtue of this Agreement.

## 12.    **ESCROW**.

(a)    The funds represented by the Deposit shall be held in escrow by the Escrow Agent in a non-interest bearing deposit account at a Bank reasonably acceptable to Seller.  The Deposit: (i) shall become the property of Seller (A) upon the delivery of the Deed, or (B) after proper demand by Seller without objection from Buyer in the manner described below; (ii) shall be returned to Buyer after proper demand by Buyer without objection from Seller in the manner described below; or (iii) shall be delivered to either Seller or Buyer in accordance with a final judgment, which is no longer subject to, or the subject of, an appeal, of a court of competent jurisdiction directing the disposition of the Deposit.

(b)    It is understood and agreed that the Escrow Agent's sole duties hereunder are as provided herein and that the Escrow Agent in the performance of its duties hereunder is hereby released and exculpated from all liability except for willful malfeasance or gross negligence and

8

shall not be liable or responsible for anything done or omitted to be done in good faith as herein provided.  If either Seller or Buyer makes a demand upon the Escrow Agent, setting forth the basis for such demand, for payment of all or a portion of the Deposit, the Escrow Agent shall give at least 10 business days' notice to the other party of such demand and of its intention to pay over the amount demanded on a stated date.  If the Escrow Agent does not receive, before the proposed payment date, an objection to the proposed payment setting forth the basis for such objection, the Escrow Agent is hereby authorized and directed to make such payment.  If before the proposed payment date such other party (or its counsel) delivers to the Escrow Agent an objection to such payment setting forth the basis for such objection, the Escrow Agent shall promptly deliver a copy of such objection to the party originally demanding payment, and shall continue to hold such amount until otherwise directed by the joint written instruction of Seller and Buyer or by a final judgment of a court of competent jurisdiction which is no longer subject to, or the subject of, an appeal.  In the event that a dispute shall arise as to the disposition of all or any portion of the Deposit held by the Escrow Agent, the Escrow Agent shall, at its option, either (i) commence an action of interpleader and deposit the same with a court of competent jurisdiction, pending the decision of such court, and shall be entitled to rely upon the final judgment of any such court with respect to the disposition of all or any portion of the Deposit provided that such judgment is no longer subject to, or the subject of, an appeal or (ii) hold the same pending receipt of joint instructions from Seller and Buyer and shall be entitled to rely upon such joint instructions with respect to the disposition of all or any portion of the Deposit, or a final judgment, which is no longer subject to, or the subject of, an appeal, of a court of competent jurisdiction directing the disposition of the Deposit.  The Escrow Agent shall be entitled to consult with counsel (including any member of the Escrow Agent's firm, if applicable) and be reimbursed for all reasonable expenses of such consultation with respect to its duties as Escrow Agent and shall be further entitled to be reimbursed for all reasonable out of pocket expenses incurred in connection with such activities.  All such expenses shall be paid by the party whose position shall not be sustained.

(c)     The Escrow Agent may act or refrain from acting in respect of any matter referred to herein, in full reliance upon and by and with the advice of counsel which may be selected by the Escrow Agent (including any member of the Escrow Agent's firm, if applicable) and shall be fully protected in so acting or so refraining from acting upon the advice of such counsel.  The Escrow Agent shall have the right to rely upon the certificates, notices and instruments delivered to it pursuant hereto, and all the signatures thereto or to any other writing received by the Escrow Agent purporting to be signed by any party hereto, and upon the truth of the contents thereof.  The Escrow Agent shall not be bound by any modification of this Agreement which affects the rights or duties of the Escrow Agent unless it shall have given its prior written consent thereto.  The Escrow Agent may, but shall not be required to, institute or defend any action or legal process involving any matter referred to herein which in any manner affects the Escrow Agent or its duties or liabilities hereunder, unless or until requested to do so by Seller or Buyer and then only upon receiving full indemnity in an amount, and of such character, as the Escrow Agent shall require, against any and all claims, costs, liabilities, judgments, attorneys' fees and disbursements, and other expenses of any kind in relation thereto.

(d)     Seller and Buyer agree, jointly and severally, to defend and indemnify the Escrow Agent and hold the Escrow Agent harmless from all claims which may be incurred by the Escrow Agent by reason of its acceptance of, and its performance under, this Agreement.

29964147.1

(e)     The Escrow Agent may at any time resign hereunder by giving notice of its resignation to Seller and Buyer at least 30 days prior to the date specified for such resignation to take effect and, upon the effective date of such resignation, the Deposit shall be delivered by the Escrow Agent to such person or entity as Seller and Buyer may have jointly designated in writing or to such person or entity as may be designated as hereinafter provided as the successor Escrow Agent, whereupon all duties and obligations of the Escrow Agent named herein shall cease and terminate. If no such person or entity shall have been designated by both Seller and Buyer by the date which is 5 days prior to the date specified for such resignation to take effect then the Escrow Agent may designate a title insurance company or bank in the State of New York to act as escrow agent hereunder.

13.    **TERMINATION**. This Agreement may be terminated at any time prior to the Closing:

(a)     by the mutual written consent of Seller and Buyer;

(b)     by Buyer upon written notice to the Seller if Buyer is not then in material breach of any provision of this Agreement and there has been a material breach of, material inaccuracy in, or failure to perform any material representation, warranty, agreement, or covenant of Seller in this Agreement, and such breach, inaccuracy, or failure cannot reasonably be cured by Seller on or before December 2, 2024 (the **"Drop Dead Date"**);

(c)     by Seller upon written notice to Buyer if Seller is not then in material breach of any provision of this Agreement and there has been a material breach of, inaccuracy in, or failure to perform any representation, warranty, agreement, or covenant of Buyer in this Agreement, and such breach, inaccuracy, or failure cannot reasonably be cured by Buyer on or before the Drop Dead Date; or

(d) by Seller or Buyer upon written notice to the other party:

(i)     if the Sale Order is not entered by the Drop Dead Date;

(ii)    if the Bankruptcy Court enters an order dismissing the Bankruptcy Case or converting the Bankruptcy Case to a proceeding under chapter 7 of the Bankruptcy Code.

14.    **RISK OF LOSS:** Throughout the period between the Effective Date and the Closing Date, Seller shall bear the risk of loss. If the Premises are damaged for any cause prior to the Closing, Seller shall have the option to repair or not to repair the same; and shall give written notice of its election to Buyer within five (5) days after the damage or on the Closing Date, whichever comes first. If Seller elects to repair the same at Seller's expense (including use of insurance proceeds) it shall promptly and in good faith undertake to do so and shall complete such repairs prior to Closing. If the Premises are not in, or cannot be restored to, substantially the present condition, reasonable wear and tear excepted, prior to the Closing, Buyer shall have the option of:

(a)     Accepting title to the damaged Property in its damaged condition and receiving credit on the Purchase Price equal to any insurance monies paid or to be paid to

29964147.1

Seller on account of such loss or an assignment Seller's rights to receive the same; or

(b)    Terminating this Agreement, in which event the Deposit shall be paid to Buyer the Deposit and neither Party shall have any further rights or obligations under this Agreement and this Agreement shall thereupon become void and have no effect except those obligations which by the terms of this Agreement survive the termination of this Agreement.

15.    **CONDEMNATION:** If the whole or any part of the Premises is taken by eminent domain from and after the Effective Date until the passing of the Closing Date and title, each party retains the right to assert a claim for damages or compensation to the governmental authority asserting said eminent domain. Each party's claim shall be independent of the other.

16.    **REPRESENTATIONS AND WARRANTIES OF THE SELLER:** The Seller hereby represents and warrants to the Buyer that:

(a) Seller is a not-for-profit corporation which has been duly organized and is validly existing and in good standing under the laws of the State of New York, and has the full power and authority to enter into, execute, deliver, consummate and carry out the transaction contemplated by this Agreement and any instruments and agreements reasonably necessary therefor; and

(b) The person executing this Agreement on behalf of Seller is duly authorized to do so.

17.    **REPRESENTATIONS AND WARRANTIES OF THE BUYER:** The Buyer Riverdale 3242 Avenue LLC hereby represents and warrants to the Seller that:

(a)    Buyer is a limited liability company which has been duly organized and is validly existing and in good standing under the laws of the State of New York and has the full power and authority to enter into, execute, deliver, consummate and carry out the transaction contemplated by this Agreement and any instruments and agreements reasonably necessary therefor; and

(b)    The person executing this Agreement on behalf of Buyer is duly authorized to do so.

18.    **PROOF OF FUNDS.** Buyer represents and warrants that it has sufficient funds and access to sufficient funds to close the purchase contemplated by this agreement without the need to obtain new or additional financing. As set forth in the Bidding Procedures Order, Buyer shall provide to Seller proof of such funds reasonably satisfactory to Seller.

19.    **ASSIGNMENT.** Except as otherwise provided below, this Agreement and Buyer's rights hereunder may not be assigned by Buyer without the prior written consent of Seller, and any purported assignment without such written consent shall be void and of no effect. Notwithstanding the foregoing, Buyer may assign its rights hereunder without Seller's consent

11

to one or more affiliates 100% owned and controlled by Buyer by providing Seller with written notice of such assignment, which written notice shall state the relationship of the acquiring entity. Upon any effective assignment of Buyer's rights hereunder, Buyer and Buyer's assignee shall be jointly and severally liable hereunder, unless otherwise agreed by Seller in writing.

20.    **BROKER:** The Parties represent that Ariel Property Advisors LLC, as broker for Seller (the "Broker"), is the only broker responsible for the sale of the Premises. Seller agrees to pay the commission due such Broker in connection with the sale of the Premises under separate agreement at the time of Closing. Each party represents to the other that no other broker or agent brought the Premises to Buyer's attention, was, in any way, a procuring cause of this sale and purchase, or was otherwise involved in the presentation or negotiation of this transaction. Buyer hereby agrees to indemnify and hold harmless Seller against the claim of any broker or agent for a commission due by reason of this sale, where it is alleged that said broker or agent called the Premises to Buyer's attention or interested Buyer therein or otherwise assisted in or facilitated Buyer's purchase of the Property, said indemnity to include all costs of defending any such claim, including reasonable attorney's fees. The provisions of this paragraph shall survive the delivery of the Deed.

21.    **BANKRUPTCY COURT APPROVAL**

(a) Seller and Buyer acknowledge and agree that this Agreement and the sale of Property as described herein are subject to Bankruptcy Court approval. Seller and Buyer acknowledge that (i) to obtain such approval, Seller must demonstrate that it has taken reasonable steps to obtain the highest and otherwise best offer possible for the Property, and that such demonstration shall include giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court.

(b) From and after the date of execution of this Agreement and prior to the Closing or the termination of this Agreement in accordance with the terms hereof, Seller shall not take any action which is intended to or fail to take any action the intent of which failure to act is to, result in the reversal, voiding, modification or staying of the Sale Order, as defined below.

(c) **RESERVED**

(d) Seller shall file a proposed version of the Order (A) Authorizing the Sale of the Property, and (B) Granting Related Relief, (acceptable in form an substance to Buyer in its reasonable discretion, the "**Sale Order**"), in the Bankruptcy Case as soon as reasonably practicable prior to the hearing on the entry of the Sale Order. Seller shall pursue diligently the entry of the Sale Order. Buyer agrees that it shall promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code. In the event that the entry of the Sale Order is appealed or a stay pending appeal is sought, Seller shall oppose the appeal or the stay pending appeal and seek the dismissal of any appeal (including a petition for certiorari, motion for rehearing, re-argument, reconsideration or revocation). Notwithstanding the foregoing, any resulting changes to this Agreement or any related document shall be subject to the approval of Buyer in its reasonable discretion.

12

(e) Seller acknowledges and agrees, and the Sale Order shall provide, among other things, that, on the Closing Date and concurrently with the Closing, all then existing or thereafter Encumbrances (other than Permitted Encumbrances) of, against or created by Seller or the bankruptcy estate and in existence on or prior to the Closing Date shall be fully released from and with respect to the Property, which shall be transferred to Buyer Free and Clear of all such Encumbrances.

(f) If an Auction (as defined in the Bidding Procedures) is conducted and Seller does not choose Buyer as the Successful Bidder (as defined in the Bidding Procedures), but instead chooses Buyer as the Back-Up Bidder (as defined in the Bidding Procedures), Buyer will be the Back-Up Bidder. If Buyer is chosen as the Back-Up Bidder, Buyer will be required to keep its bid to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as may be amended with both Parties' written consent prior to or at the Auction) open and irrevocable until the closing of the sale of the Purchased Assets to the Successful Bidder; *provided* that in no event shall Buyer be required to keep its bid to consummate the transactions contemplated by this Agreement open and irrevocable after 5:00 p.m. EST on the fifth business day after the Drop Dead Date. If the Successful Bid with the Successful Bidder is terminated prior to closing but before 5:00 p.m. EST on the fifth business day after the Drop Dead Date, Buyer will be deemed to be the Successful Bidder and will forthwith consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be amended with both Parties' written consent prior to or at the Auction).

29964147.1

22.    **NOTICES.** Any notice or other communication that is to be given hereunder shall be in writing and delivered by certified mail, or sent by reliable electronic means, or sent by nationally recognized overnight courier to such party at the address set forth below:

If to Seller:              Dr. Sarah Ruback
                           c/o Barclay Damon LLP
                           1270 Avenue of the Americas, Suite 501
                           New York, NY 10020
                           Attn: Janice Grubin, Esq.
                           Email: jgrubin@barclaydamon.com
                                      and
                           Email: sruback@sc1881.org

with a copy (which         Barclay Damon LLP
shall not constitute       1270 Avenue of the Americas, Suite 501
notice) to:                New York, NY 10020
                           Attn: Janice Grubin, Esq.
                           Email: jgrubin@barclaydamon.com

If to Buyer:               Riverdale 3242 Avenue LLC
                           1763 Pitman Avenue
                           Bronx New York 10466

                           _____
                           Email: mstagg@stagggroup.com

with a copy (which         K.Bradshaw Esq.
shall not constitute       5959 Broadway # 3
notice) to:                Bronx New York 10463

                           _____
                           Email: Kbradshaw@stagggroup.com

If to Escrow Agent:        Barclay Damon LLP
                           1270 Avenue of the Americas, Suite 501
                           New York, NY 10020
                           Attn: Janice Grubin, Esq.
                           Email: jgrubin@barclaydamon.com

14

29964147.1

23.   **RECORDING.**   This Agreement shall not be recorded in the land records. Any recordation of this Agreement by or at the direction of Buyer shall, at Seller's option, constitute a default by Buyer under this Agreement

24.   **ENTIRE AGREEMENT; AMENDMENT.** This Agreement embodies the entire agreement and understanding between the Parties relating to the subject matter hereof and there are no covenants, promises, agreements, conditions or understandings, oral or written, except as herein set forth. This Agreement may not be amended, waived or discharged except by an instrument in writing executed by the party against whom such amendment, waiver or discharge is to be enforced.

25.   **BINDING EFFECT.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their successors and assigns.

25.   **RIGHT TO WITHDRAW.**   This Agreement shall not be considered or construed as an offer by Seller. Seller reserves the right to withdraw this proposed Agreement at any time prior to the signature hereof by Buyer, Seller and Escrow Agent, receipt by the Escrow Agent of the full payment of the Deposit set forth herein, and delivery of a fully executed Agreement to Buyer.

26.   **IRS REPORTING COMPLIANCE.**   It is agreed that Buyer's attorney shall be deemed to be the "Settlement Agent" in this transaction for the purposes of Section 1521 of the Tax Reform Act of 1986. As such Settlement Agent, Buyer's attorney shall be responsible for properly filing the required information under said Section to the Internal Revenue Service and providing the required Notices of Filing to the appropriate parties. The provisions of this paragraph shall survive the closing.

27.   **ACCEPTANCE OF DEED.**   The Parties agree that, except to the extent expressly provided herein or by way of a specific agreement in writing which by its terms shall expressly survive the Closing, the delivery by Seller and the acceptance by Buyer of the Deed at the Closing shall be deemed to constitute full compliance by Seller with all of the terms, conditions and covenants of this Agreement on its part to be performed.

28.   **EFFECT.**   This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and permitted assigns of the respective Parties.

29.   **GOVERNING LAW; SUBMISSION TO JURISDICTION**.   This Agreement shall be construed and enforced in accordance with the laws of the State of New York.  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the Parties hereto in the courts of the State of New York located in New York or Westchester County or, if it has or can acquire jurisdiction, in the United States District Court for the Southern District of New York, and each of the Parties hereto consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

30.   **COUNTERPARTS / FACSIMILE / ELECTRONIC MAIL.**   This Agreement may be executed in any number of counterparts, and by the Parties hereto in separate counterparts, each

29964147.1

of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one and the same Agreement. The Parties hereto agree that this Agreement may be transmitted between them or their respective attorneys by facsimile. The Parties hereto intend that a manual signature delivered by facsimile, e-mail, or other means of electronic transmission, shall be deemed to have the same effect as delivery of an original signed copy of this Agreement, and that an Agreement containing the manual signatures (original or delivered by facsimile, e-mail, or other means of electronic transmission) of all the Parties is binding on the Parties once sent via facsimile or via electronic mail to counsel for Buyer and Seller.

31.    **ENTIRE AGREEMENT.** All prior understandings, agreements, representations and warranties, oral and written, between Seller and Buyer are merged in this Agreement. This Agreement completely expresses the agreement of the Parties, and has been entered into by the Parties after discussion with their respective attorneys and after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this Agreement. Neither this Agreement nor any provision hereof may be waived, changed or cancelled except by a written instrument signed by all Parties.

32.    **MUTUAL AGREEMENT.** Each and every provision of this Agreement has been mutually negotiated, prepared and drafted. Each party hereto has been represented by legal counsel or has had the opportunity to be represented by legal counsel. In connection with the construction or interpretation of any provision hereof, no consideration shall be given to the issue of which party actually prepared, drafted, requested or negotiated any provision or deletion. This Agreement shall not be construed more severely against any one party hereto than against any other party hereto.

33.    **CAPTIONS.** The captions preceding the paragraphs in this Agreement are for ease of reference only and shall be deemed to have no effect whatsoever on the meaning or construction of the provisions of this Agreement.

34.    **SEVERABILITY.** In case any one or more of the provisions contained in this Agreement, or any of the documents or agreements contemplated hereby, should be invalid, illegal or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

35.    **ATTORNEYS' FEES.** In the event suit is brought to enforce any provisions of this Agreement, the prevailing party shall be entitled to costs of suit including reasonable costs and attorneys' fees.

36.    **WAIVER OF JURY TRIAL. BUYER AND SELLER HEREBY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT.**

[Signature page follows.]

**SELLER**

**St. Christopher's, Inc.**

By: _____
    Name:
    Title:
Effective Date: _____

**BUYER**

Riverdale 3242 Avenue LLC

By: _____
    Name: Mark Stagg
    Title: Managing Member

:

The undersigned Escrow Agent agrees to be bound by the provisions of Section 12 above and the duties of Escrow Agent set forth in Section 2 above.

**ESCROW AGENT**

**Barclay Damon LLP**

By: _____
    Name:
    Title:

17

**Schedule A**
**Property Description**

**<u>Schedule B</u>**
**Bidding Procedures Order**

29964147.1