**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

## ORDER (A) AUTHORIZING THE SALE OF THE DOBBS FERRY REAL ESTATE, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS WITH THE EXCEPTION OF THE AGENCY LEASE AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of St. Christopher's, Inc. ("St. Christopher's") and The McQuade Foundation, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned Subchapter V Chapter 11 cases (the "Chapter 11 Cases"), requesting entry of an order (this "Sale Order"): (a) authorizing the Sale of the Dobbs Ferry Real Estate, free and clear of liens, claims, encumbrances and other interests excepting the Agency Lease, with the Agency Lease being assumed and assigned to the Purchaser upon the Closing; and (b) granting related relief; and the Court having entered an order on August 16, 2024 [Docket No. 149] (the "Bid Procedures Order") approving the bid procedures in connection with the Sale as attached as Exhibit 1 to the Bid Procedures Order (the "Bid Procedures"), including, among other things, the proposed form of notice of the Sale Hearing; and upon the Purchaser and the Debtors having entered into the Final PSA; and no Auction being necessary with only one Qualified Bid having been received; and the Debtors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion, the PSA, or the Bid Procedures, as applicable. In the event of a discrepancy between the definitions contained in the Motion, the PSA and the Bid Procedures, those contained in the PSA shall control.

having determined, after an extensive marketing and sale process, that Riverdale 3242 Avenue LLC (Riverdale 3242 Avenue LLC or its designee shall be defined as the "Purchaser") has submitted the highest or otherwise best bid for the Dobbs Ferry Real Estate and having selected the Purchaser as the Successful Bidder in accordance with the Bid Procedures; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale and the Final PSA and all relief related thereto; and upon due, adequate and proper notice of the Motion, the Final PSA, and all other related transactions contemplated thereunder and in this Sale Order having been given and that no other or further notice need be given; and the Court having conducted the Sale Hearing to consider entry of the Sale Order on October 30, 2024; and upon the full record of these Chapter 11 Cases and the Sale Hearing and all of the proceedings had before the Court; and the Court having jurisdiction over this matter; and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found and determined that the relief granted herein is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion, the Tortorici Declaration, and the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.    <u>Jurisdiction</u>.  This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.    <u>Venue</u>.  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    <u>Statutory and Legal Predicates</u>.  The statutory and legal predicates for the relief

requested in the Motion are Bankruptcy Code sections 105(a), 363 and 365, Bankruptcy Rules

2002, 6004, 6006, Local Rule 9014, and the Amended Guidelines for the Conduct of Asset

Sales, Approved by Administrative Order Number 383 in the United States Bankruptcy Court

for the Southern District of New York (as amended, the "<u>Asset Sale Guidelines</u>").

D.    <u>Notice</u>.  In accordance with the Bid Procedures Order, and as evidenced by the

Certificate of Service of Audrey A. Vrooman filed with this Court [Docket No. 152] (the

"<u>Certificate of Service</u>"), the Debtors served the Notice of Bid Procedures, Auction Date and

Sale Hearing (as defined in the Bid Procedures Order), together with a copy of the Bid

Procedures Order and the Bid Procedures on: (i) the Office of the United States Trustee for the

Southern District of New York; (ii) the Subchapter V Trustee; (iii) the Lender; (iv) all parties

that have requested or that are required to receive special notice pursuant to Bankruptcy Rule

2002; (v) all persons known or reasonably believed by the Debtors to have asserted any lien,

claim, encumbrance, right of first refusal, or other interest in or upon the Dobbs Ferry Real

Estate; (vi) all persons known or reasonably believed to have expressed an interest in acquiring

the Dobbs Ferry Real Estate within the last six (6) months; (vii) all taxing authorities, including

the Internal Revenue Service and all other federal, state and local taxing and regulatory

authorities reasonably expected by the Debtors to have claims, contingent or otherwise, in

connection with the ownership of the Dobbs Ferry Real Estate, or to have any known interest

in the relief requested by the Motion; and (viii) all parties to any litigation involving the Debtors.

On October 2, 2024, the Debtors filed an *Affidavit of Publication of Notice of Abbreviated Bid

Procedures, Auction Date, and Sale Hearing* [Docket No. 169] evidencing the publication of

an abbreviated version of the Notice of Bid Procedures, Auction Date and Sale Hearing by the Wall Street Journal on August 21 and 28, 2024 and The Journal News on August 22, 2024.

E.    <u>Notice Sufficient</u>.    Based upon the Certificate of Service and Affidavit of Publication and the evidence presented at the Sale Hearing, actual written and publication notice of the Motion, the Bid Procedures Order, the Bid Procedures, the Sale Hearing, the Sale (and the Transactions and PSA contemplated in connection therewith), and the transactions contemplated thereby, has been provided in accordance with the Bid Procedures Order, sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9006.    A reasonable opportunity to object to or be heard regarding the Motion and the relief requested therein and to the entry of this Sale Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rules 6004(a) and 6006(c).    Based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale (and the Transactions and PSA contemplated in connection therewith) has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014 and the Local Bankruptcy Rules and in compliance with the Bid Procedures Order.    Notice of the Motion, the Sale Hearing, and the Sale was and is timely, proper, sufficient, appropriate under the particular circumstances, and reasonably calculated to provide the Notice Parties and all other interested parties with timely and proper notice under the circumstances of these Chapter 11 Cases, and no other or further notice with respect to such matters is, or shall be, required.

F.    <u>Sufficiency of Marketing</u>.  (i) The Debtors and their advisors engaged in a robust and extensive marketing and sale process for the Dobbs Ferry Real Estate through their pre-petition marketing efforts and the post-petition marketing efforts and sale process, the latter

pursuant to the Bid Procedures Order and the Bid Procedures; (ii) the Debtors and their advisors conducted a fair and open sale process; (iii) the sale process, the Bid Procedures and the actions of the Debtors and the Purchaser in connection therewith were non-collusive, duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Dobbs Ferry Real Estate; and (iv) the process conducted by the Debtors pursuant to the Bid Procedures obtained the highest or otherwise best value for the Dobbs Ferry Real Estate for the Debtors and their estates, and any other transaction would not have yielded as favorable a result.

G.    Bid Deadline and Cancelled Auction. The Bid Deadline passed on October 21, 2024 at 5:00 p.m. (prevailing Eastern Time) in accordance with the Bid Procedures and Bid Procedures Order and as further extended by the Debtors. The Debtors canceled the Auction in accordance with the Bid Procedures and Bid Procedures Order because only one Qualified Bid (as defined in the Bid Procedures) was submitted. Pursuant to the terms of the Bid Procedures, the Final PSA constituted the highest and best bid and, therefore, was designated as the Successful Bid. On October 25, 2024, the Debtors filed and served the Notice of Successful Bidder [Docket No. 178] identifying the Purchaser as the Successful Bidder in accordance with the Bid Procedures Order.  As established by the record of the Sale Hearing, the bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors and the Purchaser.  The Bid Procedures afforded a full, fair and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Dobbs Ferry Real Estate, and the Final PSA constitutes the highest or otherwise best offer for the Dobbs Ferry Real Estate.

H.    Corporate Authority. Subject to the entry of this Sale Order, St. Christopher's has (i) full requisite corporate or other organizational power and authority to execute, deliver,

and perform the Final PSA and all other documents contemplated thereby and (ii) taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery and performance of the Final PSA and to consummate the transactions contemplated by the Final PSA (including the Sale) (collectively, the "Transactions"), including as required by its organizational documents and, upon execution thereof, the Final PSA and the related documents will be duly and validly executed and delivered by St. Christopher's and enforceable against St. Christopher's in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, will constitute a valid and binding obligation of St. Christopher's.  No government, regulatory, or other consents or approvals, other than those expressly provided for in the PSA, are required for the execution, delivery, and performance by the Debtors of the PSA and the consummation of the Transactions contemplated thereby.  No consents or approvals of the Debtors, other than those expressly provided for in the Final PSA or this Sale Order, are required to consummate the Sale.

K.    Compliance with Bid Procedures and Bid Procedures Order.  As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations made on the record at the Sale Hearing, the Debtors have adequately marketed the Dobbs Ferry Real Estate and conducted the sale process in compliance with the Bid Procedures and the Bid Procedures Order, and the bidding process was conducted in a non-collusive, fair, and good faith manner.  The Debtors and their professionals conducted the sale process in compliance with the Bid Procedures and the Bid Procedures Order and have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Dobbs Ferry Real Estate and make higher or better offers.  In accordance with the Bid

6

Procedures Order, the Final PSA was deemed a Qualified Bid and the Purchaser was a Qualified

Bidder eligible to participate in the Sale process.  The Purchaser acted in compliance with the

Bid Procedures and the Bid Procedures Order and conducted itself in a non-collusive, fair, and

good faith manner.  In accordance with the Bid Procedures and the Bid Procedures Order, the

Debtors determined that the bid submitted by the Purchaser and memorialized by the Final PSA

is the Successful Bid.

      L.    <u>Arm's-Length and Purchaser's Good Faith</u>.  The Final PSA was negotiated and

is undertaken by St. Christopher's and its management and board of directors, and the

Purchaser, its management and board of directors or equivalent governing body, at arm's length

without collusion or fraud, and in good faith within the meaning of section 363(m) of the

Bankruptcy Code. The Purchaser is not an "insider" of either Debtor as that term is defined by

section 101(31) of the Bankruptcy Code.  The Purchaser (i) recognized that the Debtors were

free to deal with any other party interested in acquiring the Dobbs Ferry Real Estate; (ii)

complied with the applicable Bid Procedures and the Bid Procedures Order in all respects; and

(iii) willingly subjected its bid to the competitive Bid Procedures approved in the Bid

Procedures Order. Neither the Debtors nor the Purchaser has engaged in any conduct that would

cause or permit the Final PSA or the consummation of the Sale to be avoided, or costs or

damages to be imposed, under section 363(n) of the Bankruptcy Code.  All payments to be

made by the Purchaser and other agreements or arrangements entered into by the Purchaser in

connection with the Sale have been disclosed, neither the Purchaser nor the Debtors have

violated section 363(n) of the Bankruptcy Code by any action or inaction, and no common

identity of directors, managers or controlling stockholders exists between and among the

Purchaser on the one hand, and either Debtor, on the other.  As a result of the foregoing, the

Purchaser is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to the full rights, benefits, privileges, and protections afforded thereby, including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and each of the Purchaser and Debtors otherwise have proceeded in good faith in all respects in connection with the Sale specifically and these Chapter 11 Cases generally.

        M.    <u>Highest or Best Offer</u>. The total consideration provided by the Purchaser for the Dobbs Ferry Real Estate as reflected in the Final PSA is the highest and best offer received by the Debtors for the Dobbs Ferry Real Estate. No other person or entity or group of persons or entities has submitted a Qualified Bid prior to the Bid Deadline. Therefore, in accordance with the Bid Procedures Order, (i) the Debtors did not conduct the Auction and (ii) the Debtors determined that the Final PSA constituted the highest and best offer and selected the Final PSA as the Successful Bid. The Debtors' determination that the Final PSA constitutes the highest and best offer and the Debtors' selection of the Final PSA as the Successful Bid each constitutes a valid and sound exercise of the Debtors' business judgment and the Debtors' decision to enter into the Final PSA and the Transactions constitutes a proper exercise of the fiduciary duties of the Debtors. The offer of the Purchaser, upon the terms and conditions set forth in the Final PSA, including the total consideration to be realized by the Debtors thereunder, (i) is the highest or otherwise best offer received by the Debtors after extensive marketing, including through the Bid Procedures, and (ii) is in the best interests of the Debtors, their creditors, their estates and other parties in interest. Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Dobbs Ferry Real Estate for greater value to the Debtors or their estates.

O.      <u>No Fraudulent Purpose</u>.  The Final PSA was not entered into, and none of the Debtors nor the Purchaser have entered into the Final PSA, or propose to consummate the Sale, for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors. None of the Debtors nor the Purchaser have entered into the Final PSA, or are proposing to consummate the Sale, fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or the laws of the United States, any state, territory, possession thereof, the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

P.      <u>Transfer of Assets Free and Clear Except Agency Lease</u>.  St. Christopher's is the sole and lawful owner of the Dobbs Ferry Real Estate and title thereto is vested in St. Christopher's estate within the meaning of section 541(a) of the Bankruptcy Code.  The transfer the Dobbs Ferry Real Estate to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Dobbs Ferry Real Estate, which transfer vests or will vest the Purchaser with all right, title, and interest of St. Christopher's to the Dobbs Ferry Real Estate free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), interests, rights, liabilities, security interests, hypothecations, preferences, debts, suits, licenses, options, judgments, orders and decrees of any court, taxes (including, without limitation, income tax, sales tax, and use tax assessed by foreign, state and local taxing authorities), covenants, or restrictions, against any of the Debtors or the Dobbs Ferry Real Estate, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, *de facto* merger claims, causes of action (whether in law or in equity, under any law), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether known or

unknown, contingent or matured, perfected or unperfected, liquidated or unliquidated, statutory

or non-statutory, legal or equitable or otherwise arising under or out of, in connection with, or

in any way related to any of the Debtors, any of the Debtors' interests in the Dobbs Ferry Real

Estate, the operation of any of the Debtors' businesses before the effective time of the Closing

(collectively, "Claims") with such transfer as set forth above except with the Dobbs Ferry Real

Estate remaining subject to the Agency Lease, with the Agency Lease being assumed and

assigned to the Purchaser upon the Closing. The Debtors served the Notice of Bid Procedures,

Auction Date and Sale Hearing (as defined in the Bid Procedures Order), together with a copy

of the Bid Procedures Order and the Bid Procedures (as defined in the Bid Procedures Order)

on all parties who are known or reasonably believed, after reasonable inquiry, to have asserted

any Claims or other interests with respect to the Dobbs Ferry Real Estate.  The Purchaser would

not have entered into the Final PSA and would not consummate the Transactions contemplated

thereby if the sale of the Dobbs Ferry Real Estate that is owned by St. Christopher's was not

free and clear of all Claims and other interests other than the Agency Lease, or if the Purchaser

would, or in the future could, be liable for any such Claims or interests.  A sale of the Dobbs

Ferry Real Estate other than one free and clear of all Claims and interests with the exception of

the Agency Lease would adversely impact the Debtors, their estates and their creditors, and

would yield substantially less value for the Debtors' estates, with less certainty than the Sale.

    Q.    Satisfaction of Section 363(f) Standards.  The Debtors are authorized to sell the

Dobbs Ferry Real Estate free and clear of all Claims and interests (except for Assumed

Liabilities, Permitted Encumbrances, and the Agency Lease, with the Agency Lease being

assumed and assigned to the Purchaser upon the Closing) because, with respect to each creditor

or other person or entity asserting a Lien or other interest, one or more of the standards set forth

in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each creditor or other person or entity asserting a Lien or other interest has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented.  All parties in interest, including without limitation any holders of Claims or other interests that did not object, who withdrew their objection, or whose objections were overruled, to the Sale or the Motion, are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object that have an interest in the Dobbs Ferry Real Estate could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims and other interests in the Assets, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale, subject to any defenses of the Debtors.  All persons having Claims or other interests of any kind or nature whatsoever against the Debtors or the Assets shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing, enforcing, attaching, collecting, recovering, or asserting such Claims or other interests against the Purchaser or any of its assets, property, affiliates, successors, assigns, or the Dobbs Ferry Real Estate.

R.    <u>No Successor Liability</u>.  The Purchaser is not a mere continuation of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Purchaser and the Debtors.  The Purchaser is not holding itself out to the public as a continuation of the Debtors or their estates.  The Purchaser is not an "insider" or "affiliate" of either Debtor, as those terms are defined in the Bankruptcy Code, and no continuity or common identity of

incorporators, directors, managers or stockholders exists now or has ever existed between the Purchaser on the one hand, and the Debtors, on the other.  The conveyance of the Dobbs Ferry Real Estate does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates. The Purchaser's acquisition of the Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing.

S.    <u>Sale as an Exercise of Business Judgment</u>.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of or entry into the Sale Motion, the Sale, the Final PSA, and all related agreements (the "<u>Related Agreements</u>").  The Debtors' entry into and performance under the Final PSA and Related Agreements: (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value to and are beneficial to the Debtors' estates and are in the best interests of the Debtors and their estates, creditors and other parties in interest; and (iii) are reasonable and appropriate under the circumstances. Business justifications for the Sale include, but are not limited to, the following: (x) the purchase price set forth in the Final PSA constitutes the highest or otherwise best offer received for the Dobbs Ferry Real Estate; (y) the Final PSA and the transactions contemplated thereby present the best opportunity to maximize the value of the Dobbs Ferry Real Estate; and (z) the value of the Debtors' estates will be maximized through the sale of the Dobbs Ferry Real Estate pursuant to the Final PSA.

T.  <u>Compelling Reasons for an Immediate Sale.</u>  Good and sufficient reasons for approval of the Final PSA have been articulated by the Debtors, and the Debtors' decision to enter into the Final PSA and the Transactions contemplated thereby represents an exercise of sound business judgment.  The Debtors have demonstrated compelling circumstances for the Sale outside of: (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (b) a plan of reorganization or liquidation (as the case may be), in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to preserve and to maximize the value of the Debtors' estates.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by this Sale Order and give immediate effect to the Sale order upon entry.

U.  <u>No Sub Rosa Plan.</u>  The Final PSA and the Sale does not constitute a *sub rosa* chapter 11 plan.  Neither the Final PSA nor the Sale impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a chapter 11 plan or plans for the Debtors.

Y.  <u>Final Order.</u>  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.  The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the Final PSA.

Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may

close the Sale contemplated by the Final PSA at any time after entry of this Sale Order.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT**:

1.    <u>Motion Granted</u>.  The relief requested in the Motion is GRANTED as set forth

herein.

2.    <u>Findings of Fact and Conclusions</u>.  Any of the findings of fact contained herein

shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion

of law contained herein shall constitute a conclusion of law even if it is stated as a finding of

fact. The Court's findings of fact and conclusions of law in the Bid Procedures Order and the

record of the hearings with respect to the Bid Procedures Order and the Sale Hearing are

incorporated herein by reference.

3.    <u>Objections Overruled</u>.  All objections, if any, with regard to the relief sought in

the Motion that have not been withdrawn, waived, settled, or otherwise dealt with as expressly

provided herein or on the record at the Sale Hearing are hereby overruled on the merits, with

prejudice.

4.    <u>Notice</u>.  Notice of the Motion, Bid Procedures, Bid Procedures Order, Auction,

Sale (and the Transactions and Final PSA contemplated in connection therewith) and Sale

Hearing was fair and equitable under the circumstances and complied in all respects with

section 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and

6006 the Bid Procedures Order.

5.    <u>Approval</u>.  Pursuant to sections 105 and 363 of the Bankruptcy Code, the Final

PSA, Sale, Related Agreements, and the other Transactions are hereby approved and the

Debtors are authorized and directed to consummate the Sale in accordance with the terms of

the Final APA. The Debtors as well as their officers, board members, employees, and agents are each hereby authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the Sale of the Dobbs Ferry Real Estate to the Purchaser and the Closing of the Sale and the Transactions pursuant to the Final PSA and this Sale Order and (b) execute, deliver, perform, consummate, implement and close fully the Final PSA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement the Final PSA.  The Debtors are hereby authorized and directed to perform each of their respective covenants and undertakings as provided in the Final PSA prior to or after the Closing of the Sale without further order of the Court.  The failure specifically to include any particular provision of the Final PSA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Final PSA (including, but not limited to, all ancillary agreements and Related Agreements contemplated thereby) be authorized and approved in its entirety.  All Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Dobbs Ferry Real Estate to the Purchaser in accordance with the Final PSA and this Sale Order.

6.    <u>Fair Purchase Price</u>.  The consideration provided by the Purchaser under the Final APA is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act or the Uniform Voidable Transactions Act, as applicable, (ii) fair consideration under the Uniform Fraudulent Conveyance Act or the Uniform Voidable Transactions Act, as applicable, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

7.    <u>Amendments to Final PSA</u>.    The Final PSA and any related agreements, documents, or other instruments may be modified, amended, supplemented or restated by the parties thereto in a writing signed by such parties and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, supplement or restatement does not have a material adverse effect on the Debtors' estates.  The Final PSA and the Debtors' obligations therein shall not be altered, amended, rejected, discharged or otherwise affected by any chapter 11 plan proposed or confirmed in these Chapter 11 Cases without the prior written consent of the Purchaser.

8.    <u>Transfer Free and Clear.</u>    One or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Dobbs Ferry Real Estate is conveyed by St. Christopher's to the Purchaser free and clear of any Claims and other interests (except for Assumed Liabilities, Permitted Encumbrances, and the Agency Lease, with the Agency Lease being assumed and assigned to the Purchaser upon the Closing). The Debtors are authorized to transfer the Dobbs Ferry Real Estate in accordance with the terms of the Final PSA and this Sale Order.  The Dobbs Ferry Real Estate shall be transferred to the Purchaser in accordance with the terms of the Final PSA and this Sale Order, and upon the Closing, such transfer shall: (i) be valid, legal, binding and effective; (ii) vest the Purchaser with all right, title and interest of the Debtors in the Dobbs Ferry Real Estate; and (iii) be free and clear of all Claims and any other claims and interests in accordance with section 363(f) of the Bankruptcy Code (except for Assumed Liabilities and Permitted Encumbrances and the Agency Lease).  All Persons having Claims or other interests of any kind or nature whatsoever against the Debtors or the Dobbs Ferry Real Estate shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing,

16

enforcing, attaching, collecting, recovering, or asserting such Claims or other interests against the Purchaser or any of its assets, property, affiliates, successors, assigns, or the Dobbs Ferry Real Estate.  Notwithstanding the foregoing or anything to the contrary contained herein or in any prior Order of this Court, (1) the Claims, liens, security interests, and other interests of LAYLA LENDING II LLC, a Delaware limited liability company, as lender (in such capacity, the "DIP Lender"), on, in, and to the Dobbs Ferry Real Estate, pursuant to that certain Senior Secured, Super-Priority Debtor-in-Possession Loan Agreement, dated as of June 21, 2024 (the "DIP Agreement"), all agreements, instruments, and documents related thereto (together with the DIP Agreement, the "DIP Loan Documents"), and that certain Final Order (I) Authorizing the Debtor St. Christopher's, Inc. to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, and (III) Modifying the Automatic Stay (the "Final DIP Order"), shall continue to exist on, in, and to the proceeds of the sale of the Dobbs Ferry Real Estate (the "Sale Proceeds") in the same order, manner, and priority as they existed on, in, and to the Dobbs Ferry Real Estate as security for all indebtedness, liabilities, expenses, and other obligations of St. Christopher's owed to the DIP Lender under the DIP Agreement, the DIP Loan Documents, and the Final DIP Order (the "DIP Obligations"); and (2) upon the closing and consummation of the sale of the Dobbs Ferry Real Estate, Sale Proceeds in an amount sufficient to repay all outstanding DIP Obligations in full shall be immediately paid to the DIP Lender in repayment of such DIP Obligations, unless the DIP Lender agrees to different treatment under terms and conditions, and pursuant to agreements, instruments, documents, and further Orders of this Court, acceptable to the DIP Lender in its sole and absolute discretion.

9.   <u>Surrender of Possession</u>.  The Dobbs Ferry Real Estate shall be delivered to the Purchaser and deemed delivered at the time of Closing (or such other time as provided in the Final PSA).

10.   <u>Vesting of Assets in the Purchaser</u>.  Effective upon the Closing, the transfer to the Purchaser of the Dobbs Ferry Real Estate pursuant to the Final PSA shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Dobbs Ferry Real Estate, and will vest in the Purchaser the Dobbs Ferry Real Estate free and clear of Claims.

11.   <u>Injunction</u>.  Except as expressly provided in the Final PSA or by this Sale Order, effective upon the Closing, all persons and entities, including, but not limited to, all debt holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons holding Claims or other interests in or against the Dobbs Ferry Real Estate shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Claims or other interests. All persons are hereby enjoined from taking any action that would interfere with or adversely affect the ability of the Debtors to transfer the Dobbs Ferry Real Estate in accordance with the terms of the Final PSA and this Sale Order.

12.   <u>Direction to Creditors and Parties in Interest</u>.  On the Closing Date, each of the Debtors' creditors and the holders of any Claims or other interests are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Claims or other interests against the Dobbs Ferry Real Estate, if any, as such Claims or other interests may otherwise exist.

13.   <u>Direction to Government Agencies</u>.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and

local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Dobbs Ferry Real Estate, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale and any other Transactions contemplated by the Final PSA and approved by this Sale Order.

14.     <u>Good Faith Purchaser</u>.  The Purchaser is entitled to the full rights, benefits, privileges, and protections afforded by section 363(m) of the Bankruptcy Code, and the Purchaser has proceeded in good faith in all respects in connection with the Sale specifically and these Chapter 11 Cases generally.

15.     <u>Consummation of Sale Transaction</u>.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors, as well as their officers, board member, employees, and agents, are authorized to enter into, execute, deliver and perform their obligations under and comply with the terms of the Final PSA and the Related Agreements and to close and consummate the Sale, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale and each of the Transactions contemplated thereby pursuant to and in accordance with the terms and conditions of the Final PSA, the Related Agreements, and this Sale Order.

16.     <u>Transfer of Marketable Title</u>.  Upon the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Dobbs Ferry Real Estate or a bill of sale transferring good and marketable title in the Assets to the Purchaser at the Closing pursuant to the terms of the Final APA, free and clear of all Claims and other interests.

17.    <u>No Successor Liability</u>.  By virtue of the Sale, the Purchaser and its affiliates, successors and assigns shall not be deemed or considered to: (i) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (ii) have, *de facto* or otherwise, merged with or into any or all Debtors; (iii) be a consolidation with the Debtors or their estates; or (iv) be an alter ego or a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates by any law or equity. The Purchaser and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, WARN, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other governmental fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Debtors prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

18.    <u>Approval to Release Claims and Interests</u>.  If any person or entity that has filed financing statements or other documents or agreements evidencing Claims or other interests on or in the Dobbs Ferry Real Estate shall not have delivered to the Debtors before the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose

of documenting the release of all Claims and other interests that the person or entity has or may assert with respect to the Dobbs Ferry Real Estate, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Dobbs Ferry Real Estate on or after the Closing Date. The Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and other interests on or in the Dobbs Ferry Real Estate.

19.     _Effect of Recordation of Order_. This Sale Order, once filed, registered, or otherwise recorded, (a) shall be effective as a conclusive determination that, upon the Closing Date, all Claims, of any kind or nature whatsoever existing as to the Dobbs Ferry Real Estate prior to the Closing Date have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities.

26.     _Inconsistencies with Prior Orders, Pleadings or Agreements_. To the extent this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall govern. To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Final PSA (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

27.     _Subsequent Orders and Plan Provisions_. Unless otherwise agreed to by the Debtors and the Purchaser, this Sale Order shall not be modified by any chapter 11 plan confirmed in these Chapter 11 Cases or any subsequent order(s) of this Court.

28.    <u>Binding Effect of Sale Order</u>.  This Sale Order and the Final PSA shall be

binding in all respects upon the Debtors, their estates, all creditors of the Debtors, any holders

of Claims on or other interests in the Dobbs Ferry Real Estate (whether known or unknown),

the Purchaser and all successors and assigns of the Purchaser, notwithstanding the dismissal of

any of the Debtors' cases or any subsequent appointment of any trustees, examiners,

"responsible persons" or other fiduciaries in these Chapter 11 Cases or upon a conversion of

these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and the Final PSA

shall not be subject to rejection or avoidance under any circumstances.

29.    <u>No Avoidance of Purchase Agreement</u>.  Neither the Debtors nor the Purchaser

have engaged in any conduct that would cause or permit the Final PSA to be avoided or costs

or damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Final

PSA and the Sale shall not be avoidable under section 363(n) or chapter 5 of the Bankruptcy

Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n)

of the Bankruptcy Code in respect of the Final PSA or the Sale.

30.    <u>Immediate Effect</u>.  This Sale Order constitutes a final order within the meaning

of 28 U.S.C. § 158(a).  Notwithstanding any provision in the Bankruptcy Rules to the contrary,

the terms of this Sale Order shall be immediately effective and enforceable upon its entry and

not subject to any stay, notwithstanding the possible applicability of Bankruptcy Rule 6004(h),

6006(d), or otherwise.

31.    <u>Satisfaction of Conditions Precedent</u>.  Neither the Purchaser nor the Debtors

shall have an obligation to close the Transactions until all conditions precedent in the Final PSA

to each of their respective obligations to close the Transactions have been met, satisfied, or

waived in accordance with the terms of the Final PSA.

32.     <u>Bulk Sales</u>.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Final PSA, the Sale Motion or this Sale Order.

33.     <u>Automatic Stay</u>.  The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Final PSA, and Related Agreements, documents or other instruments with respect to the Dobbs Ferry Real Estate. The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary to implement the provisions of this Sale Order.

34.     <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Final PSA (and all amendments thereto) and adjudicate, if necessary, any and all disputes concerning the Debtors and related in any way to the Sale; provided, however, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.  For the avoidance of doubt, nothing in this Sale Order shall be construed to mean that the Court has jurisdiction over issues concerning an inter-creditor dispute.

Dated:    November 7, 2024
            White Plains, New York

**/s/ Sean H. Lane**
Hon. Sean H. Lane
United States Bankruptcy Judge

## **EXHIBIT A**

**Asset Purchase Agreement**

Revised 10/21/24

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (hereinafter "Agreement") is dated _10/21/2024_____ __, 2024 for reference purposes by and between **Riverdale 3242 Avenue LLC** , ("Buyer"), a New York limited liability company with an address at 1763 Pitman Avenue Bronx New York 10466 and **St. Christopher's, Inc.** ("Seller" and, together with the Buyer, the "Parties"), a New York not-for-profit corporation with an address at 71 South Broadway, Dobbs Ferry, NY 10522-2800. This Agreement shall be effective on the date (the "Effective Date") it is executed by Seller and a fully executed counterpart is delivered to Buyer or Buyer's counsel as designated beneath Seller's signature hereof.

**Background**. Seller is the owner of a certain parcel of real property situated in Dobbs Ferry, New York as more particularly described in **Schedule A** attached hereto, incorporated herein and made a part hereof (the "Premises"). Seller wishes to sell to Buyer and Buyer wishes to purchase from Seller, the Property (as defined below). On April 29, 2024, Seller filed a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code (11 U.S.C. Sections 101 *et seq.*, as amended, and, collectively with the Federal Rules of Bankruptcy Procedure, the "Bankruptcy Code"), commencing bankruptcy proceedings captioned In re: St. Christopher's, Inc., Case No. 24-22373 (the "Bankruptcy Case"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Case"). The Parties intend to effectuate this Agreement and the transactions contemplated hereby under Sections 105, 363 and 365 of the Bankruptcy Code. The Bankruptcy Court has issued a Bidding Procedures Order governing the sale process for the Property (as defined below), a copy of which is attached hereto as **Schedule B**, incorporated herein and made a part hereof (the "Bidding Procedures Order"). This Agreement is entered into and delivered pursuant to and subject to the Bidding Procedures Order. This Agreement is subject to approval of the Bankruptcy Court and will be consummated only under the Sale Order (as defined below) to be entered in the Bankruptcy Case.

In consideration of the foregoing and the agreements hereinafter set forth, the Parties agree as follows:

1.      **PROPERTY TO BE CONVEYED:**  In consideration of the Purchase Price hereinafter specified, Seller hereby agrees to sell and convey to Buyer, and Buyer hereby agrees to purchase from Seller the Premises together with:

(a) all of Seller's right, title and interest in the buildings and improvements on the Premises, including all fixtures, heating, ventilation and air conditioning, plumbing and electrical systems, parking areas, landscaping and utilities located on or in and used in connection with such buildings and improvements;

(b) all right, title and interest of Seller in and to all easements, rights, interests, claims and appurtenances, if any, in any way belonging or appertaining to the Premises; and

(c) all right, title and interest of Seller in and to all adjoining streets, alleys and other public ways (before or after vacation thereof);

(d) all right, title and interest of Seller in and to easements, rights-of-way, passages, sewer rights, waters, water courses, water rights and powers belonging, relating or pertaining to the Premises; and

(e) All certificates of occupancy or use and all permits, licenses, consents and authorizations held in connection with the ownership, use, occupancy or operation of the Premises to the extent assignable by Seller to Buyer;

subject to the encumbrances and exceptions to title set forth or referred to in **Schedule A** or in paragraph 3(c) below. The Premises, together with (a) through (e) above is hereinafter referred to as the "Property").

2.    **CONSIDERATION.**    (a) The purchase price is Four Million One Hundred Twelve Thousand Five Hundred Dollars  and 00/100 ($4,125,000.00)  DOLLARS U.S. (the "Purchase Price") (subject to adjustment as described in Section 7 below) which Buyer agrees to pay as follows:

| | |
|---|---|
| (i) As the deposit (the "Deposit") upon the signing of this Agreement, receipt of which is hereby acknowledged, by wire transfer to Barclay Damon LLP, as escrow agent (the "Escrow Agent") as described below; | $ 412,500.00 |
| (ii) Upon the Closing, to Seller by wire transfer as described below (such amount, the "Purchase Price Balance") subject to adjustment as described in this Agreement; | $3,712,500.00 |
| TOTAL | **$4,125,000.00** |

(b) The Deposit shall be paid by wire transfer initiated by a financial institution insured by the Federal Deposit Insurance Corporation to the Escrow Agent, who shall hold the same as escrow agent subject to the terms and conditions hereof and release same to Seller at the time of closing or to the party entitled thereto upon sooner termination of this Agreement. Payments to the Escrow Agent hereunder shall be made in accordance with the following wire instructions:

> Bank:  KeyBank National Association
> 201 South Warren Street
> Syracuse, NY 13202
> (800) 821-2829
> Routing Number: ████████
> Account Number: ████████
> Account Name: Barclay Damon LLP
> Reference: St. Christopher's, Inc. (3210387)

29964147.1

(c) At Closing, the Purchase Price Balance and the Deposit shall be paid by wire transfer directly to Seller in accordance with the following wire instructions:

> Bank: KeyBank National Association
> 201 South Warren Street
> Syracuse, NY 13202
> (800) 821-2829
> Routing Number: ███████
> Account Number: ████████
> Account Name: Barclay Damon LLP
> Reference: St. Christopher's, Inc. (3210387)

3.     **TITLE.** (a) Within five (5) business days after the Effective Date, Buyer shall procure (at its sole cost and expense) a preliminary title commitment for a standard owner's title insurance policy issued by a nationally recognized title company of its choice. Buyer shall (i) provide Seller with a copy of said preliminary title commitment and (ii) notify Seller in writing of Buyer's reasonable disapproval of any exception (each a "Disapproved Exception") contained in said preliminary title commitment that is not set forth in **Schedule A** or Paragraph 3(c) hereof, all within five (5) business days after Buyer's receipt of said preliminary title commitment or Buyer shall be deemed to have approved of all exceptions shown in said preliminary title commitment. If Buyer notifies Seller within the above-described time frame, then Seller shall attempt to obtain the release or termination of each Disapproved Exception. If, on the Closing Date, Seller shall be unable to obtain the release or termination of each Disapproved Exception, then Seller shall be allowed a reasonable postponement of Closing, not to exceed ten (10) calendar days, within which to obtain the release or termination of each Disapproved Exception by providing notice to Buyer. If at the end of said time Seller is still unable to deliver or cause to be delivered the Deed conveying its interest in the Premises, subject as aforesaid, then Buyer (i) may elect to accept such title as Seller can convey, without modification of the Purchase Price, or (ii) may reject such title by providing Seller with written notice thereof within three (3) business days after the end of such ten (10) day period, time being of the essence. Upon such rejection, Buyer shall be entitled to a return of the Deposit without interest thereon. Upon receipt of such payment, this Agreement shall terminate and the Parties hereto shall be released and discharged from all further claims and obligations hereunder except those obligations which by the terms of this Agreement survive the termination of this Agreement. If Buyer does not timely provide the notice described in (ii) above, Buyer shall be deemed for all purposes to accept the status of title to the Property as indicated in the above described preliminary title commitment. Notwithstanding the foregoing, no exception shall constitute a Disapproved Exception if Buyer or Seller, at Buyer's expense, can obtain a title insurance policy issued by a title insurance company licensed to do business in the State of New York, at standard rates, naming Buyer as insured in an amount equal to the Purchase Price which either omits or insures over such exception. As used in this Agreement, "business day" means any day other than a Saturday, Sunday or day on which banks in the State of New York are permitted or required to close.

(b)     Notwithstanding the provisions of Paragraph 3(a), the title to be furnished by Seller shall be subject to the items set forth in **Schedule A** and Paragraph 3(c) hereof.

3

(c)     The Premises will be conveyed to and accepted by Buyer subject to:

(i)     Any and all zoning and/or building restrictions, limitations, regulations, ordinances, and/or laws; any and all building lines; and all other restrictions, limitations, regulations, ordinances and/or laws imposed by any governmental authority and any and all other provisions of any governmental restrictions, limitations, regulations, ordinances and/or public laws.

(ii)    Real property taxes and any and all existing tax payments, municipal liens and assessments, coming due after the Closing Date; Buyer shall by acceptance of the Deed assume and agree to pay, any and all such tax payments, liens and assessments which may after the date hereof be assessed, levied against or become a lien on the Premises.

(iii)   Any state of facts which a survey and/or physical inspection of the Premises might reveal.

(iv)    Common law or riparian rights of others and/or other rights, if any, in and to any natural watercourse or body of water flowing through or adjoining the Premises, and all statutory and other rights of others in and to any such watercourse or body of water.

(v)     Rights of School District Number 12 of the Towns of Greenburgh and North Castle ("Tenant") pursuant to one or more leases (collectively, the "Lease") for a portion of the Property as described in the Lease (the "Leased Premises").

4.      **CLOSING**:  The closing of title (the "Closing") shall take place at the office of Seller's counsel, Barclay Damon LLP, 1270 Avenue of the Americas, New York, NY 10020 on the third business day following entry of the Sale Order (as defined below) or as otherwise provided in Section 3(a) above, or sooner by mutual agreement of the Buyer and Seller.   The date of the Closing is referred to herein as the "Closing Date".

5.      **CLOSING OBLIGATIONS.**  (a) At the Closing, Seller shall deliver to Buyer:

(i)     a Quit Claim Deed in the usual New York form, sufficient to convey title to the Property (the "Deed");

(ii)    Checks to the order of the appropriate officers in payment of any real property transfer taxes due hereunder.

(iii)   Seller's certificate stating Seller's Federal taxpayer identification number and certifying that Seller is not a foreign person, corporation, partnership, trust or estate as defined in the Internal Revenue Code and Regulations thereunder, pursuant to the Foreign Investment in Real Premises Tax Act of 1980.

4

(iv)    Keys and security pass codes (if applicable) to the buildings on the Premises other than buildings included in the Leased Premises.

(v)    An affidavit to the best of Seller's knowledge relative to the status of mechanics liens and tenants in possession in the usual form used by title insurers doing business in New York.

(vi)    An assignment of the Lease conveying to Buyer all of Seller's right, title and interest thereto.

(vii)    A copy of the Lease.

(viii)    Any security deposit under the Lease in Seller's actual possession.

(ix)    A Certificate of Existence for Seller.

(x)    Authorizing resolutions of Seller's board of directors authorizing the sale of the Premises to Buyer and approving the terms of this Agreement.

(xi)    An original or certified copy of the Sale Order (as defined below).

(b)  At the Closing, the Buyer shall:

(i)    Pay to Seller's counsel the Purchase Price Balance in accordance with the wire instructions in Section 2(c) above.

(ii)    Authorize and direct the Escrow Agent to pay the Deposit to Seller.

(iii)    Record the Deed.

(iv)    Deliver to Seller a Certificate of Existence or Good Standing for Buyer issued by the Secretary of State of the State of Buyer's organization and, if Buyer is not organized in the State of New York, a certificate issued by the Secretary of State of the State of New York certifying Buyer's authorization to do business as a foreign entity in the State of New York.

(v)    Deliver to Seller authorizing resolutions of Buyer's [members/managers] [shareholders and directors] authorizing the purchase of the Premises from Seller and approving the terms of this Agreement.

6.    **PURCHASE PRICE.** At the Closing, (i) the Buyer shall pay the Purchase Price Balance to the Seller's counsel by wire transfer as described in Section 2(c) above, (ii) the Escrow Agent shall pay the Deposit to or as directed by the Seller in accordance with instructions provided by the Seller to Escrow Agent and (iii) Seller's counsel  shall pay the Purchase Price

5

Balance to or as directed by the Seller in accordance with instructions provided by the Seller to Seller's counsel.

**7.    APPORTIONMENT, ADJUSTMENTS AND CLOSING COSTS.**

(a)    The following apportionments shall be made between the Parties at the Closing as of the close of business on the day prior to the Closing Date:

(i)    Non-delinquent real estate taxes, assessments, special district charges, water charges and sewer rents, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Property, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available; and

(ii)    prepaid rents (including, without limitation, any prepaid common area charges and real estate taxes) under the Lease, if any.

(b) If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation.

(c) If any past due rentals are owing by Tenant at the time of Closing, Seller is entitled to said past due rental. In such case Buyer agrees that the first monies received by Buyer from Tenant will be received by Buyer as trustee for Seller on account or in payment of such past due rentals and the Buyer agrees to remit forthwith to the Seller the amount of such rentals to which the Seller is entitled, so collected, out of the first monies received by Buyer.  Seller reserves the right to sue for arrears or for any additional rent due Seller and the same are not assigned to Buyer. From and after the Effective Date, Seller shall not commence any summary eviction proceedings.

(d) Seller and Buyer agree to comply in all respects with Section 1445 of the Code and the regulations issued thereunder (the "Regulations").  If Seller is not a "foreign person" (as defined in the Regulations), Seller shall deliver to Buyer at Closing a nonforeign certificate as prescribed by the Regulations, properly executed and in form and content satisfactory to Buyer.  If Seller is a "foreign person" or fails or refuses to deliver the nonforeign certificate, or if Buyer receives notice, or has actual knowledge, that the nonforeign certificate is false, a tax equal to 10% of the Purchase Price shall be withheld by Buyer at Closing and paid to the Internal Revenue Service in the manner prescribed by the Regulations, unless withholding is reduced or excused in the manner prescribed by the Regulations.  In the event of any withholding, Seller's obligations to deliver title and close this transaction shall not be excused or otherwise affected.

(e) Seller shall pay any and all transfer, gains or documentary stamp taxes and other taxes due in connection with the transfer of the Premises from Seller to Buyer.  All sales taxes due in connection with the transfer of the Personal Property shall be paid by Buyer.

(f) Buyer shall pay all recording and filing fees incurred in connection with recording the Deed.

29964147.1

8.    **SELLER'S COVENANTS.**

Seller covenants that between the Effective Date and the Closing Date:

(a) It shall not encumber the Premises or enter into any lease or other occupancy agreement with respect to the Premises without the prior written consent of Buyer.

(b)    Seller shall, at its sole cost and expense, comply with all notices, orders and requirements issued by any Governmental Authority having jurisdiction against or affecting the Premises.

(c)    Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes or assessments imposed with respect to the Premises for any fiscal period in which the Closing is to occur or for any subsequent fiscal period without the prior written consent of Buyer.

(d)    Seller shall not modify or amend any existing service contract or enter into any new service contract with respect to the Premises the term of which extends beyond the Closing Date or which cannot be cancelled on greater than thirty (30) days' notice without Buyer's prior written consent.

(e)    Seller shall cause to be maintained in full force and effect property and casualty insurance on Property in such amount and with such coverage as is customary for property similar to the Property.

(f)    Seller shall maintain, repair, manage and operate the Premises in accordance with Seller's prior practices.

(g)    Seller shall, upon Buyer's request, provide Buyer with access to the Premises (other than the Leased Premises) for any purpose related to this Agreement.

9.    **DELIVERY OF PROPERTY.**  Seller agrees to deliver, simultaneously with the closing of title, possession of the Property, subject to the rights of Tenant to the Leased Premises pursuant to the Lease.

10.    **CONDITION OF PROPERTY.** Buyer represents to Seller that: (a) it is relying on its own inspection, investigation and examination of the Property; and (b) neither Seller nor any representative of Seller has made any representation or promise upon which Buyer has relied concerning the condition of the Property or of any property covered by this Agreement, it being intended by the Parties that the Property is to be conveyed "AS IS" and "WITH ALL FAULTS". Specifically, but not by way of limitation, Seller does not make, has not made and specifically disclaims any representation or warranty, express or implied, regarding the environmental condition at, on, under or about the Property or the compliance or non-compliance of the Property with applicable environmental laws, including any administrative or judicial interpretation thereof. Without limiting the generality of this acknowledgement and agreement, it is specifically

7

acknowledged and agreed that the Property shall be accepted by Buyer in "AS IS" condition, "WITH ALL FAULTS".

## 11.   DEFAULT.

(a)      If Buyer is in default hereunder, or, on or before the date of Closing as set forth herein, indicates that Buyer is unable or unwilling to perform and Seller stands ready to perform Seller's obligations, Seller's sole and exclusive remedy shall be the right to terminate this Agreement by written notice to Buyer and have the Deposit paid to Seller as reasonable liquidated damages for Buyer 's inability or unwillingness to perform.  It is the intention of the Parties hereto freely to make advance provision on the date of this Agreement for such event in order (i) to avoid controversy, delay and expense, and (ii) to specify now a reasonable amount agreeable to the Parties for compensation to Seller for losses which may not be readily ascertainable or quantifiable, such as any of the following which might be necessary to place Seller in the position Seller would have been in had Buyer made timely performance:  costs of carrying, maintaining, insuring and protecting the property; loss of interest income on the proceeds; loss of optimum market time, value and conditions; the uncertainty, delay, expense and inconvenience of finding a substitute buyer; additional commissions, fees, taxes and borrowing expenses to meet obligations entered into in anticipation of performance. In such event and upon Seller's written notice of termination and Seller's receipt of the Deposit, the Property shall be free of any claims or interest of Buyer therein by virtue of this Agreement.

(b)      If Seller is in material default hereunder, or, on or before the date of Closing as set forth herein, indicates that Seller is unable or unwilling to perform and Buyer stands ready to perform Buyer's obligations, Buyer's sole and exclusive remedy shall be the right to terminate this Agreement by written notice to Seller in which case the Deposit shall be returned to Buyer.  Upon receipt of such payment, this Agreement shall terminate and the Parties hereto shall be released and discharged from all further claims and obligations hereunder except those obligations which by the terms of this Agreement survive the termination of this Agreement. In such event and upon Buyer's written notice of termination and Buyer's receipt of the Deposit, the Property shall be free of any claims or interest of Buyer therein by virtue of this Agreement.

## 12.   ESCROW.

(a)      The funds represented by the Deposit shall be held in escrow by the Escrow Agent in a non-interest bearing deposit account at a Bank reasonably acceptable to Seller.  The Deposit: (i) shall become the property of Seller (A) upon the delivery of the Deed, or (B) after proper demand by Seller without objection from Buyer in the manner described below; (ii) shall be returned to Buyer after proper demand by Buyer without objection from Seller in the manner described below; or (iii) shall be delivered to either Seller or Buyer in accordance with a final judgment, which is no longer subject to, or the subject of, an appeal, of a court of competent jurisdiction directing the disposition of the Deposit.

(b)      It is understood and agreed that the Escrow Agent's sole duties hereunder are as provided herein and that the Escrow Agent in the performance of its duties hereunder is hereby released and exculpated from all liability except for willful malfeasance or gross negligence and

8

shall not be liable or responsible for anything done or omitted to be done in good faith as herein provided. If either Seller or Buyer makes a demand upon the Escrow Agent, setting forth the basis for such demand, for payment of all or a portion of the Deposit, the Escrow Agent shall give at least 10 business days' notice to the other party of such demand and of its intention to pay over the amount demanded on a stated date. If the Escrow Agent does not receive, before the proposed payment date, an objection to the proposed payment setting forth the basis for such objection, the Escrow Agent is hereby authorized and directed to make such payment. If before the proposed payment date such other party (or its counsel) delivers to the Escrow Agent an objection to such payment setting forth the basis for such objection, the Escrow Agent shall promptly deliver a copy of such objection to the party originally demanding payment, and shall continue to hold such amount until otherwise directed by the joint written instruction of Seller and Buyer or by a final judgment of a court of competent jurisdiction which is no longer subject to, or the subject of, an appeal. In the event that a dispute shall arise as to the disposition of all or any portion of the Deposit held by the Escrow Agent, the Escrow Agent shall, at its option, either (i) commence an action of interpleader and deposit the same with a court of competent jurisdiction, pending the decision of such court, and shall be entitled to rely upon the final judgment of any such court with respect to the disposition of all or any portion of the Deposit provided that such judgment is no longer subject to, or the subject of, an appeal or (ii) hold the same pending receipt of joint instructions from Seller and Buyer and shall be entitled to rely upon such joint instructions with respect to the disposition of all or any portion of the Deposit, or a final judgment, which is no longer subject to, or the subject of, an appeal, of a court of competent jurisdiction directing the disposition of the Deposit. The Escrow Agent shall be entitled to consult with counsel (including any member of the Escrow Agent's firm, if applicable) and be reimbursed for all reasonable expenses of such consultation with respect to its duties as Escrow Agent and shall be further entitled to be reimbursed for all reasonable out of pocket expenses incurred in connection with such activities. All such expenses shall be paid by the party whose position shall not be sustained.

(c)     The Escrow Agent may act or refrain from acting in respect of any matter referred to herein, in full reliance upon and by and with the advice of counsel which may be selected by the Escrow Agent (including any member of the Escrow Agent's firm, if applicable) and shall be fully protected in so acting or so refraining from acting upon the advice of such counsel. The Escrow Agent shall have the right to rely upon the certificates, notices and instruments delivered to it pursuant hereto, and all the signatures thereto or to any other writing received by the Escrow Agent purporting to be signed by any party hereto, and upon the truth of the contents thereof. The Escrow Agent shall not be bound by any modification of this Agreement which affects the rights or duties of the Escrow Agent unless it shall have given its prior written consent thereto. The Escrow Agent may, but shall not be required to, institute or defend any action or legal process involving any matter referred to herein which in any manner affects the Escrow Agent or its duties or liabilities hereunder, unless or until requested to do so by Seller or Buyer and then only upon receiving full indemnity in an amount, and of such character, as the Escrow Agent shall require, against any and all claims, costs, liabilities, judgments, attorneys' fees and disbursements, and other expenses of any kind in relation thereto.

(d)     Seller and Buyer agree, jointly and severally, to defend and indemnify the Escrow Agent and hold the Escrow Agent harmless from all claims which may be incurred by the Escrow Agent by reason of its acceptance of, and its performance under, this Agreement.

9

(e)    The Escrow Agent may at any time resign hereunder by giving notice of its resignation to Seller and Buyer at least 30 days prior to the date specified for such resignation to take effect and, upon the effective date of such resignation, the Deposit shall be delivered by the Escrow Agent to such person or entity as Seller and Buyer may have jointly designated in writing or to such person or entity as may be designated as hereinafter provided as the successor Escrow Agent, whereupon all duties and obligations of the Escrow Agent named herein shall cease and terminate. If no such person or entity shall have been designated by both Seller and Buyer by the date which is 5 days prior to the date specified for such resignation to take effect then the Escrow Agent may designate a title insurance company or bank in the State of New York to act as escrow agent hereunder.

13.    **TERMINATION**. This Agreement may be terminated at any time prior to the Closing:

(a)    by the mutual written consent of Seller and Buyer;

(b)    by Buyer upon written notice to the Seller if Buyer is not then in material breach of any provision of this Agreement and there has been a material breach of, material inaccuracy in, or failure to perform any material representation, warranty, agreement, or covenant of Seller in this Agreement, and such breach, inaccuracy, or failure cannot reasonably be cured by Seller on or before December 2, 2024 (the **"Drop Dead Date"**);

(c)    by Seller upon written notice to Buyer if Seller is not then in material breach of any provision of this Agreement and there has been a material breach of, inaccuracy in, or failure to perform any representation, warranty, agreement, or covenant of Buyer in this Agreement, and such breach, inaccuracy, or failure cannot reasonably be cured by Buyer on or before the Drop Dead Date; or

(d) by Seller or Buyer upon written notice to the other party:

(i)    if the Sale Order is not entered by the Drop Dead Date;

(ii)    if the Bankruptcy Court enters an order dismissing the Bankruptcy Case or converting the Bankruptcy Case to a proceeding under chapter 7 of the Bankruptcy Code.

14.    **RISK OF LOSS:** Throughout the period between the Effective Date and the Closing Date, Seller shall bear the risk of loss. If the Premises are damaged for any cause prior to the Closing, Seller shall have the option to repair or not to repair the same; and shall give written notice of its election to Buyer within five (5) days after the damage or on the Closing Date, whichever comes first. If Seller elects to repair the same at Seller's expense (including use of insurance proceeds) it shall promptly and in good faith undertake to do so and shall complete such repairs prior to Closing. If the Premises are not in, or cannot be restored to, substantially the present condition, reasonable wear and tear excepted, prior to the Closing, Buyer shall have the option of:

(a)    Accepting title to the damaged Property in its damaged condition and receiving credit on the Purchase Price equal to any insurance monies paid or to be paid to

10

Seller on account of such loss or an assignment Seller's rights to receive the same; or

(b)    Terminating this Agreement, in which event the Deposit shall be paid to Buyer the Deposit and neither Party shall have any further rights or obligations under this Agreement and this Agreement shall thereupon become void and have no effect except those obligations which by the terms of this Agreement survive the termination of this Agreement.

15.    **CONDEMNATION:** If the whole or any part of the Premises is taken by eminent domain from and after the Effective Date until the passing of the Closing Date and title, each party retains the right to assert a claim for damages or compensation to the governmental authority asserting said eminent domain. Each party's claim shall be independent of the other.

16.    **REPRESENTATIONS AND WARRANTIES OF THE SELLER**: The Seller hereby represents and warrants to the Buyer that:

(a) Seller is a not-for-profit corporation which has been duly organized and is validly existing and in good standing under the laws of the State of New York, and has the full power and authority to enter into, execute, deliver, consummate and carry out the transaction contemplated by this Agreement and any instruments and agreements reasonably necessary therefor; and

(b) The person executing this Agreement on behalf of Seller is duly authorized to do so.

17.    **REPRESENTATIONS AND WARRANTIES OF THE BUYER:** The Buyer Riverdale 3242 Avenue LLC hereby represents and warrants to the Seller that:

(a)    Buyer is a limited liability company which has been duly organized and is validly existing and in good standing under the laws of the State of New York and has the full power and authority to enter into, execute, deliver, consummate and carry out the transaction contemplated by this Agreement and any instruments and agreements reasonably necessary therefor; and

(b)    The person executing this Agreement on behalf of Buyer is duly authorized to do so.

18.    **PROOF OF FUNDS.** Buyer represents and warrants that it has sufficient funds and access to sufficient funds to close the purchase contemplated by this agreement without the need to obtain new or additional financing. As set forth in the Bidding Procedures Order, Buyer shall provide to Seller proof of such funds reasonably satisfactory to Seller.

19.    **ASSIGNMENT.** Except as otherwise provided below, this Agreement and Buyer's rights hereunder may not be assigned by Buyer without the prior written consent of Seller, and any purported assignment without such written consent shall be void and of no effect. Notwithstanding the foregoing, Buyer may assign its rights hereunder without Seller's consent

11

to one or more affiliates 100% owned and controlled by Buyer by providing Seller with written notice of such assignment, which written notice shall state the relationship of the acquiring entity. Upon any effective assignment of Buyer's rights hereunder, Buyer and Buyer's assignee shall be jointly and severally liable hereunder, unless otherwise agreed by Seller in writing.

20.     **BROKER:** The Parties represent that Ariel Property Advisors LLC, as broker for Seller (the "Broker"), is the only broker responsible for the sale of the Premises. Seller agrees to pay the commission due such Broker in connection with the sale of the Premises under separate agreement at the time of Closing. Each party represents to the other that no other broker or agent brought the Premises to Buyer's attention, was, in any way, a procuring cause of this sale and purchase, or was otherwise involved in the presentation or negotiation of this transaction.  Buyer hereby agrees to indemnify and hold harmless Seller against the claim of any broker or agent for a commission due by reason of this sale, where it is alleged that said broker or agent called the Premises to Buyer's attention or interested Buyer therein or otherwise assisted in or facilitated Buyer's purchase of the Property, said indemnity to include all costs of defending any such claim, including reasonable attorney's fees. The provisions of this paragraph shall survive the delivery of the Deed.

21.     **BANKRUPTCY COURT APPROVAL**

(a) Seller and Buyer acknowledge and agree that this Agreement and the sale of Property as described herein are subject to Bankruptcy Court approval.  Seller and Buyer acknowledge that (i) to obtain such approval, Seller must demonstrate that it has taken reasonable steps to obtain the highest and otherwise best offer possible for the Property, and that such demonstration shall include giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court.

(b) From and after the date of execution of this Agreement and prior to the Closing or the termination of this Agreement in accordance with the terms hereof, Seller shall not take any action which is intended to or fail to take any action the intent of which failure to act is to, result in the reversal, voiding, modification or staying of the Sale Order, as defined below.

(c) **RESERVED**

(d) Seller shall file a proposed version of the Order (A) Authorizing the Sale of the Property, and (B) Granting Related Relief, (acceptable in form an substance to Buyer in its reasonable discretion, the "**Sale Order**"), in the Bankruptcy Case as soon as reasonably practicable prior to the hearing on the entry of the Sale Order.  Seller shall pursue diligently the entry of the Sale Order. Buyer agrees that it shall promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.  In the event that the entry of the Sale Order is appealed or a stay pending appeal is sought, Seller shall oppose the appeal or the stay pending appeal and seek the dismissal of any appeal (including a petition for certiorari, motion for rehearing, re-argument, reconsideration or revocation).  Notwithstanding the foregoing, any resulting changes to this Agreement or any related document shall be subject to the approval of Buyer in its reasonable discretion.

29964147.1

(e) Seller acknowledges and agrees, and the Sale Order shall provide, among other things, that, on the Closing Date and concurrently with the Closing, all then existing or thereafter Encumbrances (other than Permitted Encumbrances) of, against or created by Seller or the bankruptcy estate and in existence on or prior to the Closing Date shall be fully released from and with respect to the Property, which shall be transferred to Buyer Free and Clear of all such Encumbrances.

(f) If an Auction (as defined in the Bidding Procedures) is conducted and Seller does not choose Buyer as the Successful Bidder (as defined in the Bidding Procedures), but instead chooses Buyer as the Back-Up Bidder (as defined in the Bidding Procedures), Buyer will be the Back-Up Bidder.  If Buyer is chosen as the Back-Up Bidder, Buyer will be required to keep its bid to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as may be amended with both Parties' written consent prior to or at the Auction) open and irrevocable until the closing of the sale of the Purchased Assets to the Successful Bidder; *provided* that in no event shall Buyer be required to keep its bid to consummate the transactions contemplated by this Agreement open and irrevocable after 5:00 p.m. EST on the fifth business day after the Drop Dead Date.  If the Successful Bid with the Successful Bidder is terminated prior to closing but before 5:00 p.m. EST on the fifth business day after the Drop Dead Date, Buyer will be deemed to be the Successful Bidder and will forthwith consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be amended with both Parties' written consent prior to or at the Auction).

29964147.1

22.    **NOTICES.** Any notice or other communication that is to be given hereunder shall be in writing and delivered by certified mail, or sent by reliable electronic means, or sent by nationally recognized overnight courier to such party at the address set forth below:

If to Seller:

Dr. Sarah Ruback
c/o Barclay Damon LLP
1270 Avenue of the Americas, Suite 501
New York, NY 10020
Attn: Janice Grubin, Esq.
Email: jgrubin@barclaydamon.com
            and
Email: sruback@sc1881.org

with a copy (which shall not constitute notice) to:

Barclay Damon LLP
1270 Avenue of the Americas, Suite 501
New York, NY 10020
Attn: Janice Grubin, Esq.
Email: jgrubin@barclaydamon.com

If to Buyer:

Riverdale 3242 Avenue LLC
1763 Pitman Avenue
Bronx New York 10466

Email: mstagg@stagggroup.com

with a copy (which shall not constitute notice) to:

K.Bradshaw Esq.
5959 Broadway # 3
Bronx New York 10463

Email: Kbradshaw@stagggroup.com

If to Escrow Agent:

Barclay Damon LLP
1270 Avenue of the Americas, Suite 501
New York, NY 10020
Attn: Janice Grubin, Esq.
Email: jgrubin@barclaydamon.com

14

23.    **RECORDING.**    This Agreement shall not be recorded in the land records. Any recordation of this Agreement by or at the direction of Buyer shall, at Seller's option, constitute a default by Buyer under this Agreement

24.    **ENTIRE AGREEMENT; AMENDMENT.** This Agreement embodies the entire agreement and understanding between the Parties relating to the subject matter hereof and there are no covenants, promises, agreements, conditions or understandings, oral or written, except as herein set forth. This Agreement may not be amended, waived or discharged except by an instrument in writing executed by the party against whom such amendment, waiver or discharge is to be enforced.

25.    **BINDING EFFECT.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their successors and assigns.

25.    **RIGHT TO WITHDRAW.**  This Agreement shall not be considered or construed as an offer by Seller.  Seller reserves the right to withdraw this proposed Agreement at any time prior to the signature hereof by Buyer, Seller and Escrow Agent, receipt by the Escrow Agent of the full payment of the Deposit set forth herein, and delivery of a fully executed Agreement to Buyer.

26.    **IRS REPORTING COMPLIANCE.**  It is agreed that Buyer's attorney shall be deemed to be the "Settlement Agent" in this transaction for the purposes of Section 1521 of the Tax Reform Act of 1986. As such Settlement Agent, Buyer's attorney shall be responsible for properly filing the required information under said Section to the Internal Revenue Service and providing the required Notices of Filing to the appropriate parties. The provisions of this paragraph shall survive the closing.

27.    **ACCEPTANCE OF DEED.**  The Parties agree that, except to the extent expressly provided herein or by way of a specific agreement in writing which by its terms shall expressly survive the Closing, the delivery by Seller and the acceptance by Buyer of the Deed at the Closing shall be deemed to constitute full compliance by Seller with all of the terms, conditions and covenants of this Agreement on its part to be performed.

28.    **EFFECT.**  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and permitted assigns of the respective Parties.

29.    **GOVERNING LAW; SUBMISSION TO JURISDICTION.**  This Agreement shall be construed and enforced in accordance with the laws of the State of New York.  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the Parties hereto in the courts of the State of New York located in New York or Westchester County or, if it has or can acquire jurisdiction, in the United States District Court for the Southern District of New York, and each of the Parties hereto consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

30.    **COUNTERPARTS / FACSIMILE / ELECTRONIC MAIL.**  This Agreement may be executed in any number of counterparts, and by the Parties hereto in separate counterparts, each

29964147.1

of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one and the same Agreement. The Parties hereto agree that this Agreement may be transmitted between them or their respective attorneys by facsimile. The Parties hereto intend that a manual signature delivered by facsimile, e-mail, or other means of electronic transmission, shall be deemed to have the same effect as delivery of an original signed copy of this Agreement, and that an Agreement containing the manual signatures (original or delivered by facsimile, e-mail, or other means of electronic transmission) of all the Parties is binding on the Parties once sent via facsimile or via electronic mail to counsel for Buyer and Seller.

31.    **ENTIRE AGREEMENT.** All prior understandings, agreements, representations and warranties, oral and written, between Seller and Buyer are merged in this Agreement. This Agreement completely expresses the agreement of the Parties, and has been entered into by the Parties after discussion with their respective attorneys and after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this Agreement. Neither this Agreement nor any provision hereof may be waived, changed or cancelled except by a written instrument signed by all Parties.

32.    **MUTUAL AGREEMENT.** Each and every provision of this Agreement has been mutually negotiated, prepared and drafted. Each party hereto has been represented by legal counsel or has had the opportunity to be represented by legal counsel. In connection with the construction or interpretation of any provision hereof, no consideration shall be given to the issue of which party actually prepared, drafted, requested or negotiated any provision or deletion. This Agreement shall not be construed more severely against any one party hereto than against any other party hereto.

33.    **CAPTIONS**. The captions preceding the paragraphs in this Agreement are for ease of reference only and shall be deemed to have no effect whatsoever on the meaning or construction of the provisions of this Agreement.

34.    **SEVERABILITY**. In case any one or more of the provisions contained in this Agreement, or any of the documents or agreements contemplated hereby, should be invalid, illegal or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

35.    **ATTORNEYS' FEES.** In the event suit is brought to enforce any provisions of this Agreement, the prevailing party shall be entitled to costs of suit including reasonable costs and attorneys' fees.

36.    **WAIVER OF JURY TRIAL. BUYER AND SELLER HEREBY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT.**

[Signature page follows.]

29964147.1

**SELLER**

**St. Christopher's, Inc.**

By: _____

     Name: Dr. Sarah Ruback

     Title:  Chief Executive Officer

Effective Date: _____

**BUYER**

Riverdale 3242 Avenue LLC

By: _____

     Name:  Mark Stagg

     Title:  Managing Member

:

The undersigned Escrow Agent agrees to be bound by the provisions of Section 12 above and the duties of Escrow Agent set forth in Section 2 above.

**ESCROW AGENT**

**Barclay Damon LLP**

By:  /s/ Janice B. Grubin _____

     Name: Janice B. Grubin

     Title:  Partner

### Schedule A
### Property Description

29964147.1

## SURVEYOR CERTIFICATE

The undersigned hereby certifies to St. Christopher's, Inc., its successors and assigns, that the property description attached hereto as Exhibit A is being and intended to be the same premises conveyed to St. Christopher's, Inc. by (i) Deed recorded in Liber 4152 Page 96, excepting therefrom so much as was conveyed by Control Number 640933510, (ii) by Deed recorded in Liber 3515 Page 197, (iii) by Deed recorded in Liber 1201 Page 430, excepting therefrom so much as was conveyed by Deed recorded in Liber 121 Page 445, but including that portion of said lands included in  the Deed recorded in Liber 121 Page 445 that was conveyed in the Deed recorded in Liber 308 Page 366 and a portion of the Deed recorded in Liber 259 Page 385, also _excepting therefrom_ so much as may have been conveyed by Deed to New York Central and Hudson River Rail Road Company by Deed recorded in Liber 1805 Page 152, and also excepting therefrom any lands conveyed thereby that lie on the easterly side of Broadway, and _also excepting_ therefrom, so much as was conveyed to The Village of Dobbs Ferry for the improvement of Broadway by Deed recorded in Liber 3018 Page 162, and (iv) by Deed recorded in Liber 1201 Page 437, _excepting therefrom_ so much as was conveyed by Deed to New York Central and Hudson River Rail Road Company by Deed recorded in Liber 1805 Page 152, and _subject to_ so much as may have been granted unto the New York Central and Hudson River Rail Road Company by virtue of its Charter.

BADEY & WATSON
*Surveying & Engineering, D.P.C.*

September 18, 2024.

by
Jennifer W. Reap, L.S., President
New York State License No. 50389

29581382.1

Exhibit A
Legal Description

**ALL** those certain parcels of land situate in the Village of Dobbs Ferry, Town of Greenburgh, County of Westchester, and State of New York that are bounded and described as follows.

**PARCEL I: Section 3.110 Block 103 Lot 2**

**ALL** that portion of the land heretofore conveyed by Annie Turner Howard to St. Christopher's Home by that certain deed dated June 17,1890 and recorded in the Westchester County Clerk's Liber 1201 of deeds at page 430 that lie easterly of lands formerly of the Hudson River Railroad Company and now or formerly of the Metro North Railroad and westerly of Broadway, that by more recent survey is bounded and described as follows:

**BEGINNING** at the point on the westerly line of Broadway, formerly known as New York and Albany Post Road where it is met by the line dividing the lands so conveyed to St. Christopher's Home, on the north, from lands formerly of Bomen and now shown on that certain "Map of Fairmead …," which was filed in the Westchester County Clerk's office on June 7, 1924, as Map No. 2623, on the south, which point occupies coordinate position N 791,741.74 (y) and E 663,261.33 (x) of the New York State Coordinate System, East Zone (NAD 83, expressed in U.S. Survey Feet), and which point is distant North 15 degrees 51 minutes 48 seconds East 101.60 feet and North15 degrees 30 minutes 48 seconds East 163.78 feet measured northerly along the said westerly line of Broadway from its intersection with the northerly line of Fairlawn Avenue, which intersection point occupies coordinate position N 791,486.20 (y) and E 663,189.76 (x) of the said New York State Coordinate System, East Zone;

**THENCE** from the said point of beginning westerly along the lands shown on said Filed Map No. 2623 and continuing along lands formerly of said Bomen and now shown on that certain "Subdivision Map of Waters Edge at Dobbs Ferry …," which was filed in the Westchester County Clerk's office on August 24, 2008, as Map No. 28261, North 80 degrees 04 minutes 42 seconds West, 733.32 feet to a point at the easterly line of the lands shown on that certain map entitled "Trunk Sewer Westchester County Sanitary Sewer Commission North Yonkers Project Property Map" which was filed in the Westchester County Clerk's office on April 6, 1936, as Map No. 4252, which point is now designated "Point A", and is the point of beginning of the Sanitary Sewer Easement Area hereinafter described;

**THENCE** continuing along the lands shown on said Filed Map No 28261, North 80 degrees 04 minutes 42 seconds West, 51.14 feet to a point at the easterly exterior line of the aforementioned lands now or formerly of the Metro North Railroad;

**THENCE** northerly along the said Railroad lands on a non-tangent curve to the right, the center of which bears South 74 degrees 03 minutes 56 seconds East, the central angle of which is 06 degrees 15 minutes 55 seconds, the radius of which is 6,154.64 feet for 673.00 feet to a point at the line of lands now or formerly of St. Cabrini Nursing Home, Inc.;

**THENCE** along the said St. Cabrini Nursing Home, Inc. lands South 80 degrees 04 minutes 42 seconds East, 716.77 feet, to another point on the westerly line of Broadway.

**THENCE** southerly along the westerly line of Broadway, the following courses:

South 08 degrees 56 minutes 23 seconds West, 189.06 feet;
South 15 degrees 23 minutes 27 seconds West, 248.98 feet; and
South 14 degrees 38 minutes 13 seconds West, 228.00 feet;

to the point or place of **BEGINNING.**

**SUBJECT TO** the Sanitary Sewer Easement over under and through that portion of the hereinabove described Parcel I that is bounded and described as follows.

**BEGINNING** at the point on the northerly line of the aforementioned lands shown on Filed Map No. 28261 that was herein above designated "Point A", which point occupies coordinate position      N 791,868.09 (y) and E 662,538.99 (x) of the said New York State Coordinate System, East Zone (NAD 83, expressed in U.S. Survey Feet).

**THENCE** from the said Point of Beginning, "Point A" along the lands shown on said Filed Map No. 28261, North 80 degrees 04 minutes 42 seconds West, 16.40 feet to a point.

**THENCE** through Parcel I hereinabove described the following courses:

North 22 degrees 40 minutes 36 seconds East, 100.24 feet;
North 10 degrees 02 minutes 06 seconds East, 208.77 feet;
North 68 degrees 37 minutes 36 seconds East, 38.16 feet;
North 29 degrees 41 minutes 21 seconds East, 26.41 feet;
North 09 degrees 14 minutes 54 seconds West, 55.40 feet;
North 17 degrees 31 minutes 06 seconds East 157.61 feet; and
North 25 degrees 11 minutes 06 seconds East, 108.17 feet

to a point at the line of lands now or formerly of  St. Cabrini Nursing Home, Inc. Thence along the said St. Cabrini Nursing Home, Inc. lands South 80 degrees 04 minutes 42 seconds East, 16.58 feet, to a point;

**THENCE** once again through Parcel I the following courses:

South 25 degrees 11 minutes 06 seconds West, 111.46 feet;
South 17 degrees 31 minutes 06 seconds West, 152.73 feet;
South 09 degrees14 minutes 54 seconds East, 81.50 feet;
South 68 degrees 37 minutes 36 seconds West, 59.08 feet;
South 10 degrees 02 minutes 06 seconds West, 201.57 feet; and
South 22 degrees 40 minutes 36 seconds West, 98.39 feet

to the point or place of **BEGINNING** of this Sanitary Sewer Easement Area.

**TOGETHER WITH** all right, title and interest, if any, in and to those lands heretofore conveyed by Annie Turner Howard to St. Christopher's Home by that certain deed dated

June 17,1890, and recorded in the Westchester County Clerk's Liber 1201 of deeds at page 437 that lie westerly of and below the original highwater mark of the Hudson River and westerly of lands formerly of the Hudson River Railroad Company and now or formerly of the Metro North Railroad.

N.B. The meridian (North Point) and coordinate values used in the foregoing description refer to the New York State Coordinate System, East Zone, NAD 1983, expressed in U.S. Survey Feet. The meridian is True North at 74°30'00" West Longitude and bears 0°15'12" clockwise from the meridian of Filed Map No. 2523. The distances used in this description are Grid Distances. To obtain Ground Distances divide the Grid Distances by the Combined Scale Factor 0.99993381.The substance of this note should remain with this description in any instrument of which it may become a part.

FOR INFORMATION ONLY, NOT INSURED: SAID PREMISES BEING KNOWN AS AND BY
71 Broadway Dobbs Ferry, NY

| | |
|---|---|
| SECTION | 3.110 |
| BLOCK | 103 |
| LOT | 2 |
| COUNTY | WESTCHESTER |

29581382.1

**PARCEL II: Section 3.160 Block 136 Lot 2**

**ALL** those certain parcels of land known and designated as Lots 35 through 40, inclusive and portions of Lots 28 through 34, inclusive, and shown on that certain "Map of Fairmead …," which was filed in the Westchester County Clerk's office on June 7, 1924, as Map No. 2623, that when taken together and by more recent survey are bounded and described as follows:

**BEGINNING** at the point on the westerly line of Broadway, formerly known as New York and Albany Post Road where it is met by the line dividing said Lot 28, on the north, from Lot 27 on said Filed Map No. 2626, on the south, which point occupies coordinate position N 791,559.88 (y) and E 663,210.69 (x) of the New York State Coordinate System, East Zone (NAD 83, expressed in U.S. Survey Feet), which point is distant North 15 degrees 51 minutes 48 seconds East, 76.60 feet measured northerly along the said westerly line of Broadway from its intersection with the northerly line of Fairlawn Avenue, which intersection point occupies coordinate position N 791,486.20 (y) and E 663,189.76 (x) of the said New York State Coordinate System, East Zone;

**THENCE** from the said point of beginning along the last-mentioned division line and continuing along the line dividing Lot 40 on said Filed Map No. 2626, on the north, from said Lots 41, 42, 43 and 44, on said Filed Map No. 2626, on the south North 74 degrees 33 minutes 02 seconds West, 199.76 feet to a point on the easterly line of Atilda Avenue;

**THENCE** northerly along the easterly line of Atilda Avenue North 15 degrees 26 minutes 58 seconds East, 169.41 feet to a point at the line dividing Lot 35 on said Filed Map No. 2623, on the south from Parcel 1 hereinabove described, on the North;

**THENCE** along Parcel 1 hereinabove described South 80 degrees 04 minutes 42 seconds East, 201.06 feet to another point on the westerly line of Broadway.

**THENCE** southerly along the westerly line of Broadway the following courses:

South 15 degrees 30 minutes 48 seconds West, 163.78 feet; and
South 15 degrees 51 minutes 48 seconds West, 25.00 feet

to the point or place of BEGINNING

N.B. The meridian (North Point) and coordinate values used in the foregoing description refer to the New York State Coordinate System, East Zone, NAD 1983, expressed in U.S. Survey Feet. The meridian is True North at 74°30'00" West Longitude and bears 0°15'12" clockwise from the meridian of Filed Map No. 2523. The distances used in this description are Grid Distances. To obtain Ground Distances divide the Grid Distances by the Combined Scale Factor 0.99993381.The substance of this note should remain with this description in any instrument of which it may become a part.

FOR INFORMATION ONLY, NOT INSURED: SAID PREMISES BEING KNOWN AS AND BY
Broadway, Dobbs Ferry, NY

| SECTION | 3.160 |
|---------|-------|
| BLOCK | 136 |
| LOT | 2 |
| COUNTY | WESTCHESTER |



H U D S O N   R I V E R

Liber 1201 cp 437
(West of Railroad in River)
(Not Part of Survey)

Formerly    Hudson River Railroad Company
Now   or   formerly   Metro – North   Railroad

Liber 308 cp 366
Liber 259 cp 385 (Partial)

PARCEL I
Liber 1201 cp 430

PARCEL I
Tax Map 3.110—103—2

FAIRLAWN   AVENUE

ATILDA   AVENUE

Now or formerly
Treacy Ryan LLC

Liber 4530 cp 307

Now or formerly
57 Bellaire Drive LLC

Liber 3515 cp 197

PARCEL II

Liber 4152 cp 96

FAIRLAWN   AVENUE

LEASEHOLD AREA
See Note 14

Now or formerly St. Cabrini Nursing Home, Inc.

BROADWAY

(FORMERLY NEW YORK & ALBANY POST ROAD)

U.S.   ROUTE   9

See Detail A

PARCEL ON EAST SIDE OF BROADWAY
Liber 1201 cp 430
(Not Part of Survey)

HILLSIDE   AVENUE

(PARCEL I)
Tax Map 3.110—103—2 Area = 11.640 Acres
which includes 0.262 acres in Sewer Easement
and 3.105 acres in Leasehold Area

(PARCEL II)
Tax Map 3.160—136—2 Area = 0.822 Acres

Total Area = 12.462 Acres
which includes 0.262 acres in Sewer Easement
and 3.305 acres in Leasehold Area

APPROXIMATE AREA OF STEEP DOWNWARD SLOPE TOWARD RIVER = 2.175 Acres

This map was prepared for the exclusive
use of and is certified only to:
ST. CHRISTOPHER'S SCHOOL

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
but only for use in connection with their
Title No. GL35532-R

LA'ILA LENDING II, LLC
its successors and/or assigns, but only
as their interest may appear in a 2024
mortgage to it by ST. CHRISTOPHER'S SCHOOL

SURVEY OF PROPERTY
PREPARED FOR
## ST. CHRISTOPHER'S SCHOOL
VILLAGE OF DOBBS FERRY
TOWN OF GREENBURGH
WESTCHESTER COUNTY
NEW YORK

SCALE 1 in. = 30 ft.          MARCH 5, 2021

We hereby certify that the survey shown hereon was
completed by us on   March 5, 2021   that this map was
completed on   March 16, 2021   and that this survey has
been prepared in accordance with the existing Code of
Practice for Land Surveys adopted by the New York State
Association of Professional Land Surveyors, Inc.
Revised on September 20, 2024. See Note 17.

BADEY & WATSON
Surveying & Engineering, D.P.C.

NEW YORK STATE LICENSED LAND SURVEYOR
LICENSE No. 50389

DETAIL A
SCALE 1 in. = ft.

BADEY & WATSON
Surveying & Engineering, D.P.C.

PRINTED
September 20, 2024

BADEY & WATSON
Surveying & Engineering

FILE No. 13-210

**<u>Schedule B</u>**
**Bidding Procedures Order**

29964147.1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

ORDER (A) APPROVING BID PROCEDURES RELATING TO THE
SALE OF THE DOBBS FERRY REAL ESTATE, (B) APPROVING
NOTICE PROCEDURES, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of St. Christopher's, Inc. ("St. Christopher's") and The

McQuade Foundation, the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), pursuant to sections 105(a), 363, and 365 of Title 11 of the United States Code, 11

U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the

Southern District of New York (the "Local Rules"), for entry of an order (this "Bid Procedures

Order"): (i) approving the bid procedures in the form annexed hereto as **Exhibit 1** (as amended or

modified, the "Bid Procedures"), including the potential designation of a stalking horse bidder, to

be implemented in connection with a sale (the "Sale") of approximately 12.46 acres of real

property owned by St. Christopher's located in Dobbs Ferry, New York 10522, as described more

specifically in the Tortorici Declaration (as defined below) (the "Dobbs Ferry Real Estate"); (ii)

approving the notice procedures (the "Notice Procedures") to advise parties in interest and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion, the PSA, or the Bid Procedures, as applicable. In the event of a discrepancy between the definitions contained in the Motion, the PSA and the Bid Procedures, those contained in the PSA shall control.

Potential Bidders (as defined below) of the Bid Procedures, the potential auction of the Dobbs Ferry Real Estate (the "<u>Auction</u>"), and the sale hearing for the Dobbs Ferry Real Estate (the "<u>Sale Hearing</u>"); and (iii) granting related relief; the Court, having determined that the relief provided herein is in the best interests of the Debtors, their estates, creditors and other parties in interest and calculated to result in the highest or otherwise best offer for the Assets, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and all objections and responses to the Motion having been resolved and otherwise withdrawn or overruled; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these Chapter 11 Cases; and after due deliberation thereon; and good and sufficient cause appearing therefore:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The Motion and the Bid Procedures comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

C.    The notice given by the Debtors of the Motion and the hearings with respect to the Motion constitutes proper, timely, adequate and sufficient notice thereof and complies with the Bankruptcy Code, the Bankruptcy Rules and Local Rules, and no other or further notice is necessary, except as set forth herein.

D.    A reasonable opportunity to object or be heard regarding the relief provided herein with respect to the Motion has been afforded to parties in interest.

E.      The proposed Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Bid Procedures to be employed in connection therewith, the Sale, and the Sale Hearing.  The Notice Procedures comply with Bankruptcy Rule 2002 and constitute sufficient notice to all interested parties and provide sufficient notice of the proposed Sale.

F.      The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bid Procedures, (ii) the scheduling of the Auction and the Sale Hearing, and (iii) related deadlines in connection with each of the foregoing. Such good and sufficient reasons were set forth in the Motion or have been described at the hearing, are incorporated by reference herein, and, among other things, form the basis of the findings of fact and conclusions of law set forth herein.  The Debtors have demonstrated that the Bid Procedures are fair, reasonable and appropriate and are designed to maximize the value of the Debtors' estates.

G.      The Bid Procedures are reasonably designed to enable the Debtors to receive bids for the Assets and represent the best method for maximizing the realizable value of the Assets and serve to maximize the value of the Debtors' estates for the benefit of all of the Debtors' stakeholders and parties in interest.

H.      Entry of this Bid Procedures Order and the granting of the relief set forth herein are in the best interests of the Debtors, their estates, creditors and other parties in interest.

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion as it relates to the Bid Procedures, the Notice Procedures, and the scheduling of and notice to be approved with respect to the Auction and the Sale Hearing is granted and approved as set forth in this Bid Procedures Order.

2.      All objections and responses to the Motion or the relief provided herein that have

not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby

overruled and denied on the merits.

3.      The Bid Procedures, attached hereto as **Exhibit 1**, are incorporated herein and are

approved in their entirety, and shall apply with respect to the sale of the Assets.  The failure to

specifically include or reference a particular provision of the Bid Procedures in the Motion or in

this Bid Procedures Order shall not diminish or impair the effectiveness of such provision.  The

Debtors are authorized to take all actions necessary or appropriate to implement the Bid

Procedures.  Notwithstanding the foregoing, the consummation of the Sale shall remain subject to

entry of a further order of this Court (the "Sale Order") which shall serve as an order approving

the Sale of the Assets, free and clear of any interests, liens, claims, or encumbrances under section

363 of the Bankruptcy Code.  In the event of an inconsistency between this Bid Procedures Order

and the Bid Procedures, the Bid Procedures Order shall prevail.

4.      The Debtors are hereby authorized to pursue a Sale of the Assets in accordance with

the Bid Procedures.

5.      The process for submitting Qualified Bids (as set forth in the Bid Procedures) is

fair, reasonable, and appropriate and is designed to maximize recoveries for the benefit of the

Debtors' estates, their creditors and other parties-in-interest.  Any disputes as to the selection of a

Qualified Bidder and the Successful Bidder shall be resolved by this Court.

6.      All information relating to the Assets provided to assist a person or entity in

evaluating whether to participate in the Auction is confidential.  Any person or entity that is

provided with such information shall: (i) use such information solely for the purpose of evaluating

whether to participate in the Auction; (ii) not use such information for any other purpose; (iii) shall

hold such information in strict confidence; (iv) not, directly or indirectly, disclose any of such information, subject to certain limited exceptions; (v) undertake reasonable precautions to protect the confidentiality of such information; and (vi) be solely responsible for any ramifications resulting from any disclosure of such information.

7.      As further described in the Bid Procedures, the deadline for submitting Written Offers for the Assets (the "Bid Deadline") is **September 9, 2024 at 5:00 p.m. (prevailing Eastern Time)**.

8.      The Debtors are authorized to conduct the Auction in the event they receive more than one (1) Qualified Bid in accordance with the Bid Procedures. If the Debtors do not receive more than one (1) Qualified Bid in accordance with the Bid Procedures, then (a) the Debtors will not hold the Auction; (b) the Qualified Bidder will be deemed to be the Successful Bidder; and (c) the Debtors shall seek approval of the PSA at the Sale Hearing.

9.      If there is one (1) or more Qualified Bid received in accordance with the Bid Procedures, the Auction shall take place on **September 11, 2024 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Barclay Damon LLP, 1270 Avenue of the Americas, Suite 501, New York, NY 10020, or such other place and time as the Debtors shall notify all parties in interest attending the Auction.

10.     The Auction shall be conducted in accordance with the Bid Procedures.

11.     The Auction will be conducted openly.

12.     Bidding at the Auction will be transcribed.

13.     The Sale Hearing shall be held before this Court on **September 18, 2024 at 10:00 am. (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard. Objections, if any, to the Sale of the Assets to any Successful Bidder and/or the relief

requested in the Motion, other than the relief approved in this Order, must be in writing and filed

with the Court **on or before August 23, 2024 at 5:00 p.m. (prevailing Eastern Time)**; provided,

however, that objections solely stemming from the identity of the Successful Bidder (if different

than the Stalking Horse Bidder) may be filed **on or before September 16, 2024 at 5:00 p.m.**

**(prevailing Eastern Time)**.

14.    The notice procedures described in subparagraphs (a) – (e) below are approved and

shall be good and sufficient, and no other or further notice shall be required if given as follows:

a.    On or before three (3) business days after entry of this Bid Procedures Order, or as soon as practicable after such parties can be identified, the Debtors will cause (a) a notice in substantially the form annexed hereto as **Exhibit 2** (the "Notice of Bid Procedures, Auction Date and Sale Hearing") and (b) a copy of the Bid Procedures Order to be sent by first-class mail, postage prepaid, to the following: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) counsel to the Lender; (iv) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (v) all persons known or reasonably believed by the Debtors to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon the Dobbs Ferry Real Estate; (vi) all persons known or reasonably believed to have expressed an interest in acquiring the Dobbs Ferry Real Estate within the last six (6) months; (vii) all taxing authorities, including the Internal Revenue Service and all other federal, state and local taxing and regulatory authorities reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Dobbs Ferry Real Estate, or to have any known interest in the relief requested by the Motion; and (viii) all parties to any litigation involving the Debtors.

b.    On or before three (3) business days after entry of the Bid Procedures Order, the Debtors will serve the Notice of Bid Procedures, Auction Date and Sale Hearing on all known creditors of the Debtors.

c.    On or before seven (7) days after entry of this Bid Procedures Order, subject to applicable submission deadlines, the Debtors will publish an abbreviated version of the Notice of Bid Procedures, Auction Date and Sale Hearing in one or more regional or national publication that the Debtors, in their business judgment, deem appropriate.

d.    In addition to the foregoing, electronic notification of the Motion, the Bid Procedures Order, and the Notice of Bid Procedures, Auction Date and Sale

Hearing, will be posted on the main case docket on the Court's electronic case filing (ECF) website.

19.    The Notice of Bid Procedures, Auction Date and Sale Hearing to be issued in connection with the proposed Sale, substantially in the forms annexed hereto as **Exhibit 2**, is approved.

20.    Within one (1) business day after the conclusion of the Auction (if an Auction is held), the Debtors will file a statement with the identity of the Successful Bidder and Backup Bidder for the Assets and the total consideration received for the Assets (the "Notice Designating Successful Bidder"), and serve such Notice Designating Successful Bidder on the United States Trustee and Subchapter V Trustee in satisfaction of Bankruptcy Rule 6004(f)(1).

21.    Except as otherwise provided in this Bid Procedures Order, the Debtors, in their business judgment, further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to the terms and conditions under the Bid Procedures, to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which Written Offers are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal – the Successful Bid – and which is the next highest or otherwise best proposal – the Backup Bid; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all Qualified Bidders to the extent permissible under the Bid Procedures; (f) impose additional terms and conditions with respect to all Qualified Bidders; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing, provided that the Debtors shall use reasonable efforts to provide notice of adjournment or cancellation of the Auction to all Qualified Bidders 24 hours before the commencement of the Auction; and (i) modify the Bid

Procedures or withdraw the request to sell the Assets to the Successful Bidder or Backup Bidder, as applicable, at any time with or without prejudice.

22.    For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in this Bid Procedures Order, the Bid Procedures, or the Motion shall, or shall be construed to, in any way amend, impair, prejudice, alter or otherwise modify the terms of the PSA or the Stalking Horse Bidder's rights thereunder, and the PSA shall remain in full force and effect unless terminated in accordance with its terms.

23.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bid Procedures Order shall be effective immediately upon its entry.

24.    All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.    This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Bid Procedures Order.

Dated:    August 16, 2024
        White Plains, New York

                                            */s/ Sean H. Lane*
                                            United States Bankruptcy Judge

**Exhibit 1**

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[3] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

## BID PROCEDURES

These bid procedures (the "Bid Procedures") set forth the process by which St. Christopher's, Inc. ("St. Christopher's") and The McQuade Foundation, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned Chapter 11 Subchapter V bankruptcy cases pending in the United States Bankruptcy Court for the Southern District of New York (the "Court"), shall market to interested parties and conduct a sale (the "Sale") by auction (the "Auction") approximately 12.46 acres of real property owned by St. Christopher's located in Dobbs Ferry, New York 10522, as described more specifically in the Tortorici Declaration (as defined in the Motion) (the "Dobbs Ferry Real Estate"). The Sale will be subject to bidding as set forth herein and subject to the approval of the Court, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").

On July 23, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders (i)(a) Approving Bid Procedures Relating to the Sale of the Dobbs Ferry Real Estate; (b) Approving Notice Procedures, and (c) Granting Related Relief; and (ii)(a) Authorizing the Sale of the Dobbs Ferry Real Estate, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (iii) Granting Related Relief* [Docket No. 124] (the "Motion"). The portion of the Motion requesting approval of the Bid Procedures and related relief was heard by the Court on August 13, 2024. The Debtors' request for approval of the Sale and certain other matters relating to the Motion will be heard on September 18, 2024 (the "Sale Hearing").

On August __, 2024, the Court entered an *Order (A) Approving Bid Procedures Relating to the Sale of the Dobbs Ferry Real Estate, (B) Approving Notice Procedures, and (C) Granting Related Relief* [Docket No. __] (the "Bid Procedures Order"), thereby approving these Bid Procedures.

The Debtors have proposed a form PSA, a copy of which will be made available to interested parties and serve as the form of purchase and sale agreement and basis for bids in connection with this process.

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

Capitalized terms used in these Bid Procedures and not otherwise defined shall have the meanings ascribed to such terms in the PSA or Bid Procedures Order, as applicable.

Any party desiring to obtain a copy of the PSA, a form of Non-Disclosure Agreement (as defined below) or other information regarding the sale process may do so by contacting Debtors' counsel at:

> **Barclay Damon LLP**
> Janice B. Grubin
> Scott L. Fleischer
> 1270 Avenue of the Americas, Suite 501
> New York, New York 10020
> (212) 784-5800
> jgrubin@barclaydamon.com
> sfleischer@barclaydamon.com

The Debtors provide these Bid Procedures for use by Potential Bidders (defined below) and Qualified Bidders (defined below) in submitting bids proposing a transaction to purchase the Dobbs Ferry Real Estate, and, as necessary, qualifying for and participating in the Auction.

1.    <u>Important Dates.</u>

The following is a table setting forth key dates and deadlines with respect to the sale process:

| Event or Deadline | Date and Time (ET) |
|---|---|
| Deadline to Object to Bid Procedures Order | On or before August 6, 2024 at 5:00 p.m. |
| Hearing on Bid Procedures Order | On August 13, 2024 at 10:00 a.m. |
| Deadline to Designate Stalking Horse Bidder, if any | On August 16, 2024 |
| Hearing on Designation of Stalking Horse Bidder, if any | On or before August 20, 2024 |
| Deadline to Object to Sale (for all objections other than stemming from the identity of the Successful Bidder) | On or before August 23, 2024 at 5:00 p.m. |
| Bid Deadline | On September 9, 2024 at 5:00 p.m. |
| Deadline to Designate Qualified Bids | On September 10, 2024 at 5:00 p.m. |

| | |
|---|---|
| Auction (if necessary) | On August 11, 2024 at 11:00 a.m. |
| Deadline to File Notice Designating Successful Bidder | If no Auction is held, September 12, 2024<br><br>If Auction is held: one (1) business day following conclusion of the Auction |
| Deadline to Object to Sale Based on Identity of Successful Bidder | On or before September 16, 2024 at 5:00 p.m. |
| Sale Hearing | September 18, 2024 at 10:00 a.m. |
| Deadline to Close on Sale | On or before October 1, 2024 |

2.    <u>Assets to be Sold.</u>

The Debtor seek to sell the Dobbs Ferry Real Estate.

3.    <u>Qualified Bidders, Non-Disclosure Agreements and Access to Data Room.</u>

Any person or entity wishing to bid on the Assets (each, a "<u>Potential Bidder</u>") must execute and deliver (unless previously delivered) to the Debtors a confidentiality and non-disclosure agreement (a "<u>Non-Disclosure Agreement</u>") in form and substance acceptable to the Debtors.

The Debtors, in their discretion, will afford a Potential Bidder who executes and delivers a Non-Disclosure Agreement due diligence access or such additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate, including, without limitation, access to the Debtors' confidential electronic data room, reasonable access, during normal business hours, to the Debtors' management, and access to all relevant information regarding the Dobbs Ferry Real Estate reasonably necessary to enable a Potential Bidder to evaluate the proposed Sale; provided that, prior to accessing such information, any such Potential Bidder has evidenced the financial wherewithal and ability to consummate the Sale. Debtors' counsel will coordinate all due diligence access and requests for additional information from such Potential Bidders. The Debtors shall not be obligated to furnish any due diligence information after the conclusion of the Auction other than to the Successful Bidder (defined below) or any Backup Bidder. Neither the Debtors (nor their employees), their counsel nor their advisors are responsible for, or will bear any liability with respect to, any information obtained by Potential Bidders in connection with due diligence. Notwithstanding anything contained herein to the contrary, to the extent the Debtors believe that providing access to Potential Bidders to certain sensitive commercial information is not advisable,

the Debtors, in their business judgment, will decide what, if any, diligence information to make available to a particular Potential Bidder, and neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever to any party.

A "**Qualified Bidder**" is any Potential Bidder that (a) delivers to the Debtors a Non-Disclosure Agreement, (b) demonstrates to the Debtors a reasonable certainty of its ability to close the Sale in a timely manner (including the financial capability to close the Sale and the ability to obtain the necessary governmental, licensing, regulatory, or other approvals necessary for such Sale, if any), and (c) submits a Written Offer (as defined below) that satisfies all requirements of a Qualified Bid as set forth below, provided, however, that, except for the requirements set forth in sections 4(viii) and 4(x)–4(xii) of these Bid Procedures, the Debtors may waive one or more requirements for a Qualified Bidder. As promptly as practicable after a Potential Bidder delivers a Non-Disclosure Agreement and submits a Written Offer, and in any event not later than September 10, 2024 at 5:00 p.m. (prevailing Eastern Time), the Debtors shall determine, and the Debtors shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate the proposed Sale.

4.      Requirements for a Qualified Bid.

In order to become a Qualified Bidder and participate in the Auction, if any, a Potential Bidder must deliver to counsel to the Debtors a written offer (each, a "Written Offer") that is deemed to be a Qualified Bid. To be deemed a "Qualified Bid", a Written Offer must meet each of the requirements listed below:

(i)      Delivery:  Be delivered no later than 5:00 p.m. (prevailing Eastern Time) on September 9, 2024 (the "Bid Deadline").

(ii)     Executed Agreement:  Be accompanied by (i) a clean and duly executed and binding purchase and sale agreement (together with the exhibits and schedules thereto, a "PSA"), and (ii) a marked Modified PSA reflecting any variations from the PSA (the "Modified PSA", both of which shall be subject to section 4(xii) hereof.

(iii)    Proof of Financial Ability to Perform:  Contain evidence of financing, access to funds or such other financial and other information that will reasonably allow the Debtors to make a determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified PSA, which evidence is satisfactory to the Debtors. Should the Potential Bidder be a newly formed or other single-purpose entity ("Newco"), such information shall be provided in respect of Newco's equity sponsors.

(iv)     Identification of Parties to Participate:  To the Debtors' satisfaction, (i) fully disclose the identity of each entity or person that will be bidding for the Dobbs Ferry Real Estate or otherwise participating in connection with such

bid, (ii) the terms of any such participation, and if an entity has been formed for the purpose of acquiring some, or all, of the Dobbs Ferry Real Estate, the parties that will bear liability for any breach by such entity, and (iii) the ability of such parties to obtain government, licensing or regulatory approval, if necessary, in connection with the consummation of any Sale.

(v)     Irrevocable:  State that the Written Offer is irrevocable until (i) the closing of the Sale, if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Successful Bidder (as defined below), or (ii) if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Backup Bidder (as defined below), until the earlier of (x) two (2) business days after the closing of the transaction(s) by which the Dobbs Ferry Real Estate that were subject to such Backup Bid (as defined below) has been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (y) one hundred twenty (120) days after the date of the Auction (the "Backup Bid Expiration Date").

(vi)    No Break-Up Fee or Expense Reimbursement:  Not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment; provided, however, that the PSA with a stalking horse bidder, if any, may contain a proposed break-up fee and expense reimbursement, as approved by further Court order.

(vii)   Contingencies:  Not contain any due diligence or financing contingencies.

(viii)  Authorization to Consummate Sale:  Provide evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body), if any, with respect to the submission, execution, delivery and closing of the Modified PSA to the Debtors' satisfaction.

(ix)    Minimum Purchase Price:  Bids must provide for a minimum purchase price equal to or greater than $7,500,000. Such bid shall be made with the understanding that Greenburgh North Castle UFSD ("GNC") shall remain on the Dobbs Ferry Real Estate under the Agency Lease following the Sale. If there is a stalking horse bidder, the minimum purchase price must be equal to or greater than the stalking horse purchase price plus the amount of any break-up fee and plus the amount of any expense reimbursement, plus a minimum overbid amount over any stalking horse bid $100,000.00.

(x)     Good Faith Offer:  Constitute a good faith, bona fide offer to purchase the Dobbs Ferry Real Estate.

(xi)    Good Faith Deposit:  Provide a good faith deposit (the "Good Faith Deposit") submitted via federal wire transfer in immediately available funds in accordance with the wire instructions to be provided by the Debtors, or such other form as is acceptable to the Debtors, in an amount equal to 10% of the purchase price set forth in the Written Offer.

(xii)  <u>Anticipated Timeline</u>:  Set forth the anticipated timeframe for (i) obtaining any required government, regulatory or other approvals, and (ii) consummating the Sale within the requirements of subparagraph (xv) of the Bid Procedures.

(xiii)  <u>Agreement with Bid Procedures, Provision of Additional Information and Submission to Bankruptcy Court Jurisdiction</u>  Include a written acknowledgement by such Potential Bidder that it: (i) agrees to the terms of the Bid Procedures; (ii) agrees to provide such other information as may be reasonably requested in writing by the Debtors prior to the Auction; and (iii) confirms that the Potential Bidder submits to the jurisdiction of the Court.

(xiv)  <u>As-Is, Where-Is</u>:  Include a disclaimer acknowledging that the Sale will be conducted on an As-Is, Where-Is Basis in accordance with section 8 of the Bid Procedures.

(xv)  <u>Closing Date</u>:  Provide for a closing date (the "<u>Closing Date</u>") in accordance with the PSA and section 1 of the Bid Procedures.

Between the Bid Deadline and the Auction, the Debtors may (i) negotiate or seek clarification of any Written Offer from a Qualified Bidder, (ii) request information from any Qualified Bidder, (iii) engage in discussions with any Qualified Bidder, and/or (iv) take such other actions contemplated under these Bid Procedures. Without the consent of the Debtors, a Qualified Bidder may not amend, modify or withdraw its Written Offer. All changes to the form of PSA reflected in the Modified PSA will be evaluated by the Debtors and must be acceptable to the Debtors, in their business judgment. Any Good Faith Deposit accompanying a Written Offer that the Debtors determine not to be a Qualified Bid shall be returned promptly following such determination.

5.  <u>Bid Deadline.</u>

All Qualified Bids must be received by each of the parties listed below prior to the Bid Deadline.

**Debtors' Counsel**:

Janice B. Grubin
Scott L. Fleischer
Barclay Damon LLP
1270 Avenue of the Americas, Suite 501
New York, New York 10020
(212) 784-5800
jgrubin@barclaydamon.com
sfleischer@barclaydamon.com

**Debtors' Real Estate Broker**

Michael A. Tortorici
122 East 42nd Street, Suite 2405
New York, New York 10168
(212) 257-1813
mtortorici@arielpa.com

6.  <u>Determination of Qualified Bidders.</u>

The Debtors shall, by no later than 5:00 p.m. (prevailing Eastern Time) on September 10, 2024, (i) determine, in their business judgment, whether a Potential Bidder is a Qualified Bidder, (ii) notify each such Potential Bidder that its Written Offer is a Qualified Bid and that such Potential Bidder is a Qualified Bidder, and (iii) provide a copy of the Opening Qualified Bid (defined below) to each Qualified Bidder.

7.  <u>No Break-Up Fee or Bid Protections.</u>

No Modified PSA may include any break-up fee or expense reimbursement or other similar bid protections.

8.  <u>"As Is, Where Is".</u>

Except as otherwise provided in the Final PSA (as defined below), the Sale of the Dobbs Ferry Real Estate shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors or their estates except to the extent set forth in the Final PSA as approved by the Court. Except as otherwise provided in the Final PSA, all of the Debtors' right, title and interest in the Dobbs Ferry Real Estate subject thereto, as applicable, shall be sold free and clear of all liens, claims, interests and encumbrances (collectively, the "<u>Liens</u>"), with the exception of the Agency Lease, in accordance with section 363 of the Bankruptcy Code, with such Liens to attach to the net proceeds of the Sale to the extent provided for under the Final PSA and applicable law.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all desired due diligence regarding the Dobbs Ferry Real Estate prior to making its Qualified Bid, that it has relied solely upon its own independent review, investigation and inspection of any documents relating to the Dobbs Ferry Real Estate in making its Qualified Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Dobbs Ferry Real Estate, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Procedures or, as to the Successful Bidder and the Backup Bidder, the terms of the Sale(s) as set forth in the final form of the applicable PSA or Modified PSA (the "<u>Final PSA</u>"), which shall be on terms mutually acceptable to the Successful Bidder and Backup Bidder, on the one hand, and the Debtors, on the other hand.

9.      Auction.

If the Debtors have determined that there are one or more Qualified Bidders, the Debtors shall conduct an Auction to determine the highest and otherwise best Qualified Bid. This determination shall take into account any factors the Debtors, in their business judgment, reasonably deem relevant and may include, among other things, the following: (i) the amount and type of the consideration; (ii) the number, type and nature of any changes to the PSA requested by a Qualified Bidder in its respective Modified PSA; (iii) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; and (v) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof.

The Auction shall commence at 11:00 a.m. (prevailing Eastern Time) on September 11, 2024, at the offices of Barclay Damon LLP, 1270 Avenue of the Americas, Suite 501, New York, New York 10020, or such other place and time as determined by the Debtors, and continue thereafter until completed. The Debtors reserve the right to cancel, postpone, or continue the Auction.

Except as otherwise permitted in the Debtors' discretion, only the Debtors, the Subchapter V Trustee, the Qualified Bidders, and any creditor that submits a written request to attend to the Debtors in advance of the Auction, and, in each case, their respective professionals, shall be entitled to attend the Auction. Only a Qualified Bidder is eligible to participate in the Auction.

The Auction shall be governed by the following procedures:

(i)      Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative, unless alternate arrangements are made with the Debtors to attend the Auction virtually.

(ii)     Except as otherwise set forth herein (including the limitations on modification of criteria for Qualified Bids), the Debtors may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the Bid Procedures Order, the PSA, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any order of the Court entered in connection with these Chapter 11 Cases, (ii) disclosed to each Qualified Bidder, and (iii) designed, in the Debtors' business judgment, to result in the highest and otherwise best offer for the Dobbs Ferry Real Estate.

(iii)    The Debtors will arrange for the actual bidding at the Auction to be transcribed. Each Qualified Bidder shall designate a single individual to be its designated spokesperson during the Auction.

(iv)     Each Qualified Bidder participating in the Auction must confirm on the record, at the commencement of the Auction and again at the conclusion of the Auction, that it has not engaged in any collusion with the Debtors or any

other Qualified Bidder regarding these Bid Procedures, the Auction or any proposed transaction relating to the Assets.

(v) Prior to the Auction, the Debtors shall identify the highest and best of the Qualified Bids received (the "Opening Qualified Bid"). Subsequent bidding will continue in minimum increments valued at not less than $100,000 cash or in such amounts as to be determined by the Debtors announced at the Auction.

(vi) All Qualified Bidders shall have the right to, at any time, request that the Debtors announce, subject to any potential new bids, the then-current highest and best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtors' announcement of the then-current highest and best bid.

(vii) In the Debtors' discretion, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the PSA or Modified PSA, as applicable, at the Auction in accordance with the terms and provisions of these Bid Procedures; provided, however, that any such modifications to the PSA or Modified PSA, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors as determined by the Debtors in their business judgment.

(viii) Upon conclusion of the bidding, the Auction shall be closed, and the Debtors shall, as soon as practicable, (i) identify and determine in their business judgment the highest and best Qualified Bid for the Assets (a "Successful Bid") and the entity or entities submitting such Successful Bid (the "Successful Bidder"), (ii) advise the Qualified Bidders of such determination, and (iii) require the Successful Bidder to deliver an executed Final PSA, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing.

(ix) The Debtors will also determine which Qualified Bid, if any, is the next highest and best Qualified Bid to the Successful Bid, and will designate such Qualified Bid as a "Backup Bid" in the event the Successful Bidder fails to consummate the contemplated Sale. A Qualified Bidder who submitted a Qualified Bid and is designated a Backup Bid is a "Backup Bidder". Each Backup Bid shall remain open and binding until the Backup Bid Expiration Date.

10. Sole Qualified Bidder.

If, by the Bid Deadline, there is only one Qualified Bid, (i) that sole Qualified Bid shall be deemed the Successful Bid and the sole Qualified Bidder shall be deemed the Successful Bidder, (ii) the Debtors shall not hold an Auction, and (iii) the Debtors shall proceed at the Sale Hearing and seek approval from the Court of the Successful Bid.

11.    <u>Sale Hearing.</u>

The Sale Hearing will be held before the Honorable Sean H. Lane on September 18, 2024 at 10:00 a.m. (prevailing Eastern time), at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601. At the Sale Hearing, the Debtors shall present the results of the Auction, if one is held, to the Court and seek approval of the Successful Bid and any related Backup Bid.

Following the Sale Hearing and entry of a Sale Order approving the Sale of the Dobbs Ferry Real Estate to a Successful Bidder, if such Successful Bidder fails to consummate the Sale for any reason, the Backup Bidder shall be designated the Successful Bidder and the Debtors shall be authorized to close such Sale with the Backup Bidder without further order of the Court. The Successful Bidder and Backup Bidder (if any) should be represented by counsel at the Sale Hearing.

12.    <u>Consummation of the Purchase.</u>

(a)    Closing Date; Good Faith Deposit

The Successful Bidder shall consummate the Sale contemplated by the Successful Bid (the "<u>Purchase</u>") on or before the Closing Date. If the Successful Bidder successfully consummates the Purchase by the Closing Date, such Successful Bidder's Good Faith Deposit, if any, shall be applied to the purchase price of the Purchase.

If the Successful Bidder either: (i) fails to consummate the Purchase on or before the Closing Date, (ii) breaches the Final PSA, or (iii) otherwise fails to perform, the Debtors shall, without further order of the Court, deem such Successful Bidder to be a "<u>Defaulting Buyer</u>."

The Debtors shall be entitled to (a) retain the Good Faith Deposit as part of their damages resulting from the breach or failure to perform by the Defaulting Buyer and (b) seek all available damages from such Defaulting Buyer occurring as a result of such Defaulting Buyer's failure to perform in accordance with the terms of the PSA or Modified PSA, as applicable, and the Sale Order.

(b)    <u>Backup Purchaser.</u>

Upon a determination by the Debtors that the Successful Bidder is a Defaulting Buyer, the Debtors may consummate a Sale with the Backup Bidder on the terms and conditions of the Backup Bid (the "<u>Backup Purchase</u>") without further order of the Court.

If the Backup Bidder consummates the Backup Purchase, the Good Faith Deposit of such Backup Bidder will be applied to the purchase price of the Backup Purchase. In the event that the Debtors seek to consummate the Backup Purchase with the Backup Bidder and such Backup Bidder (i) fails to consummate the Backup Purchase, (ii) breaches the Final PSA, or (iii) otherwise fails to perform, the Debtors may, in their discretion, and without further order of the Court, deem such Backup Bidder to be a "<u>Defaulting Backup Buyer</u>" and shall be entitled to (a) retain the Good Faith Deposit as part of their damages resulting from the breach or failure to perform by the Defaulting Backup Buyer and (b) to the extent provided for under the PSA or

Modified PSA, seek all available damages from such Defaulting Backup Buyer occurring as a result of such Defaulting Backup Buyer's failure to perform in accordance with the terms of the PSA or Modified PSA, as applicable, and the Sale Order.

13.    <u>Return of Good Faith Deposits.</u>

Good Faith Deposits shall be held in a non-interest bearing escrow account. Except for those of the Successful Bidder and Backup Bidder(s), the Debtors shall promptly return the Good Faith Deposits of (i) all Qualified Bidders within five (5) business days following conclusion of the Auction; and (ii) the Backup Bidder after the Backup Bid Expiration Date.

14.    <u>Consent to Jurisdiction and Authority as a Condition to Bidding</u>

All Potential Bidders shall be deemed to have (i) consented to the core jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Bid Procedures, the Auction, or the construction and enforcement of any purchase agreement or any other document relating to the Sale; (ii) waived any right to jury trial in connection with any disputes relating to the Bid Procedures, the Auction, the construction and enforcement of any purchase agreement or any other document relating to the Sale; and (iii) consented to entry of a final order or judgment in any way related to the Bid Procedures, the Auction, or the construction and enforcement of any purchase agreement or any other document relating to the Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

15.    <u>Reservation of Rights.</u>

The Debtors shall retain all rights to any of their assets that are not subject to the Sale that is approved by the Court at the Sale Hearing.

16.    <u>Modifications.</u>

Except as otherwise set forth herein (including the limitations on modification of criteria for Qualified Bids), the Debtors may modify the Bid Procedures in any manner that is not inconsistent with or otherwise in contravention of the other terms of these Bid Procedures, the Bid Procedures Order, or the PSA, including, without limitation, (a) waiving the terms and conditions set forth herein with respect to any or all potential bidders, (b) imposing additional terms and conditions with respect to any or all potential bidders, (c) extending the deadlines set forth herein or the date for the Auction and/or Sale Hearing (which may occur in open court); or (d) amending the Bid Procedures as they may determine to be in the best interests of their estates; *provided that* all material modifications are disclosed to all Potential Bidders (if applicable) or Qualified Bidders (if applicable) prior to or during the Auction.

17.    <u>Involvement of Subchapter V Trustee</u>. The Subchapter V Trustee shall be deemed to be a Consultation Party such that information about submitted bids shall be shared with her and her views will be solicited concerning the designation of Qualified Bidders, the Auction, the selection of the Successful Bidder and all other aspects of the sale process.

**Exhibit 2**

**Notice of Bid Procedures, Auction Date and Sale Hearing**

**BARCLAY DAMON LLP**
Janice B. Grubin
Scott L. Fleischer
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone: (212) 784-5800
jgrubin@barclaydamon.com
sfleischer@barclaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[4] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

**NOTICE OF BID PROCEDURES, AUCTION DATE AND SALE HEARING**

**PLEASE TAKE NOTICE THAT:**

    1.    On July 23, 2024, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of Orders (i)(a) Approving Bid Procedures Relating to the Sale of the Dobbs Ferry Real Estate; (b) Approving Notice Procedures, and (c) Granting Related Relief* (the "Bid Procedures Motion")*; and (ii)(a) Authorizing the Sale of the Dobbs Ferry Real Estate, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (iii) Granting Related Relief* (the "Sale Motion" and together with the Bid Procedures Motion, the "Motion") [Docket No. 124] with the United States Bankruptcy Court for the Southern District of New York (the "Court").

    2.    By order dated August __, 2024, the Court approved the Bid Procedures Motion [Docket No. ●] (the "Bid Procedures Order").

    3.    The Debtors are seeking bids for approximately 12.46 acres of real property owned by St. Christopher's located in Dobbs Ferry, New York 10522, as described more specifically in the Tortorici Declaration (as defined in the Motion) (the "Dobbs Ferry Real Estate"). The proposed sale will be free and clear of any and liens, claims, encumbrances and other interests, with the exception of the Agency Lease, pursuant to section 363 of the Bankruptcy Code.

---

[4] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

4.      All interested parties are invited to submit a Written Offer to purchase the Dobbs Ferry Real Estate in accordance with the terms and conditions of the Bid Procedures attached hereto as **Exhibit A**, and the Bid Procedures Order. The deadline to submit a Written Offer (the "Bid Deadline") is **September 9, 2024 at 5:00 p.m. (prevailing Eastern Time)**.

5.      Prior to the Bid Deadline, a Potential Bidder that desires to purchase the Dobbs Ferry Real Estate shall deliver its Written Offer in accordance with the Bid Procedures.

6.      Pursuant to the Bid Procedures Order, in the event that the Debtors receive more than one Qualified Bid by the Bid Deadline, the Debtors shall conduct an Auction to determine the highest and otherwise best bid with respect to the Dobbs Ferry Real Estate.  The Auction shall commence at **11:00 a.m. (prevailing Eastern Time) on September 11, 2024** at the offices of Barclay Damon LLP, 1270 Avenue of the Americas, Suite 501, New York, NY 10020, or at such other place and time as the Debtors shall notify all parties in interest attending the Auction.  If only one Qualified Bid is received by the Bid Deadline, the Debtors shall seek approval of the that Qualified Bid at the Sale Hearing.

7.      Objections, if any, to the Sale of the Dobbs Ferry Real Estate to any Successful Bidder and/or the other relief requested in the Sale Motion must be in writing and filed with the Court **on or before August 23, 2024 at 5:00 p.m. (prevailing Eastern Time)**, provided that objections solely stemming from the identity of the Successful Bidder may be filed **on or before September 16, 2024 at 5:00 p.m. (prevailing Eastern Time)**.

8.      The Sale Hearing shall be conducted by the Court **on September 18, 2024 at 10:00 a.m. (prevailing Eastern Time)**, or on such other date as the Court may direct.  Requests for a copy of the PSA or for any other information concerning the Motion or the Sale should be directed, by written request, to the Debtors' counsel at the contact information listed in the attached Bid Procedures.

Dated:   August __, 2024
          New York, New York

Respectfully submitted,

**BARCLAY DAMON LLP**

By: _____
Janice B. Grubin
Scott L. Fleischer
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
sfleischer@abrclaydamon.com

*Counsel to Debtors and*
*Debtors-in-Possession*