**Hearing Date/Time: May 8, 2025 at 10:00 a.m. EST**
**Objection Deadline: May 1, 2025 at 4:00 p.m. EST**

**BARCLAY DAMON LLP**
Janice B. Grubin
Ilan Markus
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone: (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

---

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF ORDER**
**APPROVING SETTLEMENT AND COMPROMISE BETWEEN DEBTORS**
**AND IRON MOUNTAIN INFORMATION MANAGEMENT, LLC**
**PURSUANT TO BANKRUPTCY PROCEDURE 9019**

   **PLEASE TAKE NOTICE** that on April 17, 2025, Barclay Damon LLP, as counsel for

the debtors and debtors-in-possession, filed the *Debtors' Motion for Entry of Order Approving the*

*Settlement and Compromise Between Debtors and Iron Mountain Information Management, LLC*

*Pursuant to Bankruptcy Procedure 9019* (the "Motion").

   **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **May**

**8, 2025 at 10:00 a.m. (prevailing Eastern Standard Time)** (the "Hearing") before the Honorable

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

Judge Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that participants can attend the Hearing in person or via the Zoom for Government platform.  Participants in the Hearing are required to register their appearance before the hearing utilizing the e-Court Appearances tool at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by contacting the undersigned counsel.  You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.

**PLEASE TAKE FURTHER NOTICE** that any response or objection (together, the "Objections") to the Motion shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at https://www.nysb.uscourts.gov), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 so as to be received by: the Bankruptcy Court, US Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408; the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green,

Room 534, New York, New York 10004-1408, Attn: Paul Schwartzberg, Esq., Paul.Schwartzberg@usdoj.gov; the Subchapter V Trustee, Heidi J. Sorvino, Esq., White and Williams LLP, 810 Seventh Avenue, Suite 500, New York, New York 10019, Sorvinoh@whiteandwilliams.com; and the undersigned counsel no later than **4:00 p.m. (prevailing Eastern Standard Time) on May 1, 2025**.

      **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

      **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, after the Hearing, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

Dated:    April 17, 2025
        New York, New York

                          **BARCLAY DAMON LLP**

                          By:   */s/Ilan Markus*
                          Janice B. Grubin
                          Ilan Markus
                          1270 Avenue of the Americas, Suite 501
                          New York, New York 10020
                          Telephone:  (212) 784-5800
                          jgrubin@barclaydamon.com
                          imarkus@barlcaydamon.com

                          *Counsel to Debtors and Debtors-in-Possession*

**Hearing Date/Time:  May 8, 2025 at 10:00 a.m. EST**
**Objection Deadline:  May 1, 2025 at 4:00 p.m. EST**

**BARCLAY DAMON LLP**
Janice B. Grubin
Ilan Markus
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

## DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT AND COMPROMISE BETWEEN DEBTORS AND IRON MOUNTAIN INFORMATION MANAGEMENT, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

St. Christopher's, Inc. ("St. Christopher's" or the "Debtor") and The McQuade Foundation ("McQuade"), the debtors and debtors-in-possession (the "Debtors"), by and through their undersigned counsel, hereby submit this *Motion for Entry of Order Approving Settlement Between Debtors and Iron Mountain Information Management, LLC* (the "Motion"), seeking the entry of an order, pursuant to sections 105(a) and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), approving the settlement between the Debtors and Iron Mountain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

1

Information Management, LLC ("Iron Mountain" and together with the Debtor, the "Parties").  In support thereof, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2021.

2.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Bankruptcy Rule 7008, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

## BACKGROUND

4.  On April 29, 2024 (the "Petition Date"), the Debtors commenced these Chapter 11 Subchapter V cases the ("Chapter 11 Cases") by filing voluntary petitions for relief with the Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code.

5.  On the Petition Date, the Office of the United States Trustee filed the *Notice of Appointment of Subchapter V Trustee* [Docket Nos. 7] in each of the Chapter 11 Cases appointing Heidi J. Sorvino, Esq. as Subchapter V Trustee.

6.      Other than the appointment of Ms. Sorvino as the Subchapter V Trustee, no request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and no statutory committees have been appointed or designated.

7.      Additional information about the Debtors' businesses, the events leading up to the Petition Date and the Debtors' Chapter 11 petitions and the status of the Chapter 11 Cases can be found in the *Declaration of Dr. Sarah Ruback Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 6] (the "Ruback Declaration") and the *Debtors' Pre-Status Conference Report Pursuant to Bankruptcy Code Section 1188(c)* [Docket No. 88] (the "Pre-Status Conference Report").   The Debtors rely on the Ruback Declaration and the Pre-Status Conference Report in making the Motion and incorporate them herein by reference.

## THE SETTLEMENT

8.      The Debtor has one hardcopy records storage account with Iron Mountain currently storing approximately 2,128 boxes of records comprising 2,553.60 cubic feet (the "Records") in Account 02223.0282Z8 (the "Storage Account").

9.      The Debtor would like to retrieve the Records held by Iron Mountain in the Storage Account ("Records Retrieval").

10.     Iron Mountain provided the Debtor with a quote to retrieve the Records, and pursuant to certain standard pricing schedules maintained by Iron Mountain, Iron Mountain asserts that the cost to retrieve, administer, and prepare the Records for retrieval by the Debtor would total not less than $124,793.61, exclusive of ongoing storage costs (the "Records Retrieval Costs").

11.     Iron Mountain acknowledges that Debtor does not have a balance on any outstanding post-Petition Date invoices on the Storage Account.

12.     The Debtor and Iron Mountain have conferred regarding the amount claimed under the Accounts and the relative costs and benefits of Records Retrieval to each of the Parties.

13.     Subject only to the Court's approval of this Motion, the Parties have settled and resolved the amounts claimed owing and any and all other claims between them relating to the Records and the Accounts, as more fully-described in the Settlement and Mutual Release Agreement attached hereto as Exhibit 1 (the "Agreement"), and as follows:

a.      Within five (5) days of Court approval of the Motion and execution of this Agreement by the Parties, the Debtor shall pay $25,000.00 (the "Settlement Payment") to Iron Mountain in satisfaction of the Retrieval Costs.  The payment instructions are attached as Exhibit "B" to the Agreement.

b.      Upon receipt of the Settlement Payment, Iron Mountain is authorized and directed to prepare the Records for retrieval by the Debtor in the manner and on the timeline that the Debtor requests.

c.      Upon receipt of the Settlement Payment and completion of the Records Retrieval, Iron Mountain is authorized and directed to close the Storage Account.

## RELIEF SOUGHT

14.     By this Motion, the Debtors request entry of an order, substantially in the form of attached hereto as Exhibit 2, authorizing the Debtor to enter into the Agreement with Iron Mountain, make the Settlement Payment to Iron Mountain and exchange mutual releases.

## BASIS FOR RELIEF

15.     Approval of the Agreement is governed by Rule 9019(a) of the Bankruptcy Rules, which provides that "[o]n motion by the [Debtors] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bank. P. 9019(a).  As such, Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

16.     In determining whether to approve a proposed settlement, a court must find that the settlement is fair and equitable, reasonable and in the best interests of the debtor's estate and creditors . *See Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994). The decision to approve a particular compromise or settlement is within the sound discretion of the Bankruptcy Court.  *Drexel Burnham*, 134 B.R. at 505.  That "discretion should be exercised in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").

17.     A court need not decide the numerous issues of law and fact a settlement raises to approve the settlement under Bankruptcy Rule 9019; rather, it should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Lynch*, No. 19-cv-3837(GRB), 2022 U.S. Dist. LEXIS 91195, at *8 (E.D.N.Y. May 20, 2022) (same); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits). Put another way, "[a]ll that [the proponent of the settlement] must do is establish . . . [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).

18.     Courts in the Second Circuit apply the following factors in determining whether a

settlement meets the requirements of Rule 9019:

      a.      the probability of success in litigation, with due consideration for the uncertainty in fact and law;

      b.      the difficulties of collecting any litigated judgment;

      c.      the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

      d.      the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

      e.      the competence and experience of counsel who support the settlement;

      f.      the relative benefits to be received by members of any affected class;

      g.      the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and the debtor's informed judgment that the settlement is fair and reasonable.

*In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007) (citing I*n re Texaco,*

*Inc.*, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988)); *Purofied Down Prods.*, 150 B.R. at 522; *Drexel*

*Burnham*, 134 B.R. at 506.  Each of these factors supports approval of the Agreement here or is

neutral.

19.     Approval of the Agreement will not only resolve a claim against the Debtor's estate

for a fraction – approximately one-fifth -- of the amount sought, but it will also ensure that the

Debtor has access to its Records – consisting of more than 2,000 boxes), going forward.

Accordingly, the Agreement should be approved.

## <u>NOTICE</u>

20.     Notice of this Motion will have been provided to the (i) Office of the United States

Trustee for the Southern District of New York, (ii) the Subchapter V Trustee, (iii) counsel for the

pre-petition and post-petition lenders, (iv) all known creditors of the Debtors, and (v) any parties

that have formally appeared and requested services in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

21.    In light of the nature of the relief requested, the Debtors respectfully submit that such notice is adequate and sufficient and that no further notice is necessary.

## NO PRIOR REQUEST

22.    No prior request for the relief sought in the Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors request this Court enter an order granting this Motion and such other and further relief as the Court deems just and proper.

Dated: April 17, 2025
    New York, New York

                    **BARCLAY DAMON LLP**

                    By: _____*/s/Ilan Markus*_____
                    Janice B. Grubin
                    Ilan Markus
                    1270 Avenue of the Americas, Suite 501
                    New York, New York 10020
                    Telephone:  (212) 784-5800
                    jgrubin@barclaydamon.com
                    imarkus@barclaydamon.com

                    *Counsel to Debtors and Debtors-in-Possession*

# EXHIBIT 1

**Settlement and Mutual Release Agreement**

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement ("Agreement"), made as of the __ day of April 2025, is by and between St. Christopher's, Inc. (the "Debtor"), and Iron Mountain Information Management, LLC ("Iron Mountain," and collectively with the Debtor, the "Parties"). The Parties agree to the facts and terms of the Settlement Agreement as follows:

## RECITALS

The Agreement is based upon the following recitals, which are incorporated herein:

A.       On April 29, 2024 (the "Petition Date"), the Debtor and The McQuade Foundation filed Chapter 11 cases under Subchapter V of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York ("Court"), which are jointly administered under Case No. 24-22373-shl (the "Case").

B.       Also on April 29, 2024, the Office of the United States Trustee filed a Notice of Appointment of Subchapter V Trustee stating that it had appointed  Heidi J. Sorvino as  the statutorily-required Subchapter V Trustee.

C.       By agreement dated July 14, 2021, the Debtor contracted for Iron Mountain's storage services.  A copy of the agreement is attached as Exhibit "A."

D.       The Debtor has one hardcopy records storage account with Iron Mountain currently storing approximately 2,128 boxes of records comprising 2,553.60 cubic feet (the "Records") in Account ███████ (the "Storage Account").

E.       The Debtor would like to retrieve the Records held by Iron Mountain in the Storage Account ("Records Retrieval").

F.       Iron Mountain provided the Debtor with a quote to retrieve the Records, and pursuant to certain standard pricing schedules maintained by Iron Mountain, Iron Mountain asserts that the cost to retrieve, administer, and prepare the Records for retrieval by the Debtor would total not less than $124,793.61, exclusive of ongoing storage costs (the "Records Retrieval Costs").

G.       The Debtor must preserve the Records for purposes of ongoing litigation and the Case and disputes the Records Retrieval Costs.

H.       Iron Mountain acknowledges that Debtor does not have a balance on any outstanding post-Petition Date invoices on the Storage Account.

I.       The Debtor and Iron Mountain have conferred regarding the amount claimed under the Accounts and the relative costs and benefits of Records Retrieval to each of the Parties.

1

Document ID: 5343d5a0baf3fab5e4d4a659c9719cc1c5e8fc33d9e51d0421fdd0e4b6eabfa2

J.    The Parties now wish to settle and resolve the amounts claimed owing and any and all other claims between them relating to the Records and the Accounts.

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto covenant and agree as follows:

## I.    TERMS OF SETTLEMENT

1.    Within five (5) days of Court approval of the Motion and execution of this Agreement by the Parties, the Debtor shall pay $25,000.00 (the "Settlement Payment") to Iron Mountain in satisfaction of the Retrieval Costs. The payment instructions are attached as Exhibit "B."

2.    Upon receipt of the Settlement Payment, Iron Mountain is authorized and directed to prepare the Records for retrieval by the Debtor in the manner and on the timeline that the Debtor requests in writing within five (5) days of Court approval of the Motion.

3.    Upon receipt of the Settlement Payment and completion of the Records Retrieval, Iron Mountain is authorized and directed to close the Storage Account.

4.    Mutual Releases.    Immediately upon the execution of this Agreement and completion of the Records Retrieval, other than the right to enforce the relief set forth in this Agreement, the Parties, for themselves and their agents, servants, employees, attorneys, insurers, heirs, affiliates, business enterprises, partnerships, associations, successors, assigns, executors, nominors and administrators, do hereby release, remise, acquit and forever discharge the other, as well as their past, present and future partners, directors, officers, shareholders, executives, administrators, parent companies, subsidiaries, divisions, employees, servants, insurers, representatives, affiliates, franchisees, franchisors, agents, assigns, clients, attorneys, predecessors and successors-in-interest, and all other persons, firms, partnerships or corporations liable, or who might be claimed to be liable with respect to the Agreements of and from any and all actions, causes of action, claims, suits, demands, rights, debts, dues, obligations, accounts, contracts, agreements, controversies, judgments, damages, losses, costs, expenses, fees, attorneys' fees, sanctions, executions, liabilities, obligations and any and all other liabilities of any kind whatsoever, either in law or equity, whether known or unknown, suspected or unsuspected which could have been asserted from the beginning of time to the date hereof against each other solely relating to the Account and the Records.

5.    Modifications to the Agreement.    This Agreement shall not be modified, altered, amended or vacated without the prior written consent of the Parties.  Any motion or application brought before the Court to resolve any dispute arising or related to this Agreement shall be brought on proper notice in accordance with the relevant Federal Rules of Bankruptcy Procedure and the Local Rules of the Court.

6.    Counterparts.    This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which taken together shall constitute one

2

Document ID: 5343d5a0baf3fab5e4d4a659c9719cc1c5e8fc33d9e51d0421fdd0e4b6eabfa2

and the same agreement.  Any of the Parties may execute this Agreement by signing any such counterpart and each of such counterparts shall for all purposes be deemed an original.  This Agreement may be executed by facsimile and/or e-mail which shall have the same force and effect as an original signature.

7.    <u>Language Construed as Jointly Drafted by the Parties</u>.  The Parties agree that each of them has had a full opportunity to participate in the drafting of this Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against either of the Parties.

8.    <u>Voluntary Agreement</u>.  The Parties enter into this Agreement voluntarily and have had the opportunity at their sole discretion to consult with counsel.

9.    <u>Entire Agreement</u>.  This Agreement is the entire agreement among the Parties and supersedes all other prior agreements, understandings, or discussions, both written and oral, among the Parties in respect of the subject matter hereof.

10.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective executors, heirs, successors and assigns.

11.    <u>Further Assurances</u>.  From time to time, upon request, the Parties will, without further consideration, promptly execute, deliver, acknowledge and file all such further documents agreements, certificates and instruments and to do such further acts as the persons or entities entitled to the benefit of this Agreement may reasonably require to evidence or effectuate the transactions contemplated by this Agreement.

12.    <u>Illegality</u>.  If any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect.  However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision in this Agreement.  Notwithstanding the foregoing, upon any finding by any court of competent jurisdiction that any release provided for in this Agreement is illegal, void or unenforceable, each of the Parties agrees, promptly upon the request of the other Party hereto, to execute a release that is legal and enforceable.

13.    <u>Governing Law/Jurisdiction</u>.    EXCEPT TO THE EXTENT (IF ANY) GOVERNED BY THE BANKRUPTCY CODE, THE AGREEMENT AND THE RIGHTS AND DUTIES OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD REQUIRE THE APPLICATION OF LAWS OF ANOTHER JURISDICTION.

14.    <u>No admission of liability</u>.  This Agreement is in compromise of disputed claims between the Parties, and shall not be construed as an admission by the Parties or by any of their respective present or former directors, officers, employees or agents, of a violation of any federal, state, or local statute, regulation, judicial doctrine, or other law, or a violation of any right, or breach of any duty, obligation or contract.  All communications (whether oral or in writing) between and/or among the Parties, their respective counsel and/or other respective representatives

Document ID: 5343d5a0baf3fab5e4d4a659c9719cc1c5e8fc33d9e51d0421fdd0e4b6eabfa2

relating to, concerning or in connection with this Agreement, or the matters covered hereby and thereby, shall be governed and protected in accordance with Federal Rule of Evidence 408 and all other similar rules and laws to the fullest extent permitted by law, and no Party hereto shall seek to admit this Agreement into evidence against any other party hereto, except in an action to enforce or interpret the terms of this Agreement.

15.    <u>Captions</u>.  The captions of this Agreement are for convenience only and are not a part of this Agreement and do not in any way limit or amplify the terms and provisions of this Agreement and shall have no effect on its interpretation.

16.    <u>Acknowledgment of the Parties</u>.  Each of the Parties acknowledges that: (i) it has relied on this own independent investigation, and has not relied on any information or representations furnished by any other Party or any representative or agent thereof in determining whether or not to enter into this Agreement (other than the representations set forth in this Agreement); (ii) it has conducted its own due diligence in connections therewith, as well as undertaken the opportunity to review information, ask questions and receive satisfactory answers concerning the terms and conditions of this Agreement; and (iii) it possesses the knowledge, experience and sophistication to allow it to fully evaluate and accept the merits and risks of entering into the transactions contemplated by this Agreement.

17.    <u>Condition of Court Approval/Authorization</u>.  This Agreement is subject to Court approval, which the Debtor endeavors to seek promptly after this Agreement is executed by the Parties.  Subject to the previous sentence, the Parties represent and warrant that the signatories have full power and authority to enter into this Agreement and that this Agreement constitutes a valid, binding agreement in accordance with its terms.

[Signature Page to Follow]

4

IN WITNESS WHEREOF, the Parties have executed this Agreement under seal the day and year first above written.

**ST. CHRISTOPHER'S, INC.**

By: _____

Name: Dr. Sarah Ruback

Its: CEO, St. Christopher's, Inc.

Dated: 9/19/2025

**IRON MOUNTAIN INFORMATION MANAGEMENT, LLC,**

By: Heather Isley

Name: Heather Isley

Its: Senior Director, A2C Leader, Americas

Dated: 04/03/2025 PDT

5

Document ID: 5343d5a0baf3fab5e4d4a659c9719cc1c5e8fc33d9e51d0421ddd0a4b6eabfa2

**Exhibit A**

**Copy of Contract**

Document ID: 5343d5a0baf3fab5e4d4a659c9719cc1c5e8fc33d9e51d0421fdd0e4b6eabfa2

DocuSign Envelope ID: 67E908D37-37FB-4DEC-9161-3AB25E5B2515



Saint Christopher's Inc.

July 14, 2021

Dear Nat Modugno,

Great news - Your proposal for Iron Mountain services is ready! Thank you for your interest in our Storage A la carte solution,

Please let me know if you have any questions.

Thank you very much,

Peter Antosy

**IRON MOUNTAIN**

Email: peter.antosy@ironmountain.com

Phone: (610) 342-9583

www.IronMountain.com

## PRESERVE AND PROTECT WHAT MATTERS

Managing your records manually is time consuming, takes up valuable space and makes it difficult to stay compliant with regulations. Most importantly, it puts your business and your customer's information at risk. What if you could securely store your documents at a local facility, have access to a support team 24/7 and have the ability to customize your program for current and future needs?

### WHY STORE RECORDS OFFSITE?

- Repurpose real estate and leverage the space to run your business
- Manage information growth and scale on-demand
- Protect your businesses and your customers' information from disaster

WITH IRON MOUNTAIN® RECORDS STORAGE SERVICES, YOU'LL HAVE A LOCAL AND CONVENIENT SOLUTION FOR OFFSITE DOCUMENT STORAGE AND RETRIEVAL THAT WILL HELP YOU EFFECTIVELY STORE, MANAGE, SAFEGUARD AND RETRIEVE YOUR VITAL BUSINESS RECORDS. YOU'LL ENSURE THAT YOU KEEP WHAT YOU NEED, AND CAN GAIN ACCESS TO IT WHEN AND HOW YOU NEED TO.

## RECORDS MANAGEMENT: HOW IT WORKS



You pack your records or we can pack them for you

Your records are picked up and stored in a secure Iron Mountain facility

Schedule fast retrieval of your records online

Your physical box or file is delivered back to you

Your box or individual records can be delivered digitally

## WHY IRON MOUNTAIN

FOR OVER 60 YEARS, MORE THAN 156,000 BUSINESSES HAVE TRUSTED IRON MOUNTAIN TO SAFEGUARD THEIR INFORMATION AND FREE UP THEIR OFFICE OR SELF-STORAGE SPACE. HERE'S WHY.

**CONVENIENT RECORDS STORAGE.** Securely store your records and business items locally. No more hassles with packing and hauling boxes to a storage unit or trying to find a box in a packed basement.

**OFFSITE DOESN'T MEAN OFFLINE.** Iron Mountain Connect™ is a secure online hub that helps you manage your program. Use this tool to find the records you need fast with our innovative search technology. Use Iron Mountain Connect™ to place an order to retrieve records; request a records pickup and order supplies.

**RIGHT SIZE YOUR SERVICE.** Whether you're looking to store just a few boxes or an entire warehouse of records, there is an affordable package that can fit your business and grow alongside it.

## WHAT'S INCLUDED

Live 24/7 Customer Service

Online Inventory Reports

InControl™ Security System

Iron Mountain Connect

Local Support Team

## CONVENIENT ONLINE INVOICING AND PAYMENT

With Iron Mountain's easy to use online invoicing and payment service, you can easily manage your account at the click of a button.

**HOW IT WORKS**

- An Iron Mountain Specialist will reach out to you in order to set up your BillTrust account.

- Invoicing and payment for your account will be conducted through BillTrust.com, a secure, online invoice hub.

- Auto pay will be set up in Bill trust, using a credit card or Electronic Funds Transfer (EFT). You can log in to manage your invoices 24/7.

- An email notification will be sent when a new invoice is posted to your account and all payments are processed online.*

*Customers can request that a paper invoice be mailed in addition to their electronic invoices.



### Iron Mountain RFID-Ready Boxes

New in 2015, our most popular storage boxes* will come RFID-*ready* so you can have an easier path to Inventory Governance at no additional charge. RFID-*ready* boxes come with a pre-applied label containing an activated RFID chip that is pre-associated to the barcode, creating the industry's first and only RFID-*ready* box. They also come with a "buddy label" that you can easily peel and affix to your personal inventory sheet before sending offsite. You'll automatically be set up for your immediate or future inventory auditing needs,** with the latest asset tracking technology built into the box, eliminating the need to apply the labels yourself. Using RFID technology, you'll receive faster location services with no line of sight required.

With an RFID reader, you can also leverage our open source label to find your box quickly whether it be at your location or in transit with a third party.



For legacy records, you still have the choice of conducting audits via physical scan, or we can do an RFID label application project for your existing inventory. RFID labels are also sold separately for non-RFID-*ready* box types.

*Our most popular box types are 1.2 cf and 2.4 cf in the US and 1.2 in Canada.
**Additional charges apply for auditing requests.

# IRON MOUNTAIN®

## CUSTOMER AGREEMENT

| IRON MOUNTAIN INFORMATION MANAGEMENT, LLC | |
|---|---|
| **Address of Iron Mountain Branch/District Office:** | **FOR IRON MOUNTAIN PURPOSES ONLY** |

| | Account Number: | NAICS Code: |
|---|---|---|
| | Branch/District Cost Ctr. No.: | |

**Contract Effective Date:**    7/14/2021

| CUSTOMER:<br>**Saint Christopher's Inc.** | | | BILLING ADDRESS (If Different): | | |
|---|---|---|---|---|---|
| Street Address:<br>**71 Broadway** | | | Street or Box No.:<br>71 Broadway | | |
| City:<br>**Dobbs Ferry** | State:<br>**NY** | Zip + 4:<br>**10522** | City:<br>Dobbs Ferry | State:<br>NY | Zip + 4:<br>10522 |
| Primary Contact and Title:<br>**Nat Modugno** | | | Billing Contact: | | |
| Telephone: **914-879-9335**<br>E-mail: **nmodugno@sc1881.org** | | **Fax:** | Telephone:   914-879-9335<br>E-mail:   nmodugno@sc1881.org | | **Fax:** |

Iron Mountain Information Management, LLC ("Iron Mountain" or "IM") will perform the services described on schedules annexed to this Agreement, either physically or by reference (each a "Schedule"), and Customer will pay IM for such services according to the rates and provisions in the Schedules. All services will be provided subject to this Agreement, which consists of this page, the Basic Terms and Conditions, the Schedules and the Glossary of terms that can be found at http://cic.ironmountain.com.

**VALUE OF DEPOSITS.  Customer declares, for the purposes of this Agreement, that (a) with respect to hard-copy (paper) records, other materials, microfilm and microfiche stored pursuant to this Agreement, the value of such stored items is $1.00 per carton, linear foot of open-shelf files, container or other storage unit, and (b) with respect to round reel tape, audio tape, video tape, film, data tape, cartridges or cassettes or other non-paper media stored pursuant to this Agreement, the value of such stored items is equal to the cost of replacing the physical media. Customer acknowledges that it has declined to declare an excess valuation, for which an excess valuation fee would have been charged.**

**LIMITATION OF LIABILITY.  IM's liability, if any, for loss or destruction of, or damage to, materials stored with IM ("Deposits") is limited to the value of each Deposit as described above, or as otherwise set forth herein.  IM's maximum liability with respect to services not related to storage is the amount paid by Customer for a discrete project or, if the loss is related to service of an ongoing and continuing nature, 6 months of fees paid by Customer for such service.  Other limitations on IM's and/or Customer's liability are set forth on the following pages.**

| CUSTOMER: Saint Christopher's Inc. | IRON MOUNTAIN |
|---|---|
| Individual Signing:<br>[print name]      Nat Modugno | Individual Signing:<br>[print name]      Peter Antosy |
| *Signature:*  *Nat Modugno*<br>8E5FB52BFF454BE... | *Signature:*  *Peter Antosy*<br>3C45C839DB204F7... |
| Title:    CFO | Title:    BDR |
| Signing Date:<br>        15-Jul-2021 | Signing Date:<br>        15-Jul-2021 |

*In order to keep Customer apprised of IM's service offerings, new regulations that may be of interest to customers and similar information, IM will add Customer's representative to its informational mailing list, if an email address is provided above, to receive newsletters and communications through email or postal delivery. Customer may elect to unsubscribe any time after receiving the first newsletter or communication.*

## BASIC TERMS AND CONDITIONS

**The following terms and conditions shall apply to this Agreement.**

1. **Term.** The term of this Agreement shall commence on the date of Customer's signature or, if later, the Effective Date set forth on the first page of this Agreement. The initial term of this Agreement shall continue for one (1) year after commencement. Upon expiration of the initial term, the term will continue with automatic renewals for additional one (1) year terms, unless written notice of non-renewal is delivered by either party to the other no less than ninety (90) days prior to the expiration date. In the event that IM continues to hold Deposits after the expiration or termination of this Agreement, the terms of this Agreement shall continue to apply until all Deposits have been removed from IM's facility, except that IM may adjust rates upon thirty (30) days' written notice.

2. **Charges.** Rates and charges shall be as specified in the Pricing Schedule (Schedule A) and/or other Schedules. Rates and charges for storage and services shall remain fixed for the first 1 year of this Agreement, and may thereafter be changed at any time by IM upon thirty (30) days' written notice. Transportation surcharges apply and change monthly without notice in accordance with IM's fuel surcharge policy, which may be found at http://www.ironmountain.com/support/how-it-works/resources/transportation/fuel-surcharge/us-fuel-surcharge.

3. **Customer Instructions.** Customer warrants that it is the owner or legal custodian of the Deposits and has full authority to store and direct their disposition in accordance with this Agreement. IM will perform services pursuant to the direction of Customer's agent(s) identified pursuant to IM's standards. Authority granted to any persons on standard authorization forms shall constitute Customer's representation that the identified persons have full authority to order any service, including disposal or removal of Deposits. Such orders may be given in person, by telephone or in writing (fax, email or hard-copy). Customer releases IM from all liability related to the destruction of materials pursuant to Customer's authorization.

4. **Operational Procedures.** Customer shall comply with IM's reasonable operational requirements, as modified from time to time, regarding cartons, carton integrity, delivery/pickup/account closing volumes, preparation for pickup, security, secure shredding protocols, access and similar matters. Extraordinary volume requests (defined as 125% of the average volume over the immediately preceding three month period) may involve additional costs, such as overtime, which Customer will pay at IM's overtime rates, provided Customer consents to such costs in advance.

5. **Force Majeure.** Neither party shall be liable for delay or inability to perform caused by acts of God, governmental actions, labor unrest, acts of terrorism, riots, unusual traffic delays or other causes beyond its reasonable control.

6. **Governmental Orders.** IM is authorized to comply with any subpoena or similar order related to the Deposits, at Customer's expense, provided that IM notifies Customer promptly upon receipt thereof, unless such notice is prohibited by law. IM will cooperate with Customer's efforts to quash or limit any subpoena, at Customer's expense.

7. **Confidentiality.** "Confidential Information" means any information concerning or relating to the property, business and affairs of the party disclosing such information that is furnished to the receiving party, and regarding this Agreement, its Schedules and IM's processes and procedures; except for information that was previously known to the receiving party free of any obligation to keep it confidential, is subsequently made public by the disclosing party or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be used only in the manner contemplated by this Agreement and shall not be intentionally disclosed to third parties without the disclosing party's written consent, except as authorized in Section 6. IM shall not obtain any rights of any sort in or to the Confidential Information of Customer contained in Deposits. IM shall implement and maintain reasonable safeguards designed to protect Customer's Confidential Information.

8. **Limitation of Liability.**
   a. <u>Liability for Loss or Damage to Deposits</u>. IM shall not be liable for any loss or destruction of, or damage to, Deposits, including costs resulting from a loss of a Deposit constituting a breach of data security or confidentiality, unless such loss or damage resulted from IM's negligence. If liable, the amount of IM's liability is limited as provided on the first page hereof. Deposits are not insured by IM against loss or damage, however caused. Customer may insure Deposits through third-party insurers for any amount. Customer shall cause its insurers of Deposits to waive any right of subrogation against IM. If Deposits are placed in the custody of a third-party carrier for transportation, the carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the carrier.
   b. <u>Liability for Non-Storage Services</u>. With respect to services not related to the storage of Deposits, IM shall not be liable for any loss or default, including direct damages resulting from a breach of data security or confidentiality, unless such loss or default is due to the negligence of IM. IM shall not be liable for the loss of contents of shredding bins unless and until the contents are in the custody and control of IM and only to the extent caused by IM's negligence. If liable under this subsection (b), the amount of IM's liability is limited as provided on the first page hereof.

c.   No Consequential Damages.  In no event shall either party be liable for any consequential, incidental, special or punitive damages, or for loss of profits or loss of data, regardless of whether an action is brought in tort, contract or under any other theory.

9.   **ITAR/EAR Compliance.**  Customer represents that the Deposits stored by Iron Mountain pursuant to this Agreement do not contain technical information regarding defense articles or defense services within the meaning of the International Traffic in Arms Regulations (22 CFR 120) or technical data within the meaning of the Export Administration Regulations (15 CFR 730-774) (cumulatively, "controlled information"), and acknowledges that Iron Mountain will not handle such materials under its plan for compliance with export controls. Notwithstanding, if Customer notifies Iron Mountain that any of its Deposits contain controlled information, Iron Mountain will apply its Plan for compliance with export controls, and Customer acknowledges that special storage and service rates may apply.

10.  **Non-Custodial Status.**  Unless IM shall have explicitly agreed in writing, IM's performance of services shall not cause IM to be deemed a "custodian" of records or "designee" of Customer under state or federal law with respect to such records.

11.  **Notice of Claims.**  Claims by Customer must be presented in writing within a reasonable time, in no event longer than ninety (90) days after delivery or return of the Deposits to Customer, or ninety (90) days after Customer is notified of loss, damage or destruction to part or all of the Deposits.

12.  **Notice of Loss.**  When Deposits have been lost, damaged or destroyed, IM shall, upon confirmation of the event, report the matter in writing to Customer.

13.  **Payment Terms.**  Payment terms are net, thirty (30) days.  Customer shall be liable for late charges totaling one and a half percent (1.5%) per month of the outstanding balance.  At any time during the term of this Agreement, IM may require Customer to enroll in electronic payment (including auto-pay) at no additional charge to Customer if: (i) Customer fails to pay its charges pursuant to the payment terms herein; or (ii) Customer's annual account charges meet IM's requirement for electronic payment.  Prior to delivery of Deposits upon expiration, termination, or substantial withdrawal, IM may require full payment in advance.

14.  **Customer Default.**  If Customer fails to pay IM's charges (other than disputed charges) sixty (60) days after the date of an invoice, IM may suspend service.  If Customer fails to pay IM's charges (other than disputed charges) for three (3) months or longer, IM may securely destroy Deposits, provided IM shall have provided ninety (90) days' written notice to Customer and Customer shall pay IM's standard price for such destruction.  A final notice will be sent to Customer ten (10) days prior to secure destruction of the Deposits. IM shall have other rights and remedies as may be provided by law.  In the event IM takes any actions pursuant to this Section 14, it shall have no liability to Customer or anyone claiming by or through Customer.

15.  **Termination.**  Either party may terminate this Agreement upon written notice to the other party in the event that the other party materially breaches the Agreement and fails to cure such default within forty-five (45) days after written notice of such default, subject to payment of the fees/charges set forth in the applicable Schedule(s).

16.  **Safe Materials and Premises.**  Customer shall not store with IM or place in shredding bins any material that is highly flammable, may attract vermin or insects, is otherwise dangerous or unsafe to store or handle, or is regulated by federal or state law or regulation relating to the environment or hazardous materials.  Customer shall not store (or place in shredding bins) negotiable instruments, jewelry, check stock or other items that have intrinsic value. Customer shall only place paper-based materials in the shredding bins.  Customer warrants and covenants that its premises where IM employees perform services (including pickups and deliveries) are and shall be free of hazardous substances or dangerous conditions.  Customer shall reimburse IM for damage to equipment or injury to personnel resulting from Customer's breach of this Section 16.

17.  **Purchase Orders.** In the event that Customer issues a purchase order to IM covering the services provided under this Agreement, any terms and conditions set forth in the purchase order which are in addition to or establish conflicting terms and conditions to those set forth in this Agreement are expressly rejected by IM.

18.  **Miscellaneous.**  IM may subcontract its obligations under this Agreement, in whole or in part, to an affiliate. Neither party may assign this Agreement in whole or in part, except to an affiliate, without the prior written consent of the other party. An affiliate means any entity controlling, controlled by, under common control with, or having a common parent with IM or Customer. Any notice made pursuant to this Agreement may be given in writing at the addresses set out on the first page hereof until written notice of a change of address has been received. Notices to IM shall be sent to the attention of its General Manager.  IM may exercise all rights granted to warehousemen by the Uniform Commercial Code as adopted in the state where the Deposits are stored. In the event of inconsistency between these Basic Terms and Conditions and a Schedule, the Basic Terms and Conditions shall prevail as to the services covered thereby. Customer represents and covenants that upon the Effective Date of this Agreement and throughout the term of this Agreement, that: (i) it is not identified on any restricted party lists; or located in countries identified on any

DocuSign Envelope ID: 67E908D7-37FB-4DE6-B161-3AB25E5B9515

restricted country lists; or using the goods or services for any restricted end uses; including those promulgated by the U.S. Departments of State, Commerce and Treasury; and (ii) it is and shall remain compliant with all laws and regulations applicable to its performance under this Agreement, including but not limited to export control and economic sanctions, will not take any action that will cause Iron Mountain to be in violation of such laws and regulations, and will not require Iron Mountain to directly or indirectly take any action that might cause it to be in violation of such laws and regulations. Customer will not provide Iron Mountain any goods, software, services and/or technical data subject to export controls and controlled at a level other than EAR99/AT. This Agreement shall be governed by the laws of the state in which Customer's office identified in this Agreement is located except for conflicts of laws principles.

19. **Entire Agreement.**  The terms contained in this Agreement, together with any schedules and/or statements of work, constitute the entire understanding of the parties with respect to the transactions and matters contemplated hereby and supersede all previous communications, representations, agreements and understandings relating to the services provided by IM to Customer with respect to the subject matter hereof.

# Schedule A:

## PROGRAM PRICING SCHEDULE

## Records Management

This Records Management Pricing Schedule is incorporated into and made part of the Customer Agreement ("Agreement") between Iron Mountain Information Management LLC, (the "Company" or "Iron Mountain") and Saint Christopher's Inc., (the "Customer").

List Price is the standard Iron Mountain price for a given service.

Please see our Customer Information Center at cic.ironmountain.com for a Glossary with definitions of the terms used in this Pricing Schedule and more detail regarding our services, standard processes, and billing practices. In addition, restrictions apply to volume and/or stated timeframes for some service transaction types and these may be found in the Glossary under each service type.

This Records Management Pricing Schedule supersedes and terminates any prior Records Management Pricing Schedule and/or Schedule A existing between Iron Mountain and the Customer for the accounts noted below. All other Records Management services not specifically listed on this Schedule A will be charged at Iron Mountain's then current rates.

District Name/Number:    |    Customer No.

Effective Date:  7/14/2021

# List Prices (as of 7/14/2021)

**STANDARD STORAGE AND SERVICES** (see http://cic.ironmountain.com/records/glossary for service definitions)

| DESCRIPTION | CURRENT LIST PRICE | PER |
|---|---|---|
| ▪ Carton Storage | $0.41 | Cubic Foot |
| ▪ Receiving and Entering - Carton | $2.87 | Cubic Foot |
| ▪ Regular Retrieval - Carton | $3.61 | Cubic Foot |
| ▪ Regular Retrieval - File from Carton | $4.83 | File |
| ▪ Regular Refile - Carton | $3.61 | Cubic Foot |
| ▪ Regular Refile - File to Carton | $4.83 | File |
| ▪ Archival Destruction - Carton | $4.38 | CF plus Regular Retrieval Charge |
| ▪ Permanent Withdrawal - Carton | $7.70 | CF plus Regular Retrieval Charge |
| ▪ Permanent Withdrawal - File from Carton | $3.90 | File plus Regular Retrieval Charge |
| ▪ Next Day Delivery | $33.81 | Visit plus Handling Charge |
| ▪ Regular Pickup | $33.81 | Visit plus Handling Charge |
| ▪ Handling Charge | $3.29 | Cubic Foot |

**PREMIUM STORAGE AND SERVICES** (see http://cic.ironmountain.com/records/glossary for service definitions)

| DESCRIPTION | CURRENT LIST PRICE | PER |
|---|---|---|
| ▪ Rush Retrieval - Carton | $7.65 | Cubic Foot |
| ▪ Rush Retrieval - File from Carton | $10.20 | File |
| ▪ Regular Interfile - Carton | $9.30 | Each |
| ▪ Half Day Delivery | $66.75 | Visit plus Handling Charge |
| ▪ Rush Delivery - Business Day | $132.30 | Visit plus Handling Charge |
| ▪ Rush Delivery - Weekends/Holidays/After Hours | $265.70 | Visit plus Handling Charge |
| ▪ Rush Pickup - Business Day | $132.30 | Visit plus Handling Charge |
| ▪ Archival Destruction - File from Carton | $5.85 | File plus Regular Retrieval Charge |
| ▪ Miscellaneous Services - Labor | $68.65 | Hour |
| ▪ Re-Boxing Charge | $6.90 | Labor plus New Carton Cost |

**OTHER PROGRAM FEES** (see http://cic.ironmountain.com/records/glossary for service definitions)

| DESCRIPTION | CURRENT LIST PRICE | PER |
|---|---|---|
| ▪ Administrative Fee (Summary Billing) | $31.95 | Account ID per Month |
| ▪ Administrative Fee (Detailed Billing) | $79.75 | Account ID per Month |
| ▪ Fuel Surcharge | * | Transportation Visit |

*A Fuel Surcharge is applied monthly based upon changes in the price of diesel fuel as published by the US Department of Energy. This charge is calculated monthly and included as a percentage of transportation related service charges. The current monthly Fuel Surcharge information can be found at http://cic.ironmountain.com/FuelSurcharge.

DocuSign Envelope ID: 67E908D97-37FB-4DEC-9161-3A525E5B0515

# Custom Pricing

| CUSTOM STORAGE AND SERVICES (see http://cic.ironmountain.com/records/glossary for service definitions) | | |
|---|---|---|
| DESCRIPTION | CURRENT LIST PRICE | PER |
| Initial Move - Carton | $0.00 | Cubic Foot |
| Initial Move - Individual Listing | $0.80 | File |
| Initial Move - Labor | $65.35 | Hour |
| Individual Listing | $0.80 | File |
| Storage Minimum | $170.55 | Month |
| Minimum Service Order Charge | $17.40 | Order |
| Image on Demand - Imaging Minimum (includes first 50 images) | $24.90 | Order |
| Image on Demand - Digital Images Scanned (in excess of the first 50 images) | $0.30 | Image |
| Image on Demand - Hourly Labor | $68.65 | Hour |
| Image on Demand - Professional Services | $307.10 | Hour |
| RFID Z Label | $0.60 | File |
| RFID T Label | $0.60 | File |

**Note: Storage Minimum will not apply during the first 30 days following the effective date of your Agreement. Following this grace period, one of the accounts under this schedule designated by Customer will be assessed a Storage Minimum if the aggregate storage charges for the account(s) under this Schedule is less than the amount specified, even if no records have been moved into an Iron Mountain storage facility.

Image on Demand is not available in all markets. If the customer's requirements differ from those described in "Image on Demand - Overview" within the glossary of the Customer Information Center (http://cic.ironmountain.com/records/glossary), then custom services are available and must be described in an agreed upon statement of work.

Additional Services beyond those listed in this Pricing Schedule are available. For service descriptions, please go to Additional Services at cic.ironmountain.com/additionalservices.

# Initial Move

Initial Move prices apply for the services listed for Items received during the startup process (Initial Move) of a new customer program and applies to all initial volume received by Iron Mountain within three (3) months of the date of the date of the Agreement.



## Access Authorization Form
## Records Management

✕ New

Update

| | |
|---|---|
| **Customer Number/ID** | |
| **Customer Name** | Saint Christopher's Inc. |
| **Division ID** | All Divisions |
| **Department ID** | All Departments |

***Strict Authorization will apply*** = *Only the names listed will have access to the account information*

**Authorized Users  ***Minimum of two authorized users required*****
*If the account is Department Restricted, a minimum of two authorized users is required for each Department ID*

**Access #1:**

| | |
|---|---|
| Authorized Contact Name: | Nat Modugno |
| Phone Number: | 9143435903 |
| Email Address: | nmodugno@sc1881.org |
| *Password (optional): | |
| Department (if department specific/restricted): | |
| Authorized Destruction: | No |
| | |

**Access #2:**

| | |
|---|---|
| Authorized Contact Name: | Ralph Herrera |
| Phone Number: | 9148799335 |
| Email Address: | rherrera@sc1881.org |
| *Password (optional): | |
| Department (if department specific/restricted): | |
| Authorized Destruction: | Yes |

*Password security is optional.  Passwords can be any alphanumeric combination up to 10 characters.

Authorized by:  DocuSigned by:
Nat Modugno
—8E3FB32BFF434BE...

Phone Number/Ext:

**Exhibit B**

**Payment Instructions**

Document ID: 5343d5a0baf3fab5e4d4a659c9719cc1c5e8fc33d9e51d0421fdd0e4b6eabfa2



**To Remit Payment by Check:**

    Iron Mountain
    PO Box 27128
    New York, NY 10087-7128

**To Remit Payment by same day wire:**

    For Account of (Account with Institution):

        JP Morgan Chase Bank
        Account Number: ███████
        SWIFT BIC: ██████
        Account Type: Checking
        Electronic Payment Customer Service (813) 432-3700

    Favor (Beneficiary):        For further credit to : Iron Mountain
                      Account Number: ███████

**To Remit Payment by EFT / ACH:**

    Pay To:        JP Morgan Chase Bank
               ABA (Routing) Number: ███████

    For further credit to:    Iron Mountain
                     Account Number: ███████

**Bank Address:**

    JP Morgan Chase Bank
    270 Park Avenue
    New York, NY 10017
    U.S.A

<span style="color:red">We accept both CTX and CCD electronic payment format - CTX is a preferred method. We request that, if possible, the CTX Format to be used so remittance advices can be sent directly to the bank.</span>

If you must Email or Fax the remittance details to us, please use the following Information
- Email Address : AREFTREMIT@ironmountain.com
- Fax Number : (484)-971-5011 or (484)-971-9002 – ATTN : Accounts Receivables

For Iron Mountain
Signed and Authorized by –Nataraja Hegde – Manager-- Finance Shared Services

*N a g H N*    Dated: 07-JAN - 2025

# EXHIBIT 2

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

---

### ORDER APPROVING SETTLEMENT AND COMPROMISE BETWEEN DEBTORS AND IRON MOUNTAIN INFORMATION MANAGEMENT, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Upon the Motion (the "Motion")[2] of the above captioned debtors and debtors-in-possession (the "Debtors"), pursuant to Bankruptcy Code sections 105(a) and 363 and Bankruptcy Rule 9019(a) approving the settlement between St. Christopher's, Inc. (the "Debtor") and Iron Mountain Information Management, LLC ("Iron Mountain" and, together with the Debtor, the "Parties"); and the Court having subject matter jurisdiction to consider and determine the Motion, and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 and it appearing that due and sufficient notice of the Motion has been given and upon the record of the hearing on the Motion and all of the proceedings had before this Court; and all objections to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, now, therefore, it is hereby

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**ORDERED**, that the Motion is granted as set forth herein; and it is further

**ORDERED**, that the Agreement, which was attached as Exhibit 1 to the Motion, be and hereby is authorized and approved in its entirety in all respects; and it is further

**ORDERED**, that the Debtor is authorized to consummate the Agreement; and it is further

**ORDERED**, that all of the terms set forth in the Agreement, including the agreements, releases, terms and conditions of the Agreement, are deemed binding on the Parties thereto; without limitation, the releases by the Parties to the Agreement are authorized and approved by the Court as set forth in the Agreement; and it is further

**ORDERED**, that the Parties are authorized to take all actions and execute all documents necessary to implement the Agreement; and it is further

**ORDERED**, that this Court shall maintain jurisdiction to interpret and enforce the provisions of the Agreement and this Order in all respects; and it is further

**ORDERED**, that, to the extent applicable, the stay provided for in Bankruptcy Rule 6004(h) is hereby waived and this Order shall be effective immediately upon its entry.


Dated:    May ____, 2025
          White Plains, New York

                                        _____
                                        Honorable Sean H. Lane
                                        United States Bankruptcy Judge