**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ST. CHRISTOPHERS, INC., *et al.*,[1] | : | Case No. 24-22373 (shl) |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

**ORDER AMENDING FINAL ORDER (I) AUTHORIZING THE DEBTOR
ST. CHRISTOPHER'S, INC. TO OBTAIN POST-PETITION FINANCING,
(II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, AND (III)
MODIFYING THE AUTOMATIC STAY**

Upon consideration of the motion dated June 23, 2025 [Document No. 226] (the "Motion") of ST. CHRISTOPHER'S, INC ("St. Christophers"), and THE MCQUADE FOUNDATION ("McQuade"), both New York not-for-profit corporations and debtors and debtors-in-possession (individually, each a "Debtor" and together, the "Debtors"), in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), for entry, among other things, of an order (this "DIP Loan Amendment Order") approving an amendment to the *Final Order (I) Authorizing the Debtor St. Christopher's, Inc. to Obtain Post-petition Financing, (II) Granting Liens and Super-priority Claims, and (III) Modifying the Automatic Stay* [Docket No. 129] (the "Final DIP Order")[2]; and the Court having considered the Motion and the record in these Chapter 11 Cases; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that due and proper notice of the Motion has been given and no other or further notice is necessary; and objections, if

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

[2] Capitalized terms not defined herein are defined in the Final Order.

1

any, having been withdrawn, resolved, or overruled on the merits by the Court; and the Court having determined that entry of this DIP Loan Amendment Order is an appropriate exercise of the Debtors' sound business judgment; and after due deliberation it appearing that sufficient cause exists for granting the requested relief pursuant to Sections 105, 361, 362, 363, 364, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2, and that the requested relief is in the best interest of the Debtors, their estates, and their creditors;

**IT IS HEREBY ORDERED THAT:**

1. This DIP Loan Amendment Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.

2. Upon entry of this DIP Loan Amendment Order, pursuant to Sections 105, 361, 363, 364, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2, the Final DIP Order is amended and supplemented by adding a new Paragraph 28 thereto as follows:

> 28. <u>Amendments</u>.
>
> a. <u>Background of Amendments</u>.
>
> (i) On November 7, 2024, this Court entered that certain *Order (A) Authorizing the Sale of the Dobbs Ferry Real Estate, Free and Clear of Liens, Claims, Encumbrances, and Other Interests with the Exception of the Agency Lease and (B) Granting Related Relief* [Docket No. 180] (the "<u>DF Sale Order</u>"). Pursuant to Paragraph 8 of the Sale Order, the Borrower obtained authority to sell the real property serving as Collateral for the DIP Obligations, *i.e.* the Dobbs Ferry Real Estate (as

2

defined in the DF Sale Order), provided that (1) the claims, liens, security interests, and other interests of the DIP Lender on, in, and to the Dobbs Ferry Real Estate, pursuant to the DIP Documents and the Final Order, *i.e.* the DIP Liens, shall continue to exist on, in, and to the proceeds of the sale of the Dobbs Ferry Real Estate (the "DF Sale Proceeds") in the same order, manner, and priority as they existed on, in, and to the Dobbs Ferry Real Estate as security for all indebtedness, liabilities, expenses, and other obligations of the Borrower owed to the DIP Lender under the DIP Documents and the Final DIP Order, *i.e* the outstanding DIP Obligations; and (2) upon the closing and consummation of the sale of the Dobbs Ferry Real Estate, DF Sale Proceeds in an amount sufficient to repay all outstanding DIP Obligations in full shall be immediately paid to the DIP Lender in repayment of such outstanding DIP Obligations, unless the DIP Lender agrees to different treatment under terms and conditions, and pursuant to agreements, instruments, documents, and further Orders of this Court, acceptable to the DIP Lender in its sole and absolute discretion.

(ii) The net DF Sale Proceeds, after establishing an operational reserve, are not in an amount sufficient to repay all outstanding DIP Obligations in full.

(iii) The DIP Lender is willing to agree to accept DF Sale Proceeds in an amount equal to only Two Million Eight Hundred Fifty Thousand and 00/100 Dollars ($2,850,000.00) (the "Partial Paydown Amount"), provided that (1) McQuade executes an Unconditional

3

Guaranty in favor of the DIP Lender in substantially the form annexed hereto as <u>Exhibit 1</u> (the "<u>Guaranty</u>"), pursuant to which McQuade shall absolutely, unconditionally, and irrevocably guaranty, and become surety for, the DIP Obligations (the "<u>Guaranteed DIP Obligations</u>"); (2) except as otherwise provided herein and in the Final Order, the Guaranteed DIP Obligations are secured by priming, first priority, perfected, security interests and liens on, in, and to that certain real property owned by McQuade in fee simple commonly known as 621 Blooming Grove Turnpike, Town of New Windsor, County of Orange, State of New York, Tax ID Section 37, Block 1, Lot 49 (the "<u>New Windsor Real Estate</u>"), pursuant to §§ 364(c)(2) and 364(d) of the Bankruptcy Code; (3) the Guaranteed DIP Obligations constitute an allowed super-priority, administrative expense claim against McQuade in its bankruptcy case, pursuant to § 364(c)(1) of the Bankruptcy Code; (4) the execution, delivery, and performance of the Guaranty by McQuade is authorized and approved by the Court; (5) the automatic stay imposed by § 362 of the Bankruptcy Code is modified solely to the extent necessary to implement and effectuate the terms and provisions of the Guaranty; and (6) the DIP Loan Amendment Order is in form and substance acceptable to the DIP Lender in its sole discretion.

      b.     <u>Authorization of Guaranty</u>. The Court hereby authorizes and approves the execution, delivery, and performance by McQuade of and under the Guaranty in substantially the form annexed hereto (with such

4

changes, if any, as were addressed to the Court or are authorized to be made as amendments to the Guaranty in accordance with this DIP Loan Amendment Order); and McQuade is authorized and directed to execute, deliver, and perform under all the terms and conditions of the Guaranty, each of which is hereby approved. The Guaranty may be executed and delivered on behalf of McQuade by any officer, director, or agent of McQuade who represents himself or herself to be duly authorized and empowered to execute the Guaranty for and on behalf of McQuade, and the DIP Lender may rely on any of such person's execution and delivery of the Guaranty as having done so with all requisite power and authority to do so. The Guaranty shall constitute valid and binding obligations of McQuade, enforceable against McQuade in accordance with its terms, and a DIP Document.

    c.    <u>DIP Collateral and DIP Liens</u>.

    (1)    All Guaranteed DIP Obligations shall be, and hereby are, secured by priming, first priority, perfected security interests and liens (collectively, the "<u>McQuade DIP Liens</u>") in favor of the DIP Lender on, in, and to the New Windsor Real Estate (the "<u>McQuade DIP Collateral</u>") except as otherwise provided herein and in the Final Order.

    (2)    Except as otherwise provided herein and in the Final DIP Order, the McQuade DIP Liens with respect to the McQuade DIP Collateral shall have the following priorities:

        (x)    <u>Unencumbered Collateral</u>. Pursuant to § 364(c)(2) of the Bankruptcy Code, a first

5

        priority senior lien on and security interest in all McQuade DIP Collateral; and

    (xi) <u>Encumbered Collateral</u>. Pursuant to § 364(d) of the Bankruptcy Code, a priming, first priority senior lien on and security interest in all McQuade DIP Collateral.

  d. <u>Super-Priority DIP Claim; Surcharge</u>.

    (1) <u>Scope of Super-Priority DIP Claim</u>. In addition to being secured as provided in this DIP Loan DIP Amendment Order, all Guaranteed DIP Obligations shall constitute an allowed administrative expense claim under § 503(b) of the Bankruptcy Code and shall constitute an allowed super-priority claim (the "<u>McQuade Super-Priority DIP Claim</u>") pursuant to § 364(c)(1) of the Bankruptcy Code over all other administrative expenses in the Chapter 11 Case of McQuade of the kind specified in, or ordered pursuant to, §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506, 507(a), 507(b), 546(c), 546(d), 726(b), 1113, or 1114 of the Bankruptcy Code, except as otherwise provided in the Final DIP Order.

    (2) <u>No Surcharge</u>. No costs or administrative expenses that have been or may be incurred in the Chapter 11 Case of McQuade, in any matters or proceedings related hereto or in any superseding chapter 7 case, and no priority claims, are or will be prior to or on a parity with the McQuade Super-Priority DIP Claim of the DIP Lender for the Guaranteed DIP Obligations. In no event shall any costs or expenses of administration be imposed upon the DIP Lender or any of the McQuade DIP Collateral pursuant to §§ 105, 506(c), or 552(b) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Lender, and no such

6

consent shall be implied from any action, inaction, or acquiescence by the DIP Lender.

  e. <u>Repayment</u>.  McQuade shall be liable to repay the Guaranteed DIP Obligations in accordance with the Guaranty.  The Guaranteed DIP Obligations shall be due and payable, and shall be paid, as and when provided in the Guaranty and as provided herein, without offset, counterclaim, deduction, or other claim of avoidance of any nature or type.  In no event shall McQuade be authorized to offset, deduct, avoid, or recoup any amounts owed, or alleged to be owed, by the DIP Lender to McQuade against any of the Guaranteed DIP Obligations, unless and to the extent expressly otherwise agreed to in writing by the DIP Lender.

  f. <u>Preservation of Rights Granted Under this DIP Loan Amendment Order</u>.

   (1) <u>Protection from Subsequent Financing Order</u>.  It shall constitute an Event of Default under (and as defined in) the Guaranty if McQuade seeks, or if there is entered in the Chapter 11 Case of McQuade, or in any successor case, any order that authorizes the obtaining of credit or the incurrence of indebtedness by McQuade (or any trustee or examiner) that (i) is secured by a security, mortgage, collateral interest, or lien on all or any part of the McQuade DIP Collateral that is equal or senior to the McQuade DIP Liens or (ii) has priority administrative status that is equal or senior to the McQuade Super-Priority DIP Claim; <u>provided</u>, <u>however</u>, that nothing herein shall prevent the entry of an order that

7

specifically provides that, as a condition to the granting of the benefits of clauses (i) or (ii) above, all of the Guaranteed DIP Obligations must be fully paid in immediately available funds from the proceeds of such credit or indebtedness, and all contingent obligations owed to the DIP Lender as provided in the Guaranty must be fully cash collateralized.

(2) If the Chapter 11 Case of McQuade is dismissed, converted, or substantively consolidated with another case, then neither the entry of this DIP Loan Amendment Order nor the dismissal, conversion, or substantive consolidation of such Chapter 11 Case shall affect the rights or remedies of the DIP Lender under this DIP Loan Amendment Order and the Guaranty, and all of the respective rights and remedies hereunder and thereunder of the DIP Lender shall remain in full force and effect as if the Chapter 11 Case of McQuade had not been dismissed, converted, or substantively consolidated. It shall constitute an Event of Default under (and as defined in) the Guaranty if McQuade seeks, or if there is entered, any order dismissing the Chapter 11 Case of McQuade. If an order dismissing the Chapter 11 Case of McQuade is at any time entered, such order shall provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (i) all of the liens and claims granted and/or continued hereunder shall continue in full force and effect and shall maintain their priorities as provided in this DIP Loan Amendment Order (and that such liens and claims shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) this Court shall retain jurisdiction,

8

notwithstanding such dismissal, for the purpose of enforcing all such liens and claims.

  g. <u>No Discharge; Credit Bid Rights</u>.  Unless and until the payment in full of the Guaranteed DIP Obligations shall occur, all such obligations shall not be discharged by the entry of any order confirming a plan in the Chapter 11 Case of McQuade, and pursuant to § 1141(d)(4) of the Bankruptcy Code, McQuade has waived such discharge.  The right of the DIP Lender to submit a credit bid in the full or partial amount of the Guaranteed DIP Obligations for all or any part of the McQuade DIP Collateral in any sale of the McQuade DIP Collateral, whether such sale is effectuated through § 363 or § 1129 of the Bankruptcy Code, by a chapter 7 trustee under § 725 of the Bankruptcy Code, or otherwise, shall not be limited, restricted, impaired, altered, or otherwise modified in any respect.  If the DIP Lender makes a credit bid in connection with any auction or other sale process relating to the sale or other disposition of any McQuade DIP Collateral, then for purposes of such auction or sale process or any applicable order of this Court, the DIP Lender shall be automatically deemed to be a "qualified bidder" and its credit bid shall automatically constitute a qualified bid, regardless of whether the qualified bidder or qualified bid requirements are satisfied and whether or not such qualified bid requirements are contained in an order of this Court.

  h. <u>No Marshaling</u>.  McQuade agrees not to assert rights pursuant to the equitable doctrine of "marshaling" or any similar doctrine

9

with respect to any McQuade DIP Collateral at any time securing any of the Guaranteed DIP Obligations, and in no event shall any McQuade DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of McQuade's estate pursuant to § 551 of the Bankruptcy Code.

  i. <u>No Requirement to File Proof of Claim</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of claims entitled to administrative expense treatment under § 503(b) of the Bankruptcy Code, the DIP Lender shall not be required to file any proof of claim with respect to any of the Guaranteed DIP Obligations, all of which shall be allowed without the necessity of filing any such proof of claim, and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the Guaranty or prejudice or otherwise adversely affect the DIP Lender's rights, remedies, powers, or privileges under the Guaranty or this DIP Loan Amendment Order.

  j. <u>Reservation of Rights</u>.  So long as not inconsistent with the provisions of this DIP Loan Amendment Order and the Final DIP Order, the terms, conditions, and provisions of this DIP Amendment Order are in addition to, and without prejudice to the rights of, the DIP Lender to pursue any and all rights and remedies available to the DIP Lender under the Guaranty and the Bankruptcy Code, or any other applicable agreement or

law, including, without limitation, the right to seek relief from the automatic stay, to seek an injunction, to oppose any request for the granting of any interest in the McQuade DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professional persons or other parties seeking compensation in the Chapter 11 Case of McQuade.

      k.      <u>Automatic Perfection of Liens</u>. The McQuade DIP Liens shall be deemed valid, binding, enforceable, and perfected with respect to all of the McQuade DIP Collateral.  The DIP Lender shall not be required to file any UCC-1 financing statements, mortgages, notices of lien, or any similar document or take any other action (including, without limitation, possession of or control of any of the McQuade DIP Collateral or the obtaining of any consent of any third party) in order to validate the perfection of any McQuade DIP Liens.  If the DIP Lender chooses to file or record any such UCC-1 financing statements, mortgages, notices of lien, or similar documents, or take any other action to validate the perfection of any McQuade DIP Liens, McQuade is authorized and directed to execute any agreements, instruments, and documents as the DIP Lender shall reasonably request, and all such agreements, instruments, and documents shall be deemed to have been filed or recorded as of the date of entry of this DIP Loan Amendment Order, and McQuade shall pay or reimburse the DIP Lender for the payment of any cost, fees, or expenses (including, without limitation, recording taxes) payable in connection with the filing

or recordation of any UCC-1 financing statements, mortgages, notices of lien, or similar documents. The DIP Lender may, in its discretion, file a certified copy of this DIP Loan Amendment Order in any filing office in any jurisdiction in which McQuade has or maintains any McQuade DIP Collateral, and each filing office is directed to accept such certified copy of this DIP Loan Amendment Order for filing and recording.

l. <u>Modification of Automatic Stay</u>. The automatic stay provisions of § 362 of the Bankruptcy Code are modified to the extent necessary to implement the provisions of this DIP Loan Amendment Order and the Guaranty, thereby permitting, among other things, (a) the DIP Lender to receive collections of McQuade DIP Collateral for application to the DIP Obligations as provided herein, (b) the DIP Lender to file or record any UCC-1 financing statements, mortgages, notices of lien, or any similar documents evidencing or validating the perfection of the McQuade DIP Liens, and (c) the DIP Lender to exercise any of its rights and remedies as set forth in Paragraph 19 of this DIP Loan Amendment Order and/or the DIP Documents, all without further order modifying or terminating the automatic stay of § 362 of the Bankruptcy Code.

m. <u>Sale of Dobbs Ferry Real Estate</u>. Upon the consummation of the sale of the Dobbs Ferry Real Estate pursuant to the DF Sale Order and payment to Lender from the DF Sale Proceeds of the Partial Paydown Amount via immediately available funds, the DIP Liens of the DIP Lender on, in, and to the Dobbs Ferry Real Estate and the remaining DF Sale

Proceeds (*i.e.* Sale Proceeds other than the Partial Paydown Amount) shall be deemed released; and the DIP Lender shall promptly deliver such mortgage releases and other agreements, documents, and instruments and take such other actions reasonably necessary to allow the Dobbs Ferry Real Estate to be sold free and clear of such DIP Liens.

        n.        <u>Sale of New Windsor Real Estate</u>.  Pursuant to that certain *Order (I) Approving the Private Sale of the New Windsor Real Estate by Debtor The McQuade Foundation to 621 Blooming Grove LLC Under the Purchase and Sale Agreement Free and Clear of Liens, Claims, Interests, and Encumbrances Except for Certain Permitted Liens; (II) Authorizing the Potential Assumption and Assignment of the GNC Lease and the Rejection of the Residential Lease in Connection Therewith; and (III) Granting Related Relief* [Docket No. 218] entered by this Court in the Chapter 11 Cases on May 5, 2025 (the "<u>NW Sales Order</u>"), this Court authorized the sale of the New Windsor Real Estate.  Notwithstanding anything to the contrary contained in the NW Sales Order, the McQuade DIP Liens of the DIP Lender on, in, and to the New Windsor Real Estate, pursuant to this DIP Loan Amendment Order shall continue to exist on, in, and to the proceeds of the sale of the New Windsor Real Estate (the "<u>NW Sale Proceeds</u>") in the same order, manner, and priority as they existed on, in, and to the New Windsor Real Estate as security for all Guaranteed DIP Obligations of McQuade owed to the DIP Lender under the Guaranty and this DIP Loan Amendment Order.  Upon the consummation of the sale of

13

the New Windsor Real Estate pursuant to the NW Sale Order and payment to Lender from the NW Sale Proceeds of the outstanding Guaranteed DIP Obligations (which are anticipated to be the DIP Obligations, less the Partial Paydown Amount) via immediately available funds, the McQuade DIP Liens of the DIP Lender on, in, and to the New Windsor Real Estate and the remaining NW Sale Proceeds shall be deemed released; and the DIP Lender shall promptly deliver such mortgage releases and other agreements, documents, and instruments and take such other actions reasonably necessary to allow the New Windsor Real Estate to be sold free and clear of such McQuade DIP Liens.

  o. <u>DASNY Mortgage</u>.  Notwithstanding anything to the contrary contained in this Paragraph 28, the Guaranteed DIP Obligations, the McQuade DIP Liens, and the McQuade Super-Priority DIP Claim shall be subject and subordinate in priority of lien and payment to that certain mortgage filed against the New Windsor Real Estate dated November 3, 2005 and recorded on November 14, 2005 at M Book 11989, Page 1878, in favor of the Dormitory Foundation of the State of New York and the indebtedness secured thereby, and any other security interests, liens, and encumbrances securing such indebtedness.  McQuade shall, at all times, maintain immediately available funds in an amount sufficient to pay in full all such indebtedness.

3. All references to the DIP Facility in the Final DIP Order shall be deemed references to the DIP Facility as amended by this DIP Loan Amendment Order, as the DIP Facility may be

further amended, supplemented, restated, or otherwise modified from time to time, and together with all related agreements and documents.

4. Except as expressly set forth in this DIP Loan Amendment Order, the terms of the Final DIP Order are not altered and remain in full force and effect.

5. The terms of this DIP Loan Amendment Order were negotiated in good faith and at arms' length.

6. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this DIP Loan Amendment Order shall be immediately effective and enforceable upon its entry.

7. This Court shall retain jurisdiction to hear and determine any and all matters arising from or related to the interpretation or implementation of this DIP Loan Amendment Order.

8. The provisions of this DIP Loan Amendment Order are non-severable and mutually dependent.

Dated: July 10, 2025
       White Plains, New York

                                        ***/s/ Sean H. Lane***
                                        United States Bankruptcy Judge