Hearing Date/Time:  December 16, 2025 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:  December 9, 2025 at 4:00 p.m. (prevailing Eastern Time)
Reply Deadline:  December 12, 2025 at 4:00 p.m. (prevailing Eastern Time)

**BARCLAY DAMON LLP**
Janice B. Grubin
Ilan Markus
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11, Subchapter V |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 (shl) |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

## NOTICE OF DEBTOR'S MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363, FOR AUTHORITY TO SELL AT PRIVATE SALE CERTAIN AUTOMOBILES

**PLEASE TAKE NOTICE** that on November 25, 2025, Barclay Damon LLP, as counsel for the debtors and debtors-in-possession, filed the *Debtors' Motion, Pursuant to 11 U.S.C. §§ 105(a) and 363, for Authority to Sell at Private Sale Certain Automobiles* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **December 16, 2025 at 10:00 a.m. (prevailing Eastern Standard Time**) (the "Hearing") before the Honorable Judge Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

**PLEASE TAKE FURTHER NOTICE** that participants can attend the Hearing in person or via the Zoom for Government platform.  Participants in the Hearing are required to register their appearance before the hearing utilizing the e-Court Appearances tool at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by contacting the undersigned counsel.  You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.

**PLEASE TAKE FURTHER NOTICE** that any response or objection (together, the "Objections") to the Motion shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at https://www.nysb.uscourts.gov), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 so as to be received by:  the Bankruptcy Court, U.S. Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408; the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, New York 10004-1408, Attn: Paul Schwartzberg, Esq, Paul.Schwartzberg@usdoj.gov; the Subchapter V Trustee, Heidi J Sorvino, Esq, White and

Williams LLP, 810 Seventh Avenue, Suite 500, New York, New York 10019, Sorvinoh@whiteandwilliams.com; and the undersigned counsel no later than **4:00 p.m. (prevailing Eastern Standard Time) on December 9, 2025**.

**PLEASE TAKE FURTHER NOTICE** that any replies in further support of the Motion and the relief requested (the "Replies") may be presented at oral argument on the hearing date or if in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at https://www.nysb.uscourts.gov), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 so as to be received by:  the Bankruptcy Court, US Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408; the Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, New York 10004-1408, Attn: Paul Schwartzberg, Esq, Paul.Schwartzberg@usdoj.gov; the Subchapter V Trustee, Heidi J Sorvino, Esq, White and Williams LLP, 810 Seventh Avenue, Suite 500, New York, New York 10019, Sorvinoh@whiteandwilliams.com; the objecting parties, if any, and the undersigned counsel no later than **4:00 p.m. (prevailing Eastern Standard Time) on December 12, 2025**.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, after the Hearing, submit to the Bankruptcy Court an

32404139.1

order substantially in the form of the proposed order annexed to the Motion, which order may be

entered without further notice or opportunity to be heard.

Dated:   November 25, 2025
         New York, New York

**BARCLAY DAMON LLP**

By:   _/s/Janice B Grubin_
Janice B Grubin
Ilan Markus
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barlcaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

**Hearing Date:  December 16, 2025 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  December 9, 2025 at 4:00 p.m. (prevailing Eastern Time)**
**Reply Deadline:  December 12, 2025 at 4:00 p.m. (prevailing Eastern Time)**

**BARCLAY DAMON LLP**
Janice B. Grubin
Ilan Markus
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com

*Counsel to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11, Subchapter V |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 (shl) |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

## DEBTORS' MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363, FOR AUTHORITY TO SELL AT PRIVATE SALE CERTAIN AUTOMOBILES AND EQUIPMENT

St. Christopher's, Inc. and The McQuade Foundation, as debtors and debtors-in-possession

(the "Debtors"), by and through their undersigned counsel, hereby move this Court for entry of an

Order, pursuant to 11 U.S.C. §§ 105(a) and 363 (b) and (m), authorizing the Debtors to enter into

an agreement to sell certain automobiles and equipment (as identified herein) for a price of

$40,300.00 "as is where is" free and clear of liens, claims, and encumbrances to Arredondo (as

defined below), for waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), and for such

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

1

other and further relief as the Court deems just and proper (the "Motion").  In support of the

Motion, the Debtors state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this

proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Sections 105 and 363 of

the Bankruptcy Code and Bankruptcy Rules 2002 and 6004

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

4.      On April 29, 2024 (the "Petition Date"), the Debtors commenced these Chapter 11

Subchapter V cases the ("Chapter 11 Cases") by filing voluntary petitions for relief with the Court.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code.

5.      On the Petition Date, the Office of the United States Trustee filed the *Notice of

Appointment of Subchapter V Trustee* [Docket No. 7] in each of the Chapter 11 Cases appointing

Heidi J. Sorvino, Esq. as Subchapter V Trustee.

6.      Other than the appointment of Ms. Sorvino as the Subchapter V Trustee, no request

for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and no

statutory committees have been appointed or designated.

7.      Additional information about the Debtors' businesses, the events leading up to the

Petition Date and the filing of the Debtors' Chapter 11 petitions can be found in the *Declaration

of Dr. Sarah Ruback Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11*

2

*Petitions and First Day Motions* [Docket No. 6] (the "Ruback Declaration"). The Debtors rely on the Ruback Declaration in making the Motion and incorporate it herein by reference.

8.     The Debtors timely filed their joint plan on July 29, 2024, which proposed plan has not been confirmed.

9.     Pursuant to Orders of this Court, the Debtors closed on the sale of their Dobbs Ferry campus on July 11, 2025, the sale of their Jennie Clarkson campus on November 19, 2025 and the sale of their New Windsor campus on November 21, 2025 (collectively, the "Closings").

10.    In order to facilitate the Closings and under the authority of the Orders which authorized the Debtors to take whatever actions were necessary to implement the sales and the consent of the Dobbs Ferry purchaser, the Debtors arranged for the proposed buyer, Bryan Arredondo, to pick up the Automobiles and the Equipment on October 15, 2025 (as to Dobbs Ferry) and November 15-16, 2025 (as to Jennie Clarkson and New Windsor), with no titles being conveyed until this Motion was approved. In this way, the Automobiles and the Equipment did not delay the Jennie Clarkson and New Windsor Closings.[2]

## **RELIEF REQUESTED**

11.    The Debtors seek the Court's approval, pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, for entry of an order substantially in the form attached hereto as **Exhibit A** ("Sale Order"), authorizing the private sale of certain automobiles and equipment pursuant to the terms of that certain Motor Vehicle and Equipment Sales Agreement (the "Agreement") entered into between the Debtors and the proposed purchaser,

---

[2] None of the buyers were interested in the Automobiles and Equipment, which constituted an eyesore on each of the three (3) properties.

Byron Arredondo, 34 Gaffney Place, Yonkers, New York 10704 ("<u>Arredondo</u>").  A copy of the Agreement is attached hereto as **Exhibit B**.[3]

12.     Mr. Arredondo is an individual that is in the business of purchasing used automobiles and equipment, refurbishing them, and selling them to third parties.

13.     Mr. Arredondo made an offer to purchase certain automobiles and equipment from the Debtors in the amount of $40,300.00 pursuant to the Agreement, with a 10 (ten) per cent deposit, which the Debtors have received.  *See* **Exhibit B**.  Each of the automobiles and equipment to be sold has high mileage/heavy usage and is at least ten years old and about half are no longer driveable.

14.     The Agreement provides for the sale of the following automobiles and equipment:

---

[3] Attached to the Agreement are form bills of sale and assignment for each vehicle.

32836295.1

| Motor Vehicles | | | | | |
|---|---|---|---|---|---|
| Veh# | Year | Make | Model | Vehicle ID Number | Original Location |
| 1 | 2010 | Toyota | Corolla | 2T1BU4EE4AC302164 | Jennie Clarkson |
| 2 | 2010 | Chevrolet | Silverado | 1GCSKPE08AZ268201 | Jennie Clarkson |
| 3 | 2009 | Ford | F-350 | 1FDWF37519EA88287 | Dobbs Ferry |
| 4 | 2014 | Toyota | Corolla | 2T1BURHE0EC117172 | New Windsor |
| 5 | 2014 | Chevrolet | Silverado 1500 | 1GCNKPEC7EZ359120 | New Windsor |
| 6 | 2015 | Toyota | Corolla | 2T1BURHEXFC430294 | Jennie Clarkson |
| 7 | 2013 | Ford | E350 Super Duty | 1FBNE3BL8DDA74320 | Jennie Clarkson |
| 8 | 2015 | Toyota | Sienna | 5TDJK3DC0FS107754 | Dobbs Ferry |
| 9 | 2015 | Ford | Transit - 350 | 1FBZX2ZMXFKA29432 | Dobbs Ferry |
| 10 | 2014 | Toyota | Corolla | 2T1BURHE8EC125696 | Dobbs Ferry |
| 11 | 2015 | Toyota | Sienna | 5TDJK3DC7FS108349 | Dobbs Ferry |
| 12 | 2013 | Ford | EC3 | 1FBNE3BLXDDA74321 | Dobbs Ferry |
| 13 | 2015 | Toyota | Sienna | 5TDJK3DC6FS109363 | Dobbs Ferry |
| 14 | 2013 | Dodge | Caravan | 2C4RDGBG5DR765151 | Dobbs Ferry |
| 15 | 2013 | Ford | E350 Super Duty | 1FBNE3BL7DDA74325 | Dobbs Ferry |

| Equipment | | |
|---|---|---|
| Make | Model | Location |
| Make | Model | Location |
| John Deere Mower | Z315 | New Windsor |
| John Deere Mower | 3520 | Jennie Clarkson |
| Toro Mower | 6000 | Jennie Clarkson |
| Toro Snow Blower | Power max 826LE | Jennie Clarkson |
| Toro Snow Blower | Power max 826LE | Jennie Clarkson |

(collectively, "Automobiles & Equipment"). As the Automobiles & Equipment are no longer required by the Debtors and have value, the Debtors solicited offers for the Automobiles & Equipment from a number of potential purchasers. The Debtors established July 1, 2025 as the deadline for the receipt of offers (the "Deadline").

15.     While a number of parties expressed interest in the Automobiles & Equipment, Arredondo's proposed Agreement constituted the highest offer received by the Deadline. The Agreement also provided for the removal of all the Automobiles & Equipment from the Debtors' property, thereby relieving the Debtors of having to dispose of the Automobiles & Equipment and interfere with the Closings.

5

16.     Pursuant to each of the purchase and sale documents, Debtors were required to remove the Automobiles & Equipment prior to the Closings.  Faced with the choice of allowing Mr. Arrendondo to pick up the Automobiles and the Equipment prior to the transfer of title, which he was prepared to do, or pay for their transport, storage, and insurance until this sale was approved, the Debtors, in the exercise of their business judgment, chose the former option.

17.     For all these reasons, the Debtors have determined that the Agreement is the highest and best offer for the Automobiles & Equipment.

18.     Mr. Arredondo would like to purchase, and the Debtors would like to sell, the Automobiles & Equipment pursuant to the terms of the Agreement.

19.     The Agreement contains the terms, which include, but are not limited to, unless otherwise specified, the Automobiles & Equipment are being old in an "AS IS, WHERE IS" condition without warranty other than as specified in Section 5 of the Agreement; the acceptance of the Purchase Order is subject to Bankruptcy Court approval, and retrieval costs will be (and were) borne by Mr. Arredondo.

20.     The Debtors now seek to sell the Automobiles & Equipment to Mr. Arredondo in an effort – and transfer to him the titles - to maximize the value of these assets for the Debtors' estates.  Monetizing these assets at this price will result in the best return to the estates.  Mr. Arredondo is ready and able to acquire the Automobiles & Equipment and has demonstrated himself to be reliable and honorable in connection with covering the expenses associated with retrieval of the Automobiles & Equipment this and last month

21.     Additionally, no commission is due under the Purchase Order which will provide the Debtors with savings and further maximize the benefit to the estates

32836295.1

## BASIS FOR RELIEF

22.    The proposed sale meets the business judgment standard and should be approved.

## PRIVATE SALE OF AUTOMOBILES AND EQUIPMENT

23.    While many section 363 sales are conducted under competitive bidding procedures, there is no requirement in section 363 of the Bankruptcy Code to do so.  In fact, Bankruptcy Rule 6004(f) specifically contemplates private sales with the statement that "all sales not in the ordinary course of business may be by private sale or by public auction."

24.    The sale of property in bankruptcy is not required to be subject to higher and better offers when circumstances warrant approval of a private sale.  *See, In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion to conduct public or private sales of estate property"); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to Section 363 of the Bankruptcy Code, " [t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").

25.    Courts in New York have approved private sales of assets when they think the general standards for approval under Section 363 of the Bankruptcy Code are satisfied.  *See, e.g. In re Wellman, Inc*., Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order approving sales of one of the Debtors' facilities by private sale, not subject to higher and better offers):  *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 29, 2005) (order authorizing the sale of certain aircraft by private sale and stating that "no auction was necessary with respect to sale of the [a]ircraft").

7

26.    The Debtors submit that the facts in this case warrant approval of the private sale to Mr. Arredondo and special circumstances exist to approve such a sale.  Compared to a speculative upside in price if the Automobiles & Equipment were subject to a public auction, it is certain that the delay associated with obtaining approval for bid and auction procedures and conducting the actual auction would cost the estates a significant amount just to maintain and store the Automobiles & Equipment, notwithstanding the potential delay to the sale closings.

27.    It is the Debtors' belief, based upon its diligence, that the price offered pursuant to the Agreement is fair and reasonable, and that the timing and certainty of approving the Agreement is preferable to pursuing an auction strategy with its attendant costs, uncertain results, and delay.

28.    For all of these reasons, the private sale of the Automobiles & Equipment as requested herein should therefore be approved.

## REQUIREMENTS UNDER SECTION 363(B) HAVE BEEN MET

29.    Section 363(b)(1) of the Bankruptcy Code provides in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:  "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In pertinent part, Bankr. Rule 6004 states that "all sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).  With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that:

> [T]he notice of a proposed  use, sale or lease of property . . . shall include
> The terms and conditions of any private sale and the deadline for filing
> objections.  The notice of a proposed use, sale or lease of property, including
> real estate, is sufficient if it generally describes the property.  Fed. R. Bankr.
> P. 2002(c)(1).

8

30.    Section 363 (b) of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate. However, bankruptcy courts have required that the authorization of such use, sale, or lease of property of the estate, when not pursued in the ordinary course of business, must be based upon the sound business judgment of the debtor.  *See*, *In re Chateaugay Corp*., 973 F.2d 141 (2d Cir. 1992).  *See also*, *In re Lionel Corp*., 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business).

31.    This fundamental analysis does not change if the proposed sale is a private sale rather than a public sale.  *See, In re Ancor Exploration Co*., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983).  ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate's assets not in the ordinary course of business under § 363(b)). Here, the proposed private sale of the Automobiles & Equipment meets all of these requirements and should be approved.

32.    Courts generally show great deference to a debtor in possession's decisions when applying the business judgment standard.  *See, In re Global Crossing, Ltd.*, 295  B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003).  ("[t]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.")  Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."  *Richmond Metal Finishers,* 756 F.2d at 1047).

33.     Once a court is satisfied that there is a sound business justification for the proposed

sale, the court must then determine whether (i) adequate and reasonable notice has been provided

to the interested parties, (ii) the sale price is fair and reasonable, and (iii) the purchaser's

proceeding in good faith.  *In re Betty Owens Sch.,* 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997);

accord *In re Delaware and Hudson Ry. Co.* 124 B.R. 166, 169 (D.Del 1991).  The business

judgment standard has been met here.

34.     There is more than ample business justification, under the circumstances of these

Chapter 11 Cases, to proceed with the sale of the Automobiles.  Some factors include:  (1) half of

the Automobiles & Equipment are not driveable and the Debtors have ceased their operations; (2)

the purchase price was determined after exposing the Automobiles & Equipment for sale to an

number of potential buyers; (3) the Debtors and Mr. Arredondo have negotiated the purchase as

an arm's length, good faith transaction; and (4) Mr. Arredondo is ready to complete the transaction

and has already provided a deposit and in good faith retrieved the vehicles so as not to interfere

with the last 2 Closings.

35.     Moreover, a private sale of the Automobiles & Equipment pursuant to the Purchase

Order, *see* **Exhibit A**, is more likely to close in a timely and efficient manner.  The proposed

closing date is upon entry of an order approving this private sale.  Beyond the desire of the parties

to move forward more expeditiously than a public sale process would permit, the Debtors believe

a private sale would realize additional value over a public sale process.  Given the parties' desire

to close on an expedited basis, and the Debtors' informed business judgment, the private sale to

Arredondo represents the best opportunity to realize the maximum value for the Automobiles &

Equipment.

32836295.1

36.     The Debtors submit that an order granting the relief requested herein is a matter within the discretion of the Court and is consistent with the provisions of the Bankruptcy Code.

37.     The Debtors own the property free and clear of any liens and encumbrances.  The Debtors believe the offer received is reasonable and is a fair value for the Automobiles & Equipment.  By selling the property as a private transaction, the Debtors avoid delays and expenses otherwise incurred in an auction process.

## THE PURCHASER AT THE PRIVATE SALE IS ENTITLED TO
## THE PROTECTIONS AFFORDED TO GOOD FAITH PURCHASERS

38.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> the reversal or modification on appeal of an authorization under [section 262(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal  11 U.S.C. § 363(m).

Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely'", *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. 1993) (quoting *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147).  Section 363(m) also "provides that good-faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transfer he knew the pendency of the appeal." *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y 1994).

39.     The terms of the Agreement were negotiated at arm's length and in good faith. Accordingly, the Debtors request this Court to determine that Mr. Arredondo is acting in good

11

faith and entitled to the production of a good faith purchaser under section 363(m) of the Bankruptcy Code.

40.    For the reasons set forth herein, and as will be further shown at the sale hearing, Mr. Arredondo's offer provides a greater recovery for the estates than any known or practically available alternative, Debtors submit that the sale is an exercise of the Debtors' sound business judgment.  The sale has been proposed in good faith, without collusion and the prospective purchaser is a good faith purchaser.

## **WAIVER OF BANKRUPTCY RULE 6004**

41.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004 (a) and that the Debtors have established cause to exclude such relief from the 14 day stay under Bankruptcy Rule 6004 (h).

## **NOTICE**

42.    Notice of this Motion has been given to the (i) Office of the United States Trustee; (ii) the Subchapter V Trustee, (iii) all creditors; and (iv) any party requesting notice pursuant to Rule 2002 of the Bankruptcy Rules.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

32836295.1

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request that the Court enter the sale order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as may be just and proper .

Dated:    November 25, 2025
       New York, New York

                            **BARCLAY DAMON LLP**

                            By:   */s/Janice B Grubin*
                            Janice B. Grubin
                            Ilan Markus
                            1270 Avenue of the Americas, Suite 2310
                            New York, New York 10020
                            Telephone:  (212) 784-5800
                            jgrubin@barclaydamon.com
                            imarkus@barlcaydamon.com

                            *Counsel to Debtors and Debtors-in-Possession*

32836295.1

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11, Subchapter V |
| | : | |
| ST. CHRISTOPHER'S, INC., *et al.*,[1] | : | Case No. 24-22373 (shl) |
| | : | Main Case |
| Debtors. | : | Jointly Administered |

### ORDER AUTHORIZING THE DEBTOR TO SELL CERTAIN AUTOMOBILES AND EQUIPMENT PURSUANT TO 11 U.S.C. § 363, AND WAIVING THE FOURTEEN DAY STAY UNDER BANKRUPTCY RULE 6004(H)

Upon the motion dated November 25, 2025 (the "Motion") of St. Christopher's, Inc. and The McQuade Foundation, debtors and debtors-in-possession (the "Debtors"), by their counsel, Barclay Damon LLP, pursuant to 11 U.S.C. §§ 363(b) and (m), seeking an order authorizing the Debtor to sell at a private sale certain automobiles and equipment (the "Automobiles & Equipment" as defined in Exhibit B to the Motion) to Byron Arredondo ("Arredondo") in the amount of $40,300.00, "as is, where is", free and clear of liens, claims, and encumbrances, for waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), and for such other and further relief as the Court deems just and proper; and no objections having been filed; and the Court having held a hearing on December 16, 2025,

AND the Court finding and determining that:

(i)     the sale of the Automobiles & Equipment is necessary and is in the best interest of the Debtors, their creditors, and their estates;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  St. Christopher's, Inc. (0485) and The McQuade Foundation (2652).

(ii)      the sale of the Automobiles & Equipment pursuant to the Agreement attached to the Motion as Exhibit B is a sound exercise of the Debtors' business judgment and is in good faith;

(iii)     the Automobiles & Equipment are owned by the Debtors free and clear of all liens;

(iv)     notice of the Motion has been given to the Office of the United States Trustee, the Subchapter V Trustee, all creditors, and all other notice parties, and no other notice need be given;

(v)      a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested parties and entities;

(vi)     this Court has jurisdiction over the Motion; and

(vii)    sufficient cause appearing therefore,

NOW, upon all pleadings and proceedings had in this matter to date, and good cause appearing therefor, it is hereby

**ORDERED**, the Motion is GRANTED as hereinafter set forth; and it is further

**ORDERED**, that the Debtors' execution of the Agreement (attached to the Motion as Exhibit B) be and hereby is approved and authorized;

**ORDERED**, that pursuant to Sections 363(b) the Debtors are authorized and empowered to sell the Automobiles & Equipment as is, where is, without representation, warranty, statement or guaranty of any kind, whether express or implied, free and clear of all interests and liens, by private sale to Arredondo, pursuant to the terms of the Agreement and this Order; and it is further

**ORDERED**, that the Debtors and their respective officers, employees, and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably required

by Arredondo to perform, consummate, and implement the closing the sale of the Automobiles & Equipment as contemplated by the Agreement;

**ORDERED**, that the Agreement has been negotiated and executed, and has been undertaken, by the Debtors, Arredondo, and their respective representatives at arm's length, without collusion and in good faith, and Arredondo is therefore and hereby afforded the protections of Bankruptcy Code Section 363(m); and it is further

**ORDERED**, that 100% of the net proceeds received from Arredondo from the sale of the Automobiles & Equipment shall be held in Debtors' counsel's escrow account and shall not be disbursed absent further order of this Court authorizing the disbursement; and it is further

**ORDERED**, that this order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a) and that the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

Dated: _____ 2025
      New York, New York

                                            _____
                                            HON. SEAN H. LANE
                                            UNITES STATES BANKRUPTCY JUDGE

# EXHIBIT B

## MOTOR VEHICLE AND EQUIPMENT SALES AGREEMENT

THIS MOTOR VEHICLE AND EQUIPMENT SALES AGREEMENT (this "**Agreement**") is made this ___ day of _____, 2025 (the "**Effective Date**") by and between **ST. CHRISTOPHER'S, INC.**, a New York not-for-profit corporation having an address at 71 South Broadway, Dobbs Ferry, New York 10522 ("**Seller**") and Byron Arredondo, having an address at 34 Gaffney PL, Yonkers, New York 10704 ("**Buyer**").

**WHEREAS,** Seller desires to sell, and Buyer desires to purchase, the motor vehicles and other equipment described in **Exhibit "A"** hereto (the "**Motor Vehicles**" and "**Equipment**", respectively), subject to the terms and conditions set forth in this Agreement;

**WHEREAS,** Seller filed for relief under Chapter 11 of the United States Bankruptcy Code on April 29, 2024 in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), Case No. 24-22373 (shl); and

**WHEREAS,** the closing of the transactions contemplated hereby is subject to Court approval (the "**Sale Order**").

**NOW, THEREFORE,** in consideration of the mutual covenants and conditions contained herein, the parties agree as follows.

1.      Subject to the terms and conditions of this Agreement, including entry of the Sale Order, Buyer shall sell, assign and transfer to Buyer and Buyer shall purchase from Seller the Motor Vehicles and Equipment.  Within three (3) days of entry of the Sale Order, the parties shall consummate the transactions contemplated by this Agreement (the "**Closing**").  The Closing shall take place remotely by the exchange of the closing deliveries described herein and receipt of the Purchase Price (the "**Closing Date**").  For purposes of clarity, in the event the Sale Order is not granted, this Agreement shall become null and void without any further force or effect, and neither party shall have any further obligation to the other except as expressly set forth herein.

2.      Buyer shall arrange to take possession of the Motor Vehicles and Equipment at its sole cost and expense within five (5) business days of the Closing Date. Risk of loss to the Motor Vehicles and Equipment shall pass immediately to Buyer on the Closing Date.

3.      The aggregate purchase price for the Motor Vehicles and Equipment is Forty Thousand Three Hundred and 00/100 Dollars ($40,300.00) (the "**Purchase Price**").  Upon execution of this Agreement, Buyer shall deposit ten percent (10%) of the Purchase Price (the "**Deposit**") with Seller. At Closing, Buyer shall pay the balance of the Purchase Price in immediately available funds. If this Agreement is terminated due to failure to obtain the Sale Order, or for any other reason set forth in **Section 8** of this Agreement, the Deposit shall be promptly returned to Buyer.

4.      Upon receipt of the Purchase Price, at Closing, Seller will deliver to Buyer (i) one or more Bills of Sale for the Motor Vehicles and Equipment, in the form attached hereto as **Exhibit "B"** or "**C**", as applicable, and (ii) the Certificates of Title for the Motor Vehicles.  The parties

shall cooperate with one another and do such things that are reasonable necessary to effectuate the purchase and sale contemplated herein.

5.      Seller hereby represents and warrants to Buyer, that as of the Closing Date, Seller owns each of the Motor Vehicles and items of Equipment free and clear of any claim, lien, pledge, option or security interest held by or in favor of any other person or entity.  Except for the foregoing warranty, each of the Motor Vehicles and items of Equipment is being sold "AS IS, WHERE IS" without warranty of any kind, including without limitation, the warranties of merchantability, materials, workmanship, repairs, mileage and fitness for an intended, implied or particular purpose or those arising by statute or otherwise in law.  Buyer hereby acknowledges that it has been afforded an opportunity to inspect the Motor Vehicles and Equipment and accepts that that they are being sold "AS IS, WHERE IS" without any warranty other than expressly set forth in this **Section 5**.

6.      Buyer hereby agrees that Seller will have no responsibility or liability with respect to any loss or damage to the Motor Vehicles and Equipment themselves following the Closing. Buyer further agrees that Seller will have no liability in the event of a claim for injury to or property damage in connection with or resulting in any way from Buyer's use of the Motor Vehicles and Equipment following Buyer's taking actual possession of the Motor Vehicles and Equipment. Buyer agrees to hold harmless, defend and indemnify Seller and its successors and assigns with respect to any such claim for injury or property damage.

7.      This Agreement shall be interpreted under and governed by the laws of the State of New York.

8.      This Agreement may be terminated (a) by mutual written consent of Buyer and Seller, (b) by either party if the Sale Order has not been entered within sixty (60) days after the date of this Agreement, (c) by Buyer if the Sale Order is denied by the Court, (d) by either party pursuant to **Section 9(c)** of this Agreement, or (e) by Seller if a higher or better offer is approved by the Court. Upon termination, this Agreement shall be null and void and the parties shall have no further obligations hereunder except as expressly provided herein.

9.      Bankruptcy Court Approval.

(a) Seller and Buyer acknowledge that this Agreement and the sale of the Motor Vehicles and Equipment, are subject to approval by the Court. Seller and Buyer acknowledge that to obtain such approval, Seller must demonstrate that it has taken reasonable steps to obtain the highest and otherwise best offer possible for the Motor Vehicles and Equipment, and that such demonstration shall include giving notice of the transactions contemplated by this Agreement to creditors and other interested parties.

(b) From and after the date of execution of this Agreement and prior to the Closing or the termination of this Agreement in accordance with **Section 1** of this Agreement, Seller shall not take any action which is intended to (or is reasonably likely to) or fail to take any action the intent (or the reasonably likely

result) of which failure to act is to, result in the reversal, voiding, modification or staying of the Sale Order.

(c)    Seller shall file the form of the Sale Order and shall pursue diligently the entry of the Sale Order. Buyer agrees that it shall promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement and demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code. In the event that the entry of the Sale Order is appealed or a stay pending appeal is sought, Seller shall not be required to oppose the appeal or the stay pending appeal or seek the dismissal of any appeal (including a petition for certiorari, motion for rehearing, re-argument, reconsideration or revocation). If Seller so elects not to oppose or seek the dismissal of any appeal, this Agreement shall automatically terminate without liability to either party.

(d)    Seller acknowledges and agrees, and the Sale Order shall provide, among other things, that, on the Closing Date and concurrently with the Closing, all then existing or thereafter encumbrances of, against or created by Seller or the bankruptcy estates and in existence on or prior to the Closing Date. if any, shall be fully released from and with respect to the Motor Vehicles and Equipment, which shall be transferred to Buyer free and clear of all encumbrances.

10.    This Agreement and the Bills of Sale to be delivered hereunder constitute the entire understanding and agreement between the parties hereto concerning the subject matter hereof and supersede any prior negotiations or understandings.

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the date first above written.

**SELLER:**
**ST. CHRISTOPHER'S, INC.**


By: _____
Name:
Title:


**BUYER:**


_____
Byron Arredondo

32462854.1

EXHIBIT "A"

DESCRIPTION OF MOTOR VEHICLES  AND EQUIPMENT

| Motor Vehicles | | | | | |
|---|---|---|---|---|---|
| Veh# | Year | Make | Model | Vehicle ID Number | Location |
| 1 | 2010 | Toyota | Corolla | 2T1BU4EE4AC302164 | Jennie Clarkson |
| 2 | 2010 | Chevrolet | Silverado | 1GCSKPE08AZ268201 | Jennie Clarkson |
| 3 | 2009 | Ford | F-350 | 1FDWF37519EA88287 | Dobbs Ferry |
| 4 | 2014 | Toyota | Corolla | 2T1BURHE0EC117172 | New Windsor |
| 5 | 2014 | Chevrolet | Silverado 1500 | 1GCNKPEC7EZ359120 | New Windsor |
| 6 | 2015 | Toyota | Corolla | 2T1BURHEXFC430294 | Jennie Clarkson |
| 7 | 2013 | Ford | E350 Super Duty | 1FBNE3BL8DDA74320 | Jennie Clarkson |
| 8 | 2015 | Toyota | Sienna | 5TDJK3DC0FS107754 | Dobbs Ferry |
| 9 | 2015 | Ford | Transit - 350 | 1FBZX2ZMXFKA29432 | Dobbs Ferry |
| 10 | 2014 | Toyota | Corolla | 2T1BURHE8EC125696 | Dobbs Ferry |
| 11 | 2015 | Toyota | Sienna | 5TDJK3DC7FS108349 | Dobbs Ferry |
| 12 | 2013 | Ford | EC3 | 1FBNE3BLXDDA74321 | Dobbs Ferry |
| 13 | 2015 | Toyota | Sienna | 5TDJK3DC6FS109363 | Dobbs Ferry |
| 14 | 2013 | Dodge | Caravan | 2C4RDGBG5DR765151 | Dobbs Ferry |
| 15 | 2013 | Ford | E350 Super Duty | 1FBNE3BL7DDA74325 | Dobbs Ferry |
| Equipment | | | | | |
| Make | | Model | | | Location |
| Make | | Model | | | Location |
| John Deere Mower | | Z315 | | | New Windsor |
| John Deere Mower | | 3520 | | | Jennie Clarkson |
| Toro Mower | | 6000 | | | Jennie Clarkson |
| Toro Snow Blower | | Power max 826LE | | | Jennie Clarkson |
| Toro Snow Blower | | Power max 826LE | | | Jennie Clarkson |

EXHIBIT "B"

FORM OF BILL OF SALE (VEHICLE)

BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE AND ASSIGNMENT is being delivered as of _____, 2025 (the **"Effective Date"**) pursuant to that certain Motor Vehicle and Equipment Sales Agreement dated as of the Effective Date (the **"Sales Agreement"**) by and between ST. CHRISTOPHER'S, INC., a New York not-for-profit corporation having an address at 71 South Broadway, Dobbs Ferry, New York 10522 ("**Seller**") and Byron Arredondo, having an address at 34 Gaffney PL, Yonkers, New York 10704 (**"Purchaser"**).  Capitalized terms, unless otherwise defined herein, shall have the meanings assigned to them in the Sales Agreement unless the context otherwise clearly requires.

In consideration of the mutual premises, covenants and agreements set forth in the Sales Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby grants, bargains, sells, conveys, delivers, assigns and transfers to Purchaser all of Seller's right, title and interest in and to the motor vehicle described on Exhibit "A" hereto (the "**Motor Vehicle**"), **TO HAVE AND TO HOLD** the Motor Vehicle unto Purchaser, and its successors and assigns, forever.

This Bill of Sale and Assignment is made, executed and delivered in accordance with and is subject to the terms and conditions set forth in the Sales Agreement.  To the extent that any provision of this Bill of Sale and Assignment is inconsistent or conflicts with the Sales Agreement, the provisions of the Sales Agreement shall control.

Seller, for itself and its successors and assigns, by this Bill of Sale and Assignment, covenants and agrees that Seller, and its successors and assigns, shall execute and deliver, or shall cause to be executed and delivered, such other instruments of transfer and conveyance and other documents and shall take such other steps and actions as Purchaser may reasonably request in order to vest in Purchaser, and its successors and assigns, all of Seller's right, title and interest in and to the Motor Vehicle.

Delivery of a copy of a signature to this Bill of Sale and Assignment by facsimile transmission or other electronic means of transmission shall constitute a valid and binding execution and delivery of this Bill of Sale and Assignment, and such electronic copy shall constitute an enforceable original document.

This Bill of Sale and Assignment shall be governed by and construed in accordance with the laws of the State of New York exclusive of said State's conflicts of laws provisions.

[Signature page follows]

32462854.1

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale and Assignment to be executed by one of its duly authorized officers effective as of the Effective Date.

**ST. CHRISTOPHER'S, INC.**

By: _____

Name:

Title:

EXHIBIT A

TO

BILL OF SALE

DESCRIPTION OF MOTOR VEHICLE

| Year & Make | Model & Color | VIN |
|---|---|---|
|  |  |  |

EXHIBIT "C"

FORM OF BILL OF SALE (EQUIPMENT)

BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE AND ASSIGNMENT is being delivered as of _____, 2025 (the **"Effective Date"**) pursuant to that certain Motor Vehicle and Equipment Sales Agreement dated as of the Effective Date (the **"Sales Agreement"**) by and between ST. CHRISTOPHER'S, INC., a New York not-for-profit corporation having an address at 71 South Broadway, Dobbs Ferry, New York 10522 ("**Seller**") and Byron Arredondo, having an address at 34 Gaffney PL, Yonkers, New York 10704 (**"Purchaser"**).  Capitalized terms, unless otherwise defined herein, shall have the meanings assigned to them in the Sales Agreement unless the context otherwise clearly requires.

In consideration of the mutual premises, covenants and agreements set forth in the Sales Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby grants, bargains, sells, conveys, delivers, assigns and transfers to Purchaser all of Seller's right, title and interest in and to the equipment described on Exhibit "A" hereto (the **"Equipment"**), **TO HAVE AND TO HOLD** the Equipment unto Purchaser, and its successors and assigns, forever.

This Bill of Sale and Assignment is made, executed and delivered in accordance with and is subject to the terms and conditions set forth in the Sales Agreement.  To the extent that any provision of this Bill of Sale and Assignment is inconsistent or conflicts with the Sales Agreement, the provisions of the Sales Agreement shall control.

Seller, for itself and its successors and assigns, by this Bill of Sale and Assignment, covenants and agrees that Seller, and its successors and assigns, shall execute and deliver, or shall cause to be executed and delivered, such other instruments of transfer and conveyance and other documents and shall take such other steps and actions as Purchaser may reasonably request in order to vest in Purchaser, and its successors and assigns, all of Seller's right, title and interest in and to the Equipment.

Delivery of a copy of a signature to this Bill of Sale and Assignment by facsimile transmission or other electronic means of transmission shall constitute a valid and binding execution and delivery of this Bill of Sale and Assignment, and such electronic copy shall constitute an enforceable original document.

This Bill of Sale and Assignment shall be governed by and construed in accordance with the laws of the State of New York exclusive of said State's conflicts of laws provisions.

[Signature page follows]

32462854.1

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale and Assignment to be executed by one of its duly authorized officers effective as of the Effective Date.

**ST. CHRISTOPHER'S, INC.**

By: _____

Name:

Title:

EXHIBIT A

TO

BILL OF SALE

DESCRIPTION OF EQUIPMENT

| Make | Model |
|------|-------|
|      |       |